# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MEREDITH LARSON,          )
ADRIANA PORTILLO-BARTOW,      )
PAUL JOSLIN,           )
THOMAS HENEHAN,        )
LISEL HOLDENRIED,      )
PATRICIA KERNDT, and      )
KIMI OKADA,           )
                )
        Plaintiffs,     )     Civil Action No. 02-01937-PLF
                )
      v.            )
                )
DEPARTMENT OF STATE, CENTRAL   )
INTELLIGENCE AGENCY, NATIONAL  )
SECURITY AGENCY, DEFENSE    )
INTELLIGENCE AGENCY, and NATIONAL )
TRANSPORTATION SAFETY BOARD,  )
                )
        Defendants.    )
_____ )

**MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS DEPARTMENT OF STATE, NATIONAL SECURITY AGENCY, AND DEFENSE INTELLIGENCE AGENCY, and MOTIONS FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS CENTRAL INTELLIGENCE AGENCY AND NATIONAL TRANSPORTATION SAFETY BOARD**

Defendants Department of State ("DOS"), National Security Agency ("NSA") and

Defense Intelligence Agency ("DIA"), by and through counsel, respectively move for partial

summary judgment pursuant to Fed. R. Civ. P. 56.  As set forth in the accompanying

memorandum, there is no genuine issue of material fact in dispute with respect to DOS's

responses to the requests that form the basis for Counts 1-3 and 5-6 of Plaintiffs' Complaint,

NSA's responses to the requests that form the basis for Counts 16-17 and 19, and DIA's

responses to the requests that form the basis for Counts 8-11.  DOS, NSA, and DIA are entitled

to judgment as a matter of law on these Counts because they has conducted adequate searches

and properly relied on Freedom of Information Act exemptions in withholding information from

Plaintiffs.[1]

Defendants Central Intelligence Agency ("CIA") and National Transportation Safety

Board ("NTSB"), by and through counsel, respectively move for summary judgment pursuant to

Fed. R. Civ. P. 56.  As set forth in the accompanying memorandum, there is no genuine issue of

material fact in dispute with respect to CIA's responses to the requests that form the basis for

Counts 12-15 of Plaintiff's Complaint, and NTSB's response to the request that forms the basis

for Count 20.  CIA and NTSB are entitled to judgment as a matter of law on these Counts

because they have conducted adequate searches and properly relied on Freedom of Information

Act exemptions in withholding information from Plaintiffs.

In support of this motion, Defendants rely upon the supporting memorandum and

attached declarations, and submit herewith a statement of material facts.

---

[1]DOS moves for partial summary judgment because, by order dated January 24, 2003, this Court granted DOS's Motion to Stay Proceedings until September 30, 2003 with respect to Plaintiff Lisel Holdenried's claim against DOS, as raised in Count 4 of Plaintiffs' Complaint.
NSA moves for partial summary judgment because, in response to the request that forms the basis for Count 18, NSA has referred some potentially responsive documents to third party government agencies, and some of those referrals are still pending.
DIA moves for partial summary judgment because, in response to the request that forms the basis for Count 7, DIA has referred some potentially responsive documents to third party government agencies, and some of those referrals also are still pending.

Respectfully submitted,


ROBERT D. McCALLUM, JR.
Assistant Attorney General


/s/_____
ELIZABETH J. SHAPIRO
D.C. Bar #418925
Assistant Branch Director
U.S. Department of Justice, Civil Division
Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C.  20044
Delivery Address
20 Massachusetts Ave., N.W., Room 7152
Washington, D.C. 20001
Tel.: (202) 514-5302
Fax: (202) 616-8202
Email: Elizabeth.Shapiro@usdoj.gov


**Counsel for Defendants**



Dated:  May 30, 2003

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MEREDITH LARSON, | ) | |
| ADRIANA PORTILLO-BARTOW, | ) | |
| PAUL JOSLIN, | ) | |
| THOMAS HENEHAN, | ) | |
| LISEL HOLDENRIED, | ) | |
| PATRICIA KERNDT, and | ) | |
| KIMI OKADA, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 02-01937-PLF |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF STATE, CENTRAL | ) | |
| INTELLIGENCE AGENCY, NATIONAL | ) | |
| SECURITY AGENCY, DEFENSE | ) | |
| INTELLIGENCE AGENCY, and NATIONAL | ) | |
| TRANSPORTATION SAFETY BOARD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7.1(h), Defendants Department of State ("DOS"), National

Security Agency ("NSA"), Defense Intelligence Agency ("DIA"), Central Intelligence Agency

("CIA"), and National Transportation Safety Board ("NTSB") submit this statement of material

facts as to which there is no genuine issue:

**I.     DOS**

A.     <u>Request of Meredith Larson</u>

1.     By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel,

submitted a Freedom of Information Act ("FOIA")/Privacy Act request to DOS.  <u>See</u> Declaration

of Bernard C. Dowling, dated May 14, 2003 (hereinafter "Dowling Declaration") (attached

hereto as Exhibit A), ¶ 5, Ex. 1.  Larson requested copies of all records pertaining to her stabbing

in Guatemala in 1989, and to threats and attacks made against the organization Peace Brigades

International ("PBI") in Guatemala around the same time.  Id.

2.      DOS proceeded to assign the following case control numbers to different aspects

of Larson's request:  No. 199702754 (records pertaining to Larson's stabbing and her association

with PBI); No. 199702792 (records pertaining to May 1989 threats received by PBI); No.

199702793 (records pertaining to other subjects involving PBI and information concerning

Guatemalan citizens); No. 199702794 (records relating to earlier FOIA/Privacy Act requests

made by Larson to DOS); and No. 199702795 (copies of certain identified cable traffic).  Id. at ¶

5.

3.      With regard to Case No. 199702754, DOS searched its Central Foreign Policy

Records, DOS's centralized automated record system.[2] Id.  This search resulted in the retrieval of

eight responsive records.  Id.  Of these documents, one was released in full on January 6, 2003,

six were released in full on January 8, 2003, and the remaining one was released in part, with

excisions made pursuant to FOIA Exemption 6, on January 8, 2003.  Id., Ex. 2-3.

4.      With regard to Case No. 199702792, DOS searched the following offices deemed

likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western

Hemisphere Affairs; the Bureau of Democracy, Human Rights and Labor; the Bureau of

International Organization Affairs; the Bureau of Diplomatic Security; the Bureau of Intelligence

---

[2] Searches of other relevant offices were not conducted because they had been searched in connection with Larson's prior FOIA/Privacy Act requests.  Id.

and Research; the Bureau of Political Military Affairs; the Office of the Legal Adviser; the

Office of Overseas Citizens Services; and the American Embassy in Guatemala.  Id. at ¶ 6.

These searches resulted in the retrieval of three responsive records.  Id.  On April 29, 1999, DOS

released in part two of these documents, with excisions made pursuant to FOIA Exemption 6,

and notified Larson that it was fully withholding the remaining document pursuant to FOIA

Exemption 6.  Id., Ex. 4.  On May 17, 2000, DOS released in part the one document previously

withheld in full, with excisions made pursuant to FOIA Exemption 6.  Id., Ex. 6.

5.      With regard to Case No. 199702793, DOS searched the following offices deemed

likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western

Hemisphere Affairs; the Bureau of Democracy, Human Rights and Labor; the Bureau of

International Organization Affairs; the Bureau of Diplomatic Security; the Bureau of Intelligence

and Research; the Bureau of Political Military Affairs; the Office of the Legal Adviser; the

Office of Overseas Citizens Services; and the American Embassy in Guatemala.  Id. at ¶ 7.

These searches resulted in the retrieval of one responsive record.  Id.  On November 29, 2000,

this document was released in full.  Id., Ex. 10.

6.      With regard to Case No. 199702794, DOS searched the following offices deemed

likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western

Hemisphere Affairs; the Bureau of Democracy, Human Rights and Labor; the Bureau of

International Organization Affairs; the Bureau of Diplomatic Security; the Bureau of Intelligence

and Research; the Bureau of Political Military Affairs; the Office of the Legal Adviser; the

Office of Overseas Citizens Services; and the American Embassy in Guatemala.  Id. at ¶ 8.

These searches resulted in the retrieval of two-hundred and six (206) records.  Id.  On November

- 3 -

3, 1999, DOS released  in full three documents, and released in part one document, with

excisions made pursuant to FOIA Exemption 6.  Id., Ex. 11.  On January 31, 2003, DOS released

in full one-hundred and twenty-six (126) documents, and released in part four documents, with

excisions made pursuant to FOIA Exemption 6.  Id., Ex. 12.  In a second disclosure made on

January 31, 2003, DOS released in full sixty-four (64) documents; released in part five

documents, with excisions made pursuant to FOIA Exemption 6; and notified Larson that it was

fully withholding one document pursuant to FOIA Exemption 6.  Id., Ex. 13.  In a third

disclosure made on January 31, 2003, DOS released in full two documents.  Id., Ex. 14.  Finally,

in connection with the preparation of the Dowling Declaration, DOS has determined that the

document previously withheld in full can be released in part, with excisions made pursuant to

FOIA Exemption 6.  Id. at ¶ 8.

   7.  With regard to Case No. 199702795, DOS searched its Central Foreign Policy

Records.  Id. at ¶ 9.  This search resulted in the retrieval of sixty-eight (68) responsive records.

Id.  On January 30, 1999, DOS released in full sixty-one (61) of these documents, and notified

Larson that it was fully withholding the remaining seven documents pursuant to FOIA

Exemptions 1, 3, 5, and 6.  Id., Ex. 16.  Of these seven fully withheld documents, five were

released in part, with excisions made pursuant to FOIA Exemptions 1, 3, and 6, on July 12, 1999,

and one was released in full on May 15, 2000.  Id., Exs. 18, 19.

   B.  <u>Requests of Paul Joslin</u>

   8.  By letter received on January 11, 1996, Plaintiff Paul Joslin submitted a

FOIA/Privacy Act request to DOS.  Dowling Declaration (Ex. A),  ¶ 14, Ex. 40.  Joslin requested

copies of all records pertaining to the death of Brother James Alfred Miller in Guatemala in 1982, and related topics.  Id.

9.       In response to Joslin's request, which was assigned Case No. 199600061, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western Hemisphere Affairs; and the Bureau of Democracy, Human Rights and Labor.  Id. at ¶ 14.  The search of the Central Foreign Policy Records resulted in the retrieval of thirty-six (36) responsive records.  Id.  On October 22, 1998, DOS released in full twenty-nine (29) of these documents, and released in part the remaining seven documents, with excisions made pursuant to FOIA Exemption 6.  Id., Ex. 42.  The search of the Bureau of Democracy, Human Rights and Labor resulted in the retrieval of an additional three responsive records, all of which were released in full on July 22, 1999.  Id., Ex. 45.  On July 22, 1999, DOS further notified Joslin that records of the Bureau of Western Hemisphere Affairs which may have been responsive to his request had been destroyed pursuant to applicable record disposition schedules, and were therefore no longer available.  Id.

10.      By letter dated August 7, 1997, Joslin, through counsel, submitted a second FOIA/Privacy Act request to DOS.  Id. at ¶ 15, Ex. 20.  Joslin again requested copies of all records pertaining to the death of Brother James Alfred Miller in Guatemala in 1982, and related topics.  Id.

11.      DOS proceeded to assign the following case control numbers to different aspects of Joslin's request:  No. 199702975 (records pertaining to Miller's death); No. 199702976 (records pertaining to threats made against the order of the Christian Brothers in Guatemala around the same time); No. 199702977 (records pertaining to Joslin's contacts with U.S. officials

regarding Miller's death); and No. 199702978 (copies of certain identified cable traffic).  Id. at ¶ 15.

12.     With regard to Case No. 199702975, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Diplomatic Security; the Bureau of Intelligence and Research;  the Office of the Legal Adviser; the Office of Overseas Citizens Services; and the Bureau of International Narcotics and Law Enforcement Affairs.  Id.  These searches resulted in the retrieval of thirty-six (36) responsive records.  Id.  Of these documents, twenty-six (26) were released in full on March 31, 1999, nine were released in full on August 17, 1999, and the remaining one was released in full in a second disclosure made on August 17, 1999.  Id., Exs. 21-23.

13.     With regard to Case No. 199702976, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western Hemisphere Affairs; the Bureau of Diplomatic Security; the Bureau of Intelligence and Research; the Bureau of Political Military Affairs; the Bureau of Consular Affairs; the Office of Overseas Citizens Services; and the Bureau of International Narcotics and Law Enforcement Affairs.  Id. at ¶ 16.  These searches resulted in the retrieval of two responsive records.  Id.  On December 1, 1999, DOS released in part these two documents, with excisions made pursuant to FOIA Exemption 6.  Id., Ex. 24.

14.     With regard to Case No. 199702977, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western Hemisphere Affairs; the Bureau of Intelligence and Research; the Bureau of Political Military Affairs; the Bureau of International Narcotics and Law Enforcement Affairs; the Bureau of

Diplomatic Security; the Office of the Legal Adviser; the Office of the Deputy Assistant

Secretary for Overseas Citizens Services; and the Office of the Coordinator for Counter

Terrorism.  Id. at ¶ 17.  These searches did not result in the retrieval of any responsive records

that had not previously been released to Joslin.  Id., Ex. 26.

15.     With regard to Case No. 199702978, DOS notified Joslin by letter dated October

24, 2000 that the particular cables requested were publicly available in their entirety at the

"Guatemala Collection" on DOS's FOIA website.  Id., ¶ 18, Ex. 27.

     C.     <u>Request of Thomas Henehan</u>

16.     By letter dated September 4, 1997, Plaintiff Thomas Henehan, through counsel,

submitted a FOIA request to DOS.  Dowling Declaration (Ex. A), ¶ 19, Ex. 28.  Henehan

requested copies of all records pertaining to the death of Father William H. Woods in Guatemala

in 1976, and related topics.  Id.

17.     In response to Henehan's request, which was assigned Case No. 199703182, DOS

searched the following offices deemed likely to have responsive records:  the Central Foreign

Policy Records; the Bureau of Western Hemisphere Affairs; the Bureau of Diplomatic Security;

the Bureau of Intelligence and Research; the Office of the Legal Adviser; the Office of Overseas

Citizens Services; and the Bureau of International Narcotics and Law Enforcement Affairs.  Id. at

¶ 19.  These searches resulted in the retrieval of twenty-three (23) responsive records.  Id.  On

October 21, 1999, DOS released in full twenty-one (21) of these documents, and released in part

the remaining two documents, with excisions made pursuant to FOIA Exemption 6.  Id., Ex. 29.

D.      Request of Kimi Okada

18.     By letter dated January 21, 2002, Plaintiff Kimi Okada, through counsel,

submitted a FOIA request to DOS.  Dowling Declaration (Ex. A), at ¶ 21, Ex. 32.  Okada

requested copies of all records pertaining to the death of her brother, Dr. Michael Okada, in

Guatemala in 1976.  Id.

19.     DOS initially assigned to Okada's request Case No. 200200766.  Id. at ¶ 21.  By

letter dated March 18, 2002, DOS informed Okada's counsel that it required additional

information in order to process Okada's request.  Id., Ex. 33.  After Okada's counsel provided the

necessary information by letter dated August 22, 2002, DOS re-opened its processing of Okada's

request under the new Case No. 200202903.  Id., Ex. 34.

20.     In response to Okada's request, DOS searched the following offices deemed likely

to have responsive records:  the Central Foreign Policy Records and the Bureau of Western

Hemisphere Affairs.  Id. at ¶ 21.  These searches resulted in the retrieval of five responsive

records.  Id.  On November 18, 2002, DOS released in full all five documents.  Id., Ex. 35.

E.      Request of Adriana Portillo-Bartow

21.     By letter dated July 12, 2002, Plaintiff Adriana Portillo-Bartow, through counsel,

submitted a FOIA request to DOS.  Dowling Declaration (Ex. A), ¶ 22, Ex. 36.  Portillo-Bartow

requested copies of all records pertaining to the disappearance of her father, Adrian Portillo

Alcantara, in Guatemala in 1981.[3]  Id.

_____

[3]In Portillo-Bartow's request to DOS, her father was identified as Adrian Portillo-Bartow.
He will be referred to herein as Adrian Portillo Alcantara, as he has been identified in Plaintiffs'
Complaint.  See, e.g., Complaint, ¶¶ 56-58.

22.     In response to Portillo-Bartow's request, which was assigned Case No. 200202417, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western Hemisphere Affairs; and the American Embassy in Guatemala.  Id. at ¶ 22.  These searches resulted in the retrieval of four responsive records.  Id.  On November 22, 2002, DOS released in full two of these documents, and notified Portillo-Bartow that it was fully withholding the other two documents pursuant to FOIA Exemption 5.  Id., Ex. 37.

F.     Request of Lisel Holdenried

23.     By letter dated May 30, 2002, Plaintiff Lisel Holdenried, through counsel, submitted a FOIA request to DOS.  Dowling Declaration (Ex. A), ¶ 23, Ex. 38.  Holdenried requested copies of all records pertaining to the death of her father, Frank Holdenried, in Guatemala in 1983.  Id.

24.     In response to Holdenried's request, which has been assigned Case No. 200201872, DOS has searched the following offices deemed likely to have responsive records: the Central Foreign Policy Records; the Bureau of Western Hemisphere Affairs; the Office of Passport Services; the Office of Overseas Citizen Services; and the American Embassy in Guatemala.  Id. at ¶ 23.  The search of the Central Foreign Policy Records resulted in the retrieval of thirty-five (35) responsive records.  On March 28, 2003, DOS released in full all thirty-five (35) of these documents.  Id., Ex. 39.

25.     DOS's search of its other identified offices remains ongoing, pursuant to the Court's grant, by order dated January 24, 2003, of a stay of proceedings until September 30, 2003.

- 9 -

G.      Referral from NSA

26.      By letter dated September 4, 1997, Plaintiff Thomas Henehan, through counsel,

submitted a FOIA request to NSA.  See Declaration of Louis F. Giles, dated May 22, 2003

(hereinafter "Giles Declaration") (attached hereto as Exhibit B), ¶ 15, Ex. 12.  Henehan requested

copies of all records pertaining to the death of Father William H. Woods in Guatemala in 1976,

and related topics.  Id.  NSA's search for responsive records resulted in the retrieval of two

documents that originated with DOS, and which were referred to DOS for its review and direct

response to Henehan.  Id. at ¶ 16-17.

27.      DOS assigned Case No. 199800834 to the two documents referred by NSA.  See

Dowling Declaration (Ex. A), ¶ 20.  On April 8, 1998, DOS released in full both of these

documents.  Id., Ex. 54.

H.      Referral from DIA

28.      By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel,

submitted a FOIA/Privacy Act request to DIA.  See Declaration of Robert P. Richardson, dated

May 13, 2003 (hereinafter "Richardson Declaration") (attached hereto as Exhibit C), ¶ 6.  Larson

requested copies of all records pertaining to herself and Peace Brigades International.  Id.  DIA's

search for responsive records resulted in the retrieval of thirty (30) documents that originated

with DOS.  Some of these documents, pursuant to an earlier request, already had been referred to

DOS for its review and direct response to Larson; the remaining documents were newly referred

to DOS for the same purpose.  Id. at ¶ 7.

29.      Twenty-six (26) of the responsive documents originating with DOS had been

referred by DIA to DOS on July 29, 1996, and at that time were assigned, by DOS, Case No.

- 10 -

199602965.  See Dowling Declaration (Ex. A), ¶ 11.  On September 11, 1997, DOS released in full eighteen of these documents; released in part four documents, with excisions made pursuant to FOIA Exemptions 1 and 6; and notified Larson that it was fully withholding the remaining four documents pursuant to FOIA Exemptions 1, 5, and 6.  Id., Ex. 48.  On November 7, 1997, DOS released in full six of the eight documents previously withheld in full or in part, and released in part a seventh document previously withheld in full, with excisions made pursuant to FOIA Exemptions 1 and 6.  Id., Ex. 50.  Thus, of the twenty-six (26) responsive documents referred by DIA to DOS on July 29, 1996, DOS ultimately withheld only two documents in part. Id. at ¶ 11.

30.     Three of the responsive documents originating with DOS were referred by DIA to DOS on August 8, 1997, and were assigned, by DOS, Case No. 199702841.  Id. at ¶ 12.  On November 15, 1999, DOS released in full all three documents.  Id., Ex. 52.

I.     Referral from CIA

31.     By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a FOIA/Privacy Act request to CIA.  See Declaration of William H. McNair, dated May 20, 2003 (hereinafter "McNair Declaration") (attached hereto as Exhibit D), ¶ 32.  Larson requested copies of all records pertaining to her stabbing in Guatemala in 1989, and to threats and attacks made against Peace Brigades International in Guatemala around the same time.  Id. CIA's search for responsive records resulted in the retrieval of two documents that originated with DOS, and which were referred to DOS for its review and direct response to Larson.  See Dowling Declaration (Ex. A), ¶ 13; see also McNair Declaration (Ex. D), ¶ 9.

32. DOS assigned Case No. 200000612 to the two documents referred by CIA. See Dowling Declaration (Ex. A), ¶ 13. DOS determined that both documents previously had been released in full to Larson, and thus did not re-release additional copies. Id.

**II. NSA**

A. <u>Request of Meredith Larson</u>

33. By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a FOIA/Privacy Act request to NSA. See Giles Declaration (Ex. B), ¶ 6, Ex. 1. Larson requested copies of all records pertaining to her stabbing in Guatemala in 1989, and to threats and attacks made against Peace Brigades International in Guatemala around the same time. Id.

34. In response to Larson's request, NSA conducted a search that resulted in the retrieval of twelve responsive records. Id. at ¶ 8. On January 20, 1998, NSA released in full four of these documents, and released in part the remaining eight documents, with excisions made pursuant to FOIA Exemptions 1 and 3. Id., Ex. 3.

B. <u>Request of Patricia Kerndt</u>

35. By letter dated March 19, 1998, Plaintiff Patricia Kerndt, through counsel, submitted a FOIA request to NSA.[4] Giles Declaration (Ex. B), ¶ 11, Ex 7. Kerndt requested copies of all records pertaining to the death of her sister, Ann Louise Kerndt, in Guatemala in 1976. Id.

---

[4]In her request, Kerndt was identified as Mary Patricia Ahern. She will be referred to herein as Patricia Kerndt, as she has been identified in Plaintiffs' Complaint. See, e.g., Complaint, ¶ 54.

36.     In response to Kerndt's request, NSA conducted a search that resulted in the retrieval of one responsive NSA record.  Id. at ¶ 13.  On August 4, 1998, NSA notified Kerndt that it was fully withholding this document pursuant to FOIA Exemptions 1 and 3.  Id., Ex. 9.

37.     NSA's search also resulted in the retrieval of a potentially responsive record that originated with CIA, and which was referred to CIA for its review and direct response to Kerndt. Id. at ¶ 13.

        C.     Request of Thomas Henehan

38.     By letter dated September 4, 1997, Plaintiff Thomas Henehan, through counsel, submitted a FOIA request to NSA.  Giles Declaration (Ex. B), ¶ 15, Ex. 12.  Henehan requested copies of all records pertaining to the death of Father William H. Woods in Guatemala in 1976, and related topics.  Id.

39.     In response to Henehan's request, NSA conducted a search that resulted in the retrieval of one-hundred and seventy-three (173) responsive NSA records.  Id. at ¶ 16.  On February 19, 1998, NSA released in full six of these documents; released in part thirty (30) documents, with excisions made pursuant to FOIA Exemptions 1, 2, and 3; and notified Henehan that it was fully withholding the remaining one-hundred and thirty-seven (137) documents pursuant to FOIA Exemptions 1 and 3.  Id., Exs. 13, 15.

40.     NSA's search also resulted in the retrieval of a number of potentially responsive records that were referred to other government agencies for their review.  Id. at ¶ 16.  In particular, two documents were referred to DOS for its review and direct response to Henehan; eleven documents were referred to the U.S. Information Agency for its review and direct response to Henehan; four documents were referred to the Department of Defense ("DOD") for

its review and direct response to Henehan; four documents were referred to DOD for its review and response to NSA; and five documents were referred to CIA for its review and response to NSA.  Id. at ¶ 17.

> D.    Request of Adriana Portillo-Bartow

41.    By letter dated July 25, 2002, Plaintiff Adriana Portillo-Bartow, through counsel, submitted a FOIA request to NSA.  Giles Declaration (Ex. B), ¶ 18, Ex. 16.  Portillo-Bartow requested copies of all records pertaining to the disappearance of her father, Adrian Portillo Alcantara, in Guatemala in 1981, and related topics.  Id.

42.    On December 3, 2002, NSA notified Portillo-Bartow that it could neither confirm nor deny the existence of records responsive to her request, pursuant to FOIA Exemptions 1 and 3.  Id. at ¶ 19, Ex. 17.

> E.    Referral from DIA

43.    By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a FOIA/Privacy Act request to DIA.  See Richardson Declaration (Ex. C), ¶ 6.  Larson requested copies of all records pertaining to herself and Peace Brigades International.  Id.  DIA's search for responsive records resulted in the retrieval of one document that originated with NSA, and which, pursuant to an earlier request, already had been referred to NSA for its review and direct response to Larson.  Id. at ¶ 7.

44.    The responsive document originating with NSA had been referred by DIA to NSA on July 29, 1996.  See Giles Declaration (Ex. B), ¶ 21.  On September 18, 1996, NSA notified Larson that it was fully withholding the document pursuant to FOIA Exemptions 1 and 3.  Id., ¶ 22, Ex. 20.

### III.   DIA

#### A.   Request of Meredith Larson

45.      By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a FOIA/Privacy Act request to DIA.  See Richardson Declaration (Ex. C), ¶ 6.  Larson requested copies of all records pertaining to herself and Peace Brigades International.  Id.

46.      In response to Larson's request, DIA searched its Research and Reference Library, DIA's principal records repository for intelligence records.  Id. at ¶¶ 5-6.  This search resulted in the retrieval of one responsive DIA record.  Id. at ¶ 7.  On January 9, 1998, DIA released in part this document, with excisions made pursuant to FOIA Exemptions 2, 3, and 6. Id.

47.      DIA's search also resulted in the retrieval of a number of potentially responsive records that originated with other government agencies.  Some of these documents, pursuant to an earlier request, already had been referred to those agencies for their review and direct response to Larson; the remaining documents were newly referred to the relevant agency for the same purpose.  Id. Altogether, thirty (30) documents were referred to DOS; one document was referred to the Department of the Army; one document was referred to the Coast Guard; one document was referred to NSA; one document was referred to the MAC Intelligence Center; and two documents were referred to CIA.  Id.

#### B.   Request of Paul Joslin

48.      By letter dated August 7, 1997, Plaintiff Paul Joslin, through counsel, submitted a FOIA/Privacy Act request to DIA.  Richardson Declaration (Ex. C), at ¶ 15.  Joslin requested

copies of all records pertaining to the death of Brother James Alfred Miller in Guatemala in 1982, and related topics.  Id.

49.      In response to Joslin's request, DIA searched its Research and Reference Library. Id. at ¶ 6.  This search did not result in the retrieval of any responsive records.  Id. at ¶ 16.

C.      Request of Adriana Portillo-Bartow

50.      By letter faxed on July 12, 2002, Plaintiff Adriana Portillo-Bartow, through counsel, submitted a FOIA request to DIA.  Richardson Declaration (Ex. C), ¶ 19.  Portillo-Bartow requested copies of all records pertaining to the disappearance of her father, Adrian Portillo Alcantara, in Guatemala in 1981, and related topics.[5]  Id.

51.      In response to Portillo-Bartow's request, DIA searched its Research and Reference Library.  Id. at ¶ 6.  This search did not result in the retrieval of any responsive records.  Id. at ¶ 24.

D.      Request of Patricia Kerndt

52.      By letter dated May 30, 2002, Plaintiff Patricia Kerndt, through counsel, submitted a FOIA request to DIA.[6]  Richardson Declaration (Ex. C), ¶ 25.  Kerndt requested copies of all records pertaining to the death of her sister, Ann Kerndt, in Guatemala in 1976.  Id.

53.      In response to Kerndt's request, DIA searched its Research and Reference Library.  Id. at ¶ 6.  This search did not result in the retrieval of any responsive records.  Id. at ¶ 27.

_____

[5]In Portillo-Bartow's request to DIA, her father was identified as Adrian Portillo-Bartow. He will be referred to herein as Adrian Portillo Alcantara, as he has been identified in Plaintiffs' Complaint.  See, e.g., Complaint, ¶¶ 56-58.

[6]In her request, Kerndt was identified as Patricia Ahern.  She will be referred to herein as Patricia Kerndt, as she has been identified in Plaintiffs' Complaint.  See, e.g., Complaint, ¶ 54.

E.      Request of Lisel Holdenried

54.     By letter dated May 30, 2002, Plaintiff Lisel Holdenried, through counsel,

submitted a FOIA request to DIA.  Richardson Declaration (Ex. C), at ¶ 28.  Holdenried

requested copies of all records pertaining to the death of her father, Frank Holdenried, in

Guatemala in 1983.  Id.

55.     In response to Holdenried's request, DIA searched its Research and Reference

Library.  Id. at ¶ 6.  This search did not result in the retrieval of any responsive records.  Id. at ¶

30.

F.      Referral from CIA

56.     By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel,

submitted a FOIA/Privacy Act request to CIA.  See McNair Declaration (Ex. D), ¶ 32.  Larson

requested copies of all records pertaining to her stabbing in Guatemala in 1989, and to threats

and attacks made against Peace Brigades International in Guatemala around the same time.  Id.

CIA's search for responsive records resulted in the retrieval of three documents that originated

with DIA, and which were referred to DIA for its review and direct response to Larson.  See

Richardson Declaration (Ex. C), ¶ 14; see also McNair Declaration (Ex. D), ¶ 9.

57.     On November 19, 2002, DIA released in part the three documents referred by

CIA, with excisions made pursuant to FOIA Exemptions 1, 2, and 3.  See Richardson

Declaration (Ex. C), ¶ 14.

### IV.  CIA

A.   <u>Request of Paul Joslin</u>

58.     By letter dated August 7, 1997, Plaintiff Paul Joslin, through counsel, submitted a FOIA/Privacy Act request to CIA.  <u>See</u> McNair Declaration (Ex. D), ¶ 19.  Joslin requested copies of all records pertaining to the death of Brother James Alfred Miller, and related topics. <u>Id.</u>

59.     In response to Joslin's request, CIA searched the following offices deemed likely to have responsive records:  the Directorate of Operations ("DO"); the Directorate of Intelligence ("DI"); and the Directorate of Administration (renamed in June 2001 the "Mission Support Office", and hereinafter "MSO").  <u>Id.</u> at ¶ 21.  These searches employed a wide range of search terms, as detailed in the McNair Declaration, and resulted in the retrieval of four responsive CIA records.  <u>Id.</u>  On April 20, 1999, CIA released in part these four documents, with excisions made pursuant to FOIA Exemptions 1 and 3.  <u>Id.</u> at ¶ 22.

B.   <u>Request of Adriana Portillo-Bartow</u>

60.     By letter dated August 22, 2002, Plaintiff Adriana Portillo-Bartow, through counsel, submitted a FOIA request to CIA.  McNair Declaration (Ex. D), ¶ 23.  Portillo-Bartow requested copies of all records pertaining to the disappearance of her father, Adrian Portillo Alcantara, and related topics.  <u>Id.</u>

61.     In response to Portillo-Bartow's request, CIA determined that the DO and the DI were the offices that were likely to have responsive records, and searched those offices.  <u>Id.</u> at ¶¶ 23-24.  These searches employed a wide range of search terms, as detailed in the McNair Declaration, and resulted in the retrieval of four responsive CIA records.  <u>Id.</u> at ¶ 24.  On October

25, 2002, CIA notified Portillo-Bartow that it was fully withholding all four documents pursuant to FOIA Exemptions 1 and 3.  Id. at ¶ 25.

C.    Request of Lisel Holdenried

62.    By letter dated April 14, 1999, Plaintiff Lisel Holdenried submitted a FOIA request to CIA.  McNair Declaration (Ex. D), ¶ 28.  Holdenried requested copies of all records pertaining to the death of her father, Frank Holdenried.  Id.

63.    By letter dated May 6, 1999, CIA notified Holdenried that it had conducted two previous searches for information on Mr. Holdenried, including an exhaustive special search on behalf of the National Security Council, but had not found any responsive records.  Id. at ¶ 29. Nevertheless, CIA stated it would conduct an updated search in response to Holdenried's request. Id.  CIA proceeded to search the following offices deemed likely to have responsive records:  the DO, the DI, and the Director of Central Intelligence Area ("DCI Area").  Id. at ¶ 31.  These searches employed a wide range of search terms (detailed in the McNair Declaration), but did not result in the retrieval of any responsive CIA records.  Id.

D.    Request of Meredith Larson

64.    By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a FOIA/Privacy Act request to CIA.  McNair Declaration (Ex. D), ¶ 32.  Larson requested copies of all records pertaining to her stabbing in Guatemala in 1989, and to threats and attacks made against Peace Brigades International in Guatemala around the same time.  Id.

65.    In response to Larson's request, CIA determined that the DO and the DI were the offices that were likely to have responsive records, and searched those offices.  Id. at ¶ 35.  These

searches employed a wide range of search terms (detailed in the McNair Declaration), but did not result in the retrieval of any responsive CIA records.  Id. at ¶¶ 35-36.

E.     Referral from NSA

66.     By letter dated March 19, 1998, Plaintiff Patricia Kerndt, through counsel, submitted a FOIA request to NSA.  See Giles Declaration (Ex. B), ¶ 11, Ex. 7.  Kerndt requested copies of all records pertaining to the death of her sister, Ann Louise Kerndt, in Guatemala in 1976.  Id.  NSA's search for responsive records resulted in the retrieval of a document that originated with CIA, and which was referred to CIA for its review and direct response to Kerndt. Id. at ¶ 13.

67.     CIA released in part the document referred by NSA, with excisions made pursuant to FOIA Exemption 3.  See McNair Declaration (Ex. D), ¶ 8.

F.     Referral from DIA

68.     By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a FOIA/Privacy Act request to DIA.  See Richardson Declaration (Ex. C), ¶ 6.  Larson requested copies of all records pertaining to herself and Peace Brigades International.  Id.  DIA's search for responsive records resulted in the retrieval of two documents that originated with CIA, and which, pursuant to an earlier request, already had been referred to CIA for its review and direct response to Larson.  Id. at ¶ 7.

69.     CIA released in part the two documents referred by DIA, with excisions made pursuant to FOIA Exemption 3.  See McNair Declaration (Ex. D), ¶ 8.

V.       **NTSB**

A.       Request of Patricia Kerndt

70.      By letter dated May 30, 2002, Plaintiff Patricia Kerndt, through counsel,

submitted a FOIA request to NTSB.[7] See Declaration of Melba D. Moye, dated April 14, 2003

(hereinafter "Moye Declaration.") (attached hereto as Exhibit E), ¶ 4(a).  Kerndt requested copies

of all records of any NTSB or Guatemalan government agency investigation of the reported crash

of a Cessna, Model 185, near Quiche, Guatemala in 1976.  Id. at ¶ 4(b).

71.      In response to Kerndt's request, NTSB searched the following offices deemed

likely to have responsive records: the Public Inquiries Branch of the Office of Research and

Engineering, the Office of Aviation Safety, and the Office of Safety Recommendations and

Accomplishments.  Id. at ¶ 4(c).  Altogether, these three offices maintain, and have control and

access to, the four sets of records kept by NTSB with regard to accident investigations, as

detailed in the Moye Declaration.  Id. at ¶¶ 3, 4(c).  The search conducted by each NTSB office

of available records was not limited to the particular year cited by Kerndt's request.  Id. at ¶ 4(d).

72.      None of the NTSB offices listed above found any records responsive to Kerndt's

request.  Id. at ¶¶ 4(d)-(e).

---

[7]In this request, Kerndt was identified as Mary Patricia Ahern.  She will be referred to
herein as Patricia Kerndt, as she has been identified in Plaintiffs' Complaint.  See, e.g.,
Complaint, ¶ 54.

- 21 -

Respectfully submitted,


ROBERT D. McCALLUM, JR.
Assistant Attorney General


/s/_____
ELIZABETH J. SHAPIRO
D.C. Bar #418925
Assistant Branch Director
U.S. Department of Justice, Civil Division
Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C.  20044
Delivery Address
20 Massachusetts Ave., N.W., Room 7152
Washington, D.C. 20001
Tel.: (202) 514-5302
Fax: (202) 616-8202
Email: Elizabeth.Shapiro@usdoj.gov


**Counsel for Defendants**


Dated:  May 30, 2003

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MEREDITH LARSON, | ) | |
| ADRIANA PORTILLO-BARTOW, | ) | |
| PAUL JOSLIN, | ) | |
| THOMAS HENEHAN, | ) | |
| LISEL HOLDENRIED, | ) | |
| PATRICIA KERNDT, and | ) | |
| KIMI OKADA, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 02-01937-PLF |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF STATE, CENTRAL | ) | |
| INTELLIGENCE AGENCY, NATIONAL | ) | |
| SECURITY AGENCY, DEFENSE | ) | |
| INTELLIGENCE AGENCY, and NATIONAL | ) | |
| TRANSPORTATION SAFETY BOARD, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS DEPARTMENT OF STATE, NATIONAL SECURITY AGENCY, AND DEFENSE INTELLIGENCE AGENCY'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT, and DEFENDANTS CENTRAL INTELLIGENCE AGENCY AND NATIONAL TRANSPORTATION SAFETY BOARD'S MOTIONS FOR SUMMARY JUDGMENT

## INTRODUCTION

Plaintiffs in this action have sought various records under the Freedom of Information

Act ("FOIA") and the Privacy Act from Defendants Department of State ("DOS"), National

Security Agency ("NSA"), Defense Intelligence Agency ("DIA"), Central Intelligence Agency

("CIA"), and National Transportation Safety Board ("NTSB"). The plaintiffs' separate requests

concern various violent acts committed in Guatemala in the 1970s and 1980s. Each defendant

has conducted a thorough search and – excepting certain pending referrals to third party

government agencies – released all responsive, non-exempt documents to the plaintiffs.  Because

the only information that has not been produced – and that is not the subject of a pending referral

– is exempt from disclosure under 5 U.S.C. § 552(b), Defendants DOS, NSA, and DIA are

entitled to partial summary judgment,[8] and Defendants CIA and NTSB are entitled to summary

judgment.

## PROCEDURAL BACKGROUND

I.    **DOS**

A.    Request of Meredith Larson (Count 1)

By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a

FOIA/Privacy Act request to DOS.  See Declaration of Bernard C. Dowling, dated May 14, 2003

(hereinafter "Dowling Declaration") (attached hereto as Exhibit A), ¶ 5, Ex. 1.  Larson requested

copies of all records pertaining to her stabbing in Guatemala in 1989, and to threats and attacks

---

[8]DOS moves for partial summary judgment because, by order dated January 24, 2003, this Court granted DOS's Motion to Stay Proceedings until September 30, 2003 with respect to Plaintiff Lisel Holdenried's claim against DOS, as raised in Count 4 of the plaintiffs' Complaint. DOS otherwise moves for summary judgment on Counts 1-3 and 5-6.

NSA moves for partial summary judgment because, in response to the request that forms the basis for Count 18, NSA has referred some potentially responsive documents to third party government agencies, and some of those referrals are still pending. Thus, NSA moves for summary judgment on Counts 16, 17, and 19, and moves for partial summary judgment on Count 18.

DIA moves for partial summary judgment because in response to the request that forms the basis for Count 7, DIA has referred some potentially responsive documents to third party government agencies, and some of those referrals also are still pending. Thus, DIA moves for summary judgment on Counts 8-11, and moves for partial summary judgment on Count 7.

made against the organization Peace Brigades International ("PBI") in Guatemala around the same time.  Id.

DOS proceeded to assign the following case control numbers to different aspects of Larson's request:  No. 199702754 (records pertaining to Larson's stabbing and her association with PBI); No. 199702792 (records pertaining to May 1989 threats received by PBI); No. 199702793 (records pertaining to other subjects involving PBI and information concerning Guatemalan citizens); No. 199702794 (records relating to earlier FOIA/Privacy Act requests made by Larson to DOS); and No. 199702795 (copies of certain identified cable traffic).  Id. at ¶ 5.

With regard to Case No. 199702754, DOS searched its Central Foreign Policy Records, DOS's centralized automated record system.[9]  Id.  This search resulted in the retrieval of eight responsive records.  Id.  Of these documents, one was released in full on January 6, 2003, six were released in full on January 8, 2003, and the remaining one was released in part, with excisions made pursuant to FOIA Exemption 6, on January 8, 2003.  Id., Ex. 2-3.

With regard to Case No. 199702792, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western Hemisphere Affairs; the Bureau of Democracy, Human Rights and Labor; the Bureau of International Organization Affairs; the Bureau of Diplomatic Security; the Bureau of Intelligence and Research; the Bureau of Political Military Affairs; the Office of the Legal Adviser; the Office of Overseas Citizens Services; and the American Embassy in Guatemala.  Id. at ¶ 6. These searches resulted in the retrieval of three responsive records.  Id.  On April 29, 1999, DOS

---

[9] Searches of other relevant offices were not conducted because they had been searched in connection with Larson's prior FOIA/Privacy Act requests.  Id.

released in part two of these documents, with excisions made pursuant to FOIA Exemption 6, and notified Larson that it was fully withholding the remaining document pursuant to FOIA Exemption 6.  Id., Ex. 4.  On May 17, 2000, DOS released in part the one document previously withheld in full, with excisions made pursuant to FOIA Exemption 6.  Id., Ex. 6.

With regard to Case No. 199702793, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western Hemisphere Affairs; the Bureau of Democracy, Human Rights and Labor; the Bureau of International Organization Affairs; the Bureau of Diplomatic Security; the Bureau of Intelligence and Research; the Bureau of Political Military Affairs; the Office of the Legal Adviser; the Office of Overseas Citizens Services; and the American Embassy in Guatemala.  Id. at ¶ 7. These searches resulted in the retrieval of one responsive record.  Id.  On November 29, 2000, this document was released in full.  Id., Ex. 10.

With regard to Case No. 199702794, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western Hemisphere Affairs; the Bureau of Democracy, Human Rights and Labor; the Bureau of International Organization Affairs; the Bureau of Diplomatic Security; the Bureau of Intelligence and Research; the Bureau of Political Military Affairs; the Office of the Legal Adviser; the Office of Overseas Citizens Services; and the American Embassy in Guatemala.  Id. at ¶ 8. These searches resulted in the retrieval of two-hundred and six (206) records.  Id.  On November 3, 1999, DOS released  in full three documents, and released in part one document, with excisions made pursuant to FOIA Exemption 6.  Id., Ex. 11.  On January 31, 2003, DOS released in full one-hundred and twenty-six (126) documents, and released in part four documents, with

excisions made pursuant to FOIA Exemption 6.  Id., Ex. 12.  In a second disclosure made on

January 31, 2003, DOS released in full sixty-four (64) documents; released in part five

documents, with excisions made pursuant to FOIA Exemption 6; and notified Larson that it was

fully withholding one document pursuant to FOIA Exemption 6.  Id., Ex. 13.  In a third

disclosure made on January 31, 2003, DOS released in full two documents.  Id., Ex. 14.  Finally,

in connection with the preparation of the Dowling Declaration, DOS has determined that the

document previously withheld in full can be released in part, with excisions made pursuant to

FOIA Exemption 6.  Id. at ¶ 8.

   With regard to Case No. 199702795, DOS searched its Central Foreign Policy Records.

Id. at ¶ 9.  This search resulted in the retrieval of sixty-eight (68) responsive records.  Id.  On

January 30, 1999, DOS released in full sixty-one (61) of these documents, and notified Larson

that it was fully withholding the remaining seven documents pursuant to FOIA Exemptions 1, 3,

5, and 6.  Id., Ex. 16.  Of these seven fully withheld documents, five were released in part, with

excisions made pursuant to FOIA Exemptions 1, 3, and 6, on July 12, 1999, and one was

released in full on May 15, 2000.  Id., Exs. 18, 19.

   B.   Requests of Paul Joslin (Count 6)

   By letter received on January 11, 1996, Plaintiff Paul Joslin submitted a FOIA/Privacy

Act request to DOS.  Dowling Declaration (Ex. A), ¶ 14, Ex. 40.  Joslin requested copies of all

records pertaining to the death of Brother James Alfred Miller in Guatemala in 1982, and related

topics.  Id.

   In response to Joslin's request, which was assigned Case No. 199600061, DOS searched

the following offices deemed likely to have responsive records:  the Central Foreign Policy

Records; the Bureau of Western Hemisphere Affairs; and the Bureau of Democracy, Human

Rights and Labor.  Id. at ¶ 14.  The search of the Central Foreign Policy Records resulted in the

retrieval of thirty-six (36) responsive records.  Id.  On October 22, 1998, DOS released in full

twenty-nine (29) of these documents, and released in part the remaining seven documents, with

excisions made pursuant to FOIA Exemption 6.  Id., Ex. 42.  The search of the Bureau of

Democracy, Human Rights and Labor resulted in the retrieval of an additional three responsive

records, all of which were released in full on July 22, 1999.  Id., Ex. 45.  On July 22, 1999, DOS

further notified Joslin that records of the Bureau of Western Hemisphere Affairs which may have

been responsive to his request had been destroyed pursuant to applicable record disposition

schedules, and were therefore no longer available.  Id.

By letter dated August 7, 1997, Joslin, through counsel, submitted a second

FOIA/Privacy Act request to DOS.  Id. at ¶ 15, Ex. 20.  Joslin again requested copies of all

records pertaining to the death of Brother James Alfred Miller in Guatemala in 1982, and related

topics.  Id.

DOS proceeded to assign the following case control numbers to different aspects of

Joslin's request:  No. 199702975 (records pertaining to Miller's death); No. 199702976 (records

pertaining to threats made against the order of the Christian Brothers in Guatemala around the

same time); No. 199702977 (records pertaining to Joslin's contacts with U.S. officials regarding

Miller's death); and No. 199702978 (copies of certain identified cable traffic).  Id. at ¶ 15.

With regard to Case No. 199702975, DOS searched the following offices deemed likely

to have responsive records:  the Central Foreign Policy Records; the Bureau of Diplomatic

Security; the Bureau of Intelligence and Research;  the Office of the Legal Adviser; the Office of

Overseas Citizens Services; and the Bureau of International Narcotics and Law Enforcement Affairs. Id.  These searches resulted in the retrieval of thirty-six (36) responsive records. Id.  Of these documents, twenty-six (26) were released in full on March 31, 1999, nine were released in full on August 17, 1999, and the remaining one was released in full in a second disclosure made on August 17, 1999. Id., Exs. 21-23.

With regard to Case No. 199702976, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western Hemisphere Affairs; the Bureau of Diplomatic Security; the Bureau of Intelligence and Research; the Bureau of Political Military Affairs; the Bureau of Consular Affairs; the Office of Overseas Citizens Services; and the Bureau of International Narcotics and Law Enforcement Affairs. Id. at ¶ 16.  These searches resulted in the retrieval of two responsive records. Id.  On December 1, 1999, DOS released in part these two documents, with excisions made pursuant to FOIA Exemption 6. Id., Ex. 24.

With regard to Case No. 199702977, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western Hemisphere Affairs; the Bureau of Intelligence and Research; the Bureau of Political Military Affairs; the Bureau of International Narcotics and Law Enforcement Affairs; the Bureau of Diplomatic Security; the Office of the Legal Adviser; the Office of the Deputy Assistant Secretary for Overseas Citizens Services; and the Office of the Coordinator for Counter Terrorism. Id. at ¶ 17.  These searches did not result in the retrieval of any responsive records that had not previously been released to Joslin. Id., Ex. 26.

- 7 -

With regard to Case No. 199702978, DOS notified Joslin by letter dated October 24, 2000 that the particular cables requested were publicly available in their entirety at the "Guatemala Collection" on DOS's FOIA website.[10]  Id., ¶ 18, Ex. 27.

C.    Request of Thomas Henehan (Count 3)

By letter dated September 4, 1997, Plaintiff Thomas Henehan, through counsel, submitted a FOIA request to DOS.  Dowling Declaration (Ex. A), at ¶ 19, Ex. 28.  Henehan requested copies of all records pertaining to the death of Father William H. Woods in Guatemala in 1976, and related topics.  Id.

In response to Henehan's request, which was assigned Case No. 199703182, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records; the Bureau of Western Hemisphere Affairs; the Bureau of Diplomatic Security; the Bureau of Intelligence and Research; the Office of the Legal Adviser; the Office of Overseas Citizens Services; and the Bureau of International Narcotics and Law Enforcement Affairs.  Id. at ¶ 19.  These searches resulted in the retrieval of twenty-three (23) responsive records.  Id.  On October 21, 1999, DOS released in full twenty-one (21) of these documents, and released in part the remaining two documents, with excisions made pursuant to FOIA Exemption 6.  Id., Ex. 29.

---

[10]The "Guatemala Collection" is a public set of records pertaining to human rights violations against American citizens and others in Guatemala during the period 1984-1995 which was made available by DOS in the mid 1990s.  Id. at ¶ 4.  Altogether, the collection features 4,727 documents released in full, and 1,120 documents released in part.  Id.  Included among these documents are records concerning the subjects of interest for many of the plaintiffs in this action, including Larson, Joslin, Okada, and Henehan.  Id.

D.    Request of Kimi Okada (Count 2)

By letter dated January 21, 2002, Plaintiff Kimi Okada, through counsel, submitted a FOIA request to DOS.  Dowling Declaration (Ex. A), at ¶ 21, Ex. 32.  Okada requested copies of all records pertaining to the death of her brother, Dr. Michael Okada, in Guatemala in 1976.  Id.

DOS initially assigned to Okada's request Case No. 200200766.  Id. at ¶ 21.  By letter dated March 18, 2002, DOS informed Okada's counsel that it required additional information in order to process Okada's request.  Id., Ex. 33.  After Okada's counsel provided the necessary information by letter dated August 22, 2002, DOS re-opened its processing of Okada's request under the new Case No. 200202903.  Id., Ex. 34.

In response to Okada's request, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign Policy Records and the Bureau of Western Hemisphere Affairs.  Id. at ¶ 21.  These searches resulted in the retrieval of five responsive records.  Id.  On November 18, 2002, DOS released in full all five documents.  Id., Ex. 35.

E.    Request of Adriana Portillo-Bartow (Count 5)

By letter dated July 12, 2002, Plaintiff Adriana Portillo-Bartow, through counsel, submitted a FOIA request to DOS.  Dowling Declaration (Ex. A), at ¶ 22, Ex. 36.  Portillo-Bartow requested copies of all records pertaining to the disappearance of her father, Adrian Portillo Alcantara, in Guatemala in 1981.[11]  Id.

In response to Portillo-Bartow's request, which was assigned Case No. 200202417, DOS searched the following offices deemed likely to have responsive records:  the Central Foreign

---

[11]In Portillo-Bartow's request to DOS, her father was identified as Adrian Portillo-Bartow.  He will be referred to herein as Adrian Portillo Alcantara, as he has been identified in Plaintiffs' Complaint.  See, e.g., Complaint, ¶¶ 56-58.

Policy Records; the Bureau of Western Hemisphere Affairs; and the American Embassy in

Guatemala.  Id. at ¶ 22.  These searches resulted in the retrieval of four responsive records.  Id.

On November 22, 2002, DOS released in full two of these documents, and notified Portillo-

Bartow that it was fully withholding the other two documents pursuant to FOIA Exemption 5.

Id., Ex. 37.

        F.       <u>Request of Lisel Holdenried (Count 4)</u>

        By letter dated May 30, 2002, Plaintiff Lisel Holdenried, through counsel, submitted a

FOIA request to DOS.  Dowling Declaration (Ex. A), at ¶ 23, Ex. 38.  Holdenried requested

copies of all records pertaining to the death of her father, Frank Holdenried, in Guatemala in

1983.  Id.

        In response to Holdenried's request, which has been assigned Case No. 200201872, DOS

has searched the following offices deemed likely to have responsive records:  the Central Foreign

Policy Records; the Bureau of Western Hemisphere Affairs; the Office of Passport Services; the

Office of Overseas Citizen Services; and the American Embassy in Guatemala.  Id. at ¶ 23.  The

search of the Central Foreign Policy Records resulted in the retrieval of thirty-five (35)

responsive records.  On March 28, 2003, DOS released in full all thirty-five (35) of these

documents.  Id., Ex. 39.

        DOS's search of its other identified offices remains ongoing, pursuant to the Court's

grant, by order dated January 24, 2003, of a stay of proceedings until September 30, 2003.

        G.       <u>Referral from NSA</u>

        By letter dated September 4, 1997, Plaintiff Thomas Henehan, through counsel,

submitted a FOIA request to NSA.  <u>See</u> Declaration of Louis F. Giles, dated May 22, 2003

(hereinafter "Giles Declaration") (attached hereto as Exhibit B), ¶ 15, Ex. 12.  Henehan requested

copies of all records pertaining to the death of Father William H. Woods in Guatemala in 1976,

and related topics.  Id.  NSA's search for responsive records resulted in the retrieval of two

documents that originated with DOS, and which were referred to DOS for its review and direct

response to Henehan.  Id. at ¶ 16-17.

DOS assigned Case No. 199800834 to the two documents referred by NSA.  See

Dowling Declaration (Ex. A), ¶ 20.  On April 8, 1998, DOS released in full both of these

documents.  Id., Ex. 54.

H.      Referral from DIA

By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a

FOIA/Privacy Act request to DIA.  See Declaration of Robert P. Richardson, dated May 13,

2003 (hereinafter "Richardson Declaration") (attached hereto as Exhibit C), ¶ 6.  Larson

requested copies of all records pertaining to herself and Peace Brigades International.  Id.  DIA's

search for responsive records resulted in the retrieval of thirty (30) documents that originated

with DOS.  Some of these documents, pursuant to an earlier request, already had been referred to

DOS for its review and direct response to Larson; the remaining documents were newly referred

to DOS for the same purpose.  Id. at ¶ 7.

Twenty-six (26) of the responsive documents originating with DOS had been referred by

DIA to DOS on July 29, 1996, and at that time were assigned, by DOS, Case No. 199602965.

See Dowling Declaration (Ex. A), ¶ 11.  On September 11, 1997, DOS released in full eighteen

of these documents; released in part four documents, with excisions made pursuant to FOIA

Exemptions 1 and 6; and notified Larson that it was fully withholding the remaining four

- 11 -

documents pursuant to FOIA Exemptions 1, 5, and 6.  Id., Ex. 48.  On November 7, 1997, DOS

released in full six of the eight documents previously withheld in full or in part, and released in

part a seventh document previously withheld in full, with excisions made pursuant to FOIA

Exemptions 1 and 6.  Id., Ex. 50.  Thus, of the twenty-six (26) responsive documents referred by

DIA to DOS on July 29, 1996, DOS ultimately withheld only two documents in part.  Id. at ¶ 11.

Three of the responsive documents originating with DOS were referred by DIA to DOS

on August 8, 1997, and were assigned, by DOS, Case No. 199702841.  Id. at ¶ 12.  On

November 15, 1999, DOS released in full all three documents.  Id., Ex. 52.

I.      Referral from CIA

By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a

FOIA/Privacy Act request to CIA.  See Declaration of William H. McNair, dated May 20, 2003

(hereinafter "McNair Declaration") (attached hereto as Exhibit D), ¶ 32.  Larson requested copies

of all records pertaining to her stabbing in Guatemala in 1989, and to threats and attacks made

against Peace Brigades International in Guatemala around the same time.  Id.  CIA's search for

responsive records resulted in the retrieval of two documents that originated with DOS, and

which were referred to DOS for its review and direct response to Larson.  See Dowling

Declaration (Ex. A), ¶ 13; see also McNair Declaration (Ex. D), ¶ 9.

DOS assigned Case No. 200000612 to the two documents referred by CIA.  See Dowling

Declaration (Ex. A), ¶ 13.  DOS determined that both documents previously had been released in

full to Larson, and thus did not re-release additional copies.  Id.

- 12 -

## II.   NSA

### A.   Request of Meredith Larson (Count 16)

By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a

FOIA/Privacy Act request to NSA.  See Giles Declaration (Ex. B), ¶ 6, Ex. 1.  Larson requested

copies of all records pertaining to her stabbing in Guatemala in 1989, and to threats and attacks

made against Peace Brigades International in Guatemala around the same time.  Id.

In response to Larson's request, NSA conducted a search that resulted in the retrieval of

twelve responsive records.  Id. at ¶ 8.  On January 20, 1998, NSA released in full four of these

documents, and released in part the remaining eight documents, with excisions made pursuant to

FOIA Exemptions 1 and 3.  Id., Ex. 3.

### B.   Request of Patricia Kerndt (Count 17)

By letter dated March 19, 1998, Plaintiff Patricia Kerndt, through counsel, submitted a

FOIA request to NSA.[12]  Giles Declaration (Ex. B), ¶ 11, Ex 7.  Kerndt requested copies of all

records pertaining to the death of her sister, Ann Louise Kerndt, in Guatemala in 1976.  Id.

In response to Kerndt's request, NSA conducted a search that resulted in the retrieval of

one responsive NSA record.  Id. at ¶ 13.  On August 4, 1998, NSA notified Kerndt that it was

fully withholding this document pursuant to FOIA Exemptions 1 and 3.  Id., Ex. 9.

NSA's search also resulted in the retrieval of a potentially responsive record that

originated with CIA, and which was referred to CIA for its review and direct response to Kerndt.

Id. at ¶ 13.

---

[12]In her request, Kerndt was identified as Mary Patricia Ahern.  She will be referred to herein as Patricia Kerndt, as she has been identified in Plaintiffs' Complaint.  See, e.g., Complaint, ¶ 54.

C.     Request of Thomas Henehan (Count 18)

By letter dated September 4, 1997, Plaintiff Thomas Henehan, through counsel, submitted a FOIA request to NSA.  Giles Declaration (Ex. B), ¶ 15, Ex. 12.  Henehan requested copies of all records pertaining to the death of Father William H. Woods in Guatemala in 1976, and related topics.  Id.

In response to Henehan's request, NSA conducted a search that resulted in the retrieval of one-hundred and seventy-three (173) responsive NSA records.  Id. at ¶ 16.  On February 19, 1998, NSA released in full six of these documents; released in part thirty (30) documents, with excisions made pursuant to FOIA Exemptions 1, 2, and 3; and notified Henehan that it was fully withholding the remaining one-hundred and thirty-seven (137) documents pursuant to FOIA Exemptions 1 and 3.  Id., Exs. 13, 15.

NSA's search also resulted in the retrieval of a number of potentially responsive records that were referred to other government agencies for their review.  Id. at ¶ 16.  In particular, two documents were referred to DOS for its review and direct response to Henehan; eleven documents were referred to the U.S. Information Agency ("USIA") for its review and direct response to Henehan; four documents were referred to the Department of Defense ("DOD") for its review and direct response to Henehan; four documents were referred to DOD for its review and response to NSA; and five documents were referred to CIA for its review and response to NSA.  Id. at ¶ 17.

D.     Request of Adriana Portillo-Bartow (Count 19)

By letter dated July 25, 2002, Plaintiff Adriana Portillo-Bartow, through counsel, submitted a FOIA request to NSA.  Giles Declaration (Ex. B), ¶ 18, Ex. 16.  Portillo-Bartow

requested copies of all records pertaining to the disappearance of her father, Adrian Portillo Alcantara, in Guatemala in 1981, and related topics.  Id.

On December 3, 2002, NSA notified Portillo-Bartow that it could neither confirm nor deny the existence of records responsive to her request, pursuant to FOIA Exemptions 1 and 3. Id. at ¶ 19, Ex. 17.

E.     Referral from DIA

By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a FOIA/Privacy Act request to DIA.  See Richardson Declaration (Ex. C), ¶ 6.  Larson requested copies of all records pertaining to herself and Peace Brigades International.  Id.  DIA's search for responsive records resulted in the retrieval of one document that originated with NSA, and which, pursuant to an earlier request, already had been referred to NSA for its review and direct response to Larson.  Id. at ¶ 7.

The responsive document originating with NSA had been referred by DIA to NSA on July 29, 1996.  See Giles Declaration (Ex. B), ¶ 21.  On September 18, 1996, NSA notified Larson that it was fully withholding the document pursuant to FOIA Exemptions 1 and 3.  Id., ¶ 22, Ex. 20.

### III.    DIA

#### A.    Request of Meredith Larson (Count 7)

By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a

FOIA/Privacy Act request to DIA.  <u>See</u> Richardson Declaration (Ex. C), ¶ 6.  Larson requested

copies of all records pertaining to herself and Peace Brigades International.  <u>Id.</u>

In response to Larson's request, DIA searched its Research and Reference Library, DIA's

principal records repository for intelligence records.  <u>Id.</u> at ¶¶ 5-6.  This search resulted in the

retrieval of one responsive DIA record.  <u>Id.</u> at ¶ 7.  On January 9, 1998, DIA released in part this

document, with excisions made pursuant to FOIA Exemptions 2, 3, and 6.  <u>Id.</u>

DIA's search also resulted in the retrieval of a number of potentially responsive records

that originated with other government agencies.  Some of these documents, pursuant to an earlier

request, already had been referred to those agencies for their review and direct response to

Larson; the remaining documents were newly referred to the relevant agency for the same

purpose.  <u>Id.</u>  Altogether, thirty (30) documents were referred to DOS; one document was

referred to the Department of the Army; one document was referred to the Coast Guard; one

document was referred to NSA; one document was referred to the MAC Intelligence Center; and

two documents were referred to CIA.  <u>Id.</u>

#### B.    Request of Paul Joslin (Count 11)

By letter dated August 7, 1997, Plaintiff Paul Joslin, through counsel, submitted a

FOIA/Privacy Act request to DIA.  Richardson Declaration (Ex. C), ¶ 15.  Joslin requested

copies of all records pertaining to the death of Brother James Alfred Miller in Guatemala in

1982, and related topics.  <u>Id.</u>

In response to Joslin's request, DIA searched its Research and Reference Library.  Id. at ¶ 6.  This search did not result in the retrieval of any responsive records.  Id. at ¶ 16.

C.     Request of Adriana Portillo-Bartow (Count 9)

By letter faxed on July 12, 2002, Plaintiff Adriana Portillo-Bartow, through counsel, submitted a FOIA request to DIA.  Richardson Declaration (Ex. C), ¶ 19.  Portillo-Bartow requested copies of all records pertaining to the disappearance of her father, Adrian Portillo Alcantara, in Guatemala in 1981, and related topics.[13]  Id.

In response to Portillo-Bartow's request, DIA searched its Research and Reference Library.  Id. at ¶ 6.  This search did not result in the retrieval of any responsive records.  Id. at ¶ 24.

D.     Request of Patricia Kerndt (Count 10)

By letter dated May 30, 2002, Plaintiff Patricia Kerndt, through counsel, submitted a FOIA request to DIA.[14]  Richardson Declaration (Ex. C), ¶ 25.  Kerndt requested copies of all records pertaining to the death of her sister, Ann Kerndt, in Guatemala in 1976.  Id.

In response to Kerndt's request, DIA searched its Research and Reference Library.  Id. at ¶ 6.  This search did not result in the retrieval of any responsive records.  Id. at ¶ 27.

---

[13]In Portillo-Bartow's request to DIA, her father was identified as Adrian Portillo-Bartow. He will be referred to herein as Adrian Portillo Alcantara, as he has been identified in Plaintiffs' Complaint.  See, e.g., Complaint, ¶¶ 56-58.

[14]In her request, Kerndt was identified as Patricia Ahern.  She will be referred to herein as Patricia Kerndt, as she has been identified in Plaintiffs' Complaint.  See, e.g., Complaint, ¶ 54.

- 17 -

E.      Request of Lisel Holdenried (Count 8)

By letter dated May 30, 2002, Plaintiff Lisel Holdenried, through counsel, submitted a FOIA request to DIA.  Richardson Declaration (Ex. C), ¶ 28.  Holdenried requested copies of all records pertaining to the death of her father, Frank Holdenried, in Guatemala in 1983.  Id.

In response to Holdenried's request, DIA searched its Research and Reference Library. Id. at ¶ 6.  This search did not result in the retrieval of any responsive records.  Id. at ¶ 30.

F.      Referral from CIA

By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a FOIA/Privacy Act request to CIA.  See McNair Declaration (Ex. D), ¶ 32.  Larson requested copies of all records pertaining to her stabbing in Guatemala in 1989, and to threats and attacks made against Peace Brigades International in Guatemala around the same time.  Id.  CIA's search for responsive records resulted in the retrieval of three documents that originated with DIA, and which were referred to DIA for its review and direct response to Larson.  See Richardson Declaration (Ex. C), ¶ 14; see also McNair Declaration (Ex. D), ¶ 9.

On November 19, 2002, DIA released in part the three documents referred by CIA, with excisions made pursuant to FOIA Exemptions 1, 2, and 3.  See Richardson Declaration (Ex. C), ¶ 14.

**IV.     CIA**

A.      Request of Paul Joslin (Count 15)

By letter dated August 7, 1997, Plaintiff Paul Joslin, through counsel, submitted a FOIA/Privacy Act request to CIA.  See McNair Declaration (Ex. D), ¶ 19.  Joslin requested

- 18 -

copies of all records pertaining to the death of Brother James Alfred Miller, and related topics.
Id.

In response to Joslin's request, CIA searched the following offices deemed likely to have responsive records:  the Directorate of Operations ("DO"); the Directorate of Intelligence ("DI"); and the Directorate of Administration (renamed in June 2001 the "Mission Support Office", and hereinafter "MSO").  Id. at ¶ 21.  These searches employed a wide range of search terms, as detailed in the McNair Declaration, and resulted in the retrieval of four responsive CIA records. Id.  On April 20, 1999, CIA released in part these four documents, with excisions made pursuant to FOIA Exemptions 1 and 3.  Id. at ¶ 22.

### B.      Request of Adriana Portillo-Bartow (Count 14)

By letter dated August 22, 2002, Plaintiff Adriana Portillo-Bartow, through counsel, submitted a FOIA request to CIA.  McNair Declaration (Ex. D), ¶ 23.  Portillo-Bartow requested copies of all records pertaining to the disappearance of her father, Adrian Portillo Alcantara, and related topics.  Id.

In response to Portillo-Bartow's request, CIA determined that the DO and the DI were the offices that were likely to have responsive records, and searched those offices.  Id. at ¶¶ 23-24. These searches employed a wide range of search terms, as detailed in the McNair Declaration, and resulted in the retrieval of four responsive CIA records.  Id. at ¶ 24.  On October 25, 2002, CIA notified Portillo-Bartow that it was fully withholding all four documents pursuant to FOIA Exemptions 1 and 3.  Id. at ¶ 25.

C.      Request of Lisel Holdenried (Count 13)

By letter dated April 14, 1999, Plaintiff Lisel Holdenried submitted a FOIA request to

CIA.  McNair Declaration (Ex. D), ¶ 28.  Holdenried requested copies of all records pertaining to

the death of her father, Frank Holdenried.  Id.

By letter dated May 6, 1999, CIA notified Holdenried that it had conducted two previous

searches for information on Mr. Holdenried, including an exhaustive special search on behalf of

the National Security Council, but had not found any responsive records.  Id. at ¶ 29.

Nevertheless, CIA stated it would conduct an updated search in response to Holdenried's request.

Id.  CIA proceeded to search the following offices deemed likely to have responsive records:  the

DO, the DI, and the Director of Central Intelligence Area ("DCI Area").  Id. at ¶ 31.  These

searches employed a wide range of search terms (detailed in the McNair Declaration), but did not

result in the retrieval of any responsive CIA records.  Id.

D.      Request of Meredith Larson (Count 12)

By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a

FOIA/Privacy Act request to CIA.  McNair Declaration (Ex. D), ¶ 32.  Larson requested copies

of all records pertaining to her stabbing in Guatemala in 1989, and to threats and attacks made

against Peace Brigades International in Guatemala around the same time.  Id.

In response to Larson's request, CIA determined that the DO and the DI were the offices

that were likely to have responsive records, and searched those offices.  Id. at ¶ 35.  These

searches employed a wide range of search terms (detailed in the McNair Declaration), but did not

result in the retrieval of any responsive CIA records.  Id. at ¶¶ 35-36.

E.      Referral from NSA

By letter dated March 19, 1998, Plaintiff Patricia Kerndt, through counsel, submitted a FOIA request to NSA.  See Giles Declaration (Ex. B), ¶ 11, Ex. 7.  Kerndt requested copies of all records pertaining to the death of her sister, Ann Louise Kerndt, in Guatemala in 1976.  Id. NSA's search for responsive records resulted in the retrieval of a document that originated with CIA, and which was referred to CIA for its review and direct response to Kerndt.  Id. at ¶ 13.

CIA released in part the document referred by NSA, with excisions made pursuant to FOIA Exemption 3.  See McNair Declaration (Ex. D), ¶ 8.

F.      Referral from DIA

By letter dated July 21, 1997, Plaintiff Meredith Larson, through counsel, submitted a FOIA/Privacy Act request to DIA.  See Richardson Declaration (Ex. C), ¶ 6.  Larson requested copies of all records pertaining to herself and Peace Brigades International.  Id.  DIA's search for responsive records resulted in the retrieval of two documents that originated with CIA, and which, pursuant to an earlier request, already had been referred to CIA for its review and direct response to Larson.  Id. at ¶ 7.

CIA released in part the two documents referred by DIA, with excisions made pursuant to FOIA Exemption 3.  See McNair Declaration (Ex. D), ¶ 8.

## V.    NTSB

A.    Request of Patricia Kerndt (Count 20)

By letter dated May 30, 2002, Plaintiff Patricia Kerndt, through counsel, submitted a

FOIA request to NTSB.[15]  See Declaration of Melba D. Moye, dated April 14, 2003 (hereinafter

"Moye Declaration.") (attached hereto as Exhibit E), ¶ 4(a).  Kerndt requested copies of all

records of any NTSB or Guatemalan government agency investigation of the reported crash of a

Cessna, Model 185, near Quiche, Guatemala in 1976.  Id. at ¶ 4(b).

In response to Kerndt's request, NTSB searched the following offices deemed likely to

have responsive records: the Public Inquiries Branch of the Office of Research and Engineering,

the Office of Aviation Safety, and the Office of Safety Recommendations and Accomplishments.

Id. at ¶ 4(c).  Altogether, these three offices maintain, and have control and access to, the four

sets of records kept by NTSB with regard to accident investigations, as detailed in the Moye

Declaration.  Id. at ¶¶ 3, 4(c).  The search conducted by each NTSB office of available records

was not limited to the particular year cited by Kerndt's request.  Id. at ¶ 4(d).

None of the NTSB offices listed above found any records responsive to Kerndt's request.

Id. at ¶¶ 4(d)-(e).

### ARGUMENT

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is the procedural vehicle by which most FOIA and Privacy Act

actions are resolved.  See, e.g., Rushford v. Civiletti, 485 F.Supp. 477, 481 n.13 (D.D.C. 1980)

---

[15]In this request, Kerndt was identified as Mary Patricia Ahern.  She will be referred to
herein as Patricia Kerndt, as she has been identified in Plaintiffs' Complaint.  See, e.g.,
Complaint, ¶ 54.

("It may also be noted that FOIA cases are almost invariably resolved on summary judgment[.]").  Summary judgment is to be freely granted where there are no material facts genuinely at issue, and the agency is entitled to judgment as a matter of law.  See Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309, 314-15 (D.C. Cir. 1988);  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

Under the FOIA, the court conducts a de novo review to determine whether the government properly withheld records under any of the FOIA's nine statutory exemptions.  See 5 U.S.C. § 552(a)(4)(B).  The government bears the burden of justifying non-disclosure.  See McCutchen v. United States Dep't of Health & Human Services, 30 F.3d 183, 185 (D.C. Cir. 1994).  It may satisfy that burden through submission of an agency declaration that describes the withheld material with reasonable specificity as well as the reasons for non-disclosure, and, if necessary, a Vaughn index.  See United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 753 (1989).

With respect to the adequacy of an agency's search for records, an agency can show that it has discharged its obligations under the FOIA and is entitled to summary judgment by "demonstrat[ing] that it has conducted a search reasonably calculated to uncover all relevant documents."  Weisberg v. Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984);  see also Oglesby v. Department of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.").  The agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  Id.;

- 23 -

Roberts v. U.S. Dep't of Justice, 1995 WL 356320, at *2 (D.D.C. Jan. 29, 1993).  Failure to uncover a responsive document does not mean the search was inadequate:  "[T]he issue to be resolved is not whether there might exist any . . . documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Weisberg, 745 F.2d at 1485 (internal citations omitted).

Agency affidavits are the appropriate supporting materials to show that an adequate search has been conducted.  Affidavits should be "sufficiently detailed," but "[t]he standard . . . is not 'meticulous documentation [of] the details of an epic search.'"  Texas Independent Producers Legal Action Ass'n v. IRS, 605 F. Supp. 538, 547 (D.D.C. 1984) (quoting Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)).  "Rather, the agency need only provide affidavits explaining in 'reasonable detail' the scope and method of the search, in absence of countervailing evidence."  Texas Independent Producers, 605 F. Supp. at 547 (quoting Perry, 684 F.2d at 127).  Indeed, "[a]gency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence of other documents."  Grounds Saucer Watch v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981).

## II.    FOIA EXEMPTIONS CLAIMED BY DEFENDANTS

Because multiple defendants in this case have, in their responses to the plaintiffs' FOIA and Privacy Act requests, made withholdings on the basis of the same FOIA exemptions, the relevant exemptions are, for the Court's convenience, generally briefed in this section.

### A.    Exemption 1

Exemption 1 of the FOIA protects from disclosure records that:  (A) are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of

national defense or foreign policy, and (B) are in fact properly classified pursuant to such

Executive Order.  <u>See</u> 5 U.S.C. § 552 (b)(1).  The Executive Order currently in effect is

Executive Order 12958, "Classified National Security Information," as further amended on

March 25, 2003 by Executive Order 13292.  An agency can demonstrate that it has properly

withheld information under Exemption 1 if it establishes that it has met the substantive and

procedural requirements of the relevant Executive Order.  Thus, the agency must show, first, that

the records at issue logically fall within the exemption – <u>i.e.</u> that the relevant Executive Order

authorizes that the particular information sought may be kept secret in the interest of national

defense or foreign policy – and second, that the agency followed the proper procedures in

classifying the information.  <u>See Salisbury v. United States</u>, 690 F.2d 966, 970-72 (D.C. Cir.

1982);  <u>Military Audit Project</u>, 656 F.2d at 737.  An agency satisfying both requirements is

entitled to summary judgment.  <u>See Abbotts v. NRC</u>, 766 F.2d 604, 606 (D.C. Cir. 1985);  <u>Miller</u>

<u>v. Casey</u>, 730 F.2d 773, 776 (D.C. Cir. 1984).

      Furthermore, while judicial review of challenged FOIA withholdings generally must be

conducted <u>de novo</u>, 5 U.S.C. § 552 (a)(4)(B), with respect to Exemption 1 withholdings,

Congress has indicated, and courts have recognized, that an agency's determination of potential

adverse effects resulting from a public disclosure of a classified record should be accorded

substantial weight.  The agency's determination of potential harm merits this deference because

"[e]xecutive departments responsible for national defense and foreign policy matters have unique

insights into what adverse affects [sic] might occur as a result of public disclosure of a particular

classified record."  <u>Salisbury v. United States</u>, 690 F.2d at 970 (quoting S. Rep. No. 1200, 93rd

Cong., 2d Sess., at 12 (1974)).[16]  Applying this standard, courts weighing challenges to

Exemption 1 withholdings have concluded that summary judgment for the government should be

granted on the basis of agency affidavits if they simply contain "reasonable specificity," and if

they are not called into question by contradictory evidence in the record or by evidence of agency

bad faith.  Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir. 1980);  see also Krikorian v.

Department of State, 984 F.2d 461, 464 (D.C. Cir. 1993);  Washington Post, 766 F. Supp. at 7

(citing additional cases).

    B.    <u>Exemption 2</u>

Exemption 2 of the FOIA protects from disclosure "matters that are . . . related solely to

the internal personnel rules and practices of an agency." 5 U.S.C. § 552 (b)(2).  Information falls

within this category if "it is used for predominantly internal purposes."  Schiller v. National

Labor Relations Board, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting Crooker v. Bureau of

Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981)).  Exemption 2 has been

held to exempt two types of information: (i) information the release of which would

"significantly risk[] circumvention of agency regulations or statutes," Crooker, 670 F.2d at 1074,

and (ii) "routine matters of merely internal interest," Cox v. United States Dep't of Justice, 601

F.2d 1, 4 (D.C. Cir. 1979);  see also Founding Church of Scientology v. Smith, 721 F.2d 828,

---

[16]As another court has observed, "[w]hat fact or bit of information may compromise
national security is best left to the intelligence experts."  Bowers v. Department of Justice, 930
F.2d 350, 357 (4th Cir. 1991).  See also Frugone v. Central Intelligence Agency, 169 F.3d 772,
775 (D.C. Cir.1999) ("[m]indful that courts have little expertise in either international diplomacy
or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable
concerns");  Taylor v. Department of the Army, 684 F.2d 99, 109 (D.C. Cir. 1982) (the agency's
determination should be accorded "utmost deference");  Washington Post v. DOD, 766 F. Supp.
1, 6-7 (D.D.C. 1991) (judicial review of agency classification decision should be "quite
deferential").

830 n.4 (D.C. Cir. 1983) (material is exempt if it "relates to trivial administrative matters of no genuine public interest").  The former aspect of the exemption is often referred to as "high 2," while the latter is referred to as "low 2."  See Wiesenfelder v. Riley, 959 F. Supp. 532, 535 (D.D.C. 1997).

With respect to information subject to the "high" aspect of the Exemption 2, courts have recognized that "whether there is any public interest in disclosure is irrelevant."  Voinche v. F.B.I., 940 F.Supp. 323, 328 (D.D.C. 1996);  see also Institute for Policy Studies v. Department of the Air Force, 676 F.Supp. 3, 5 (D.D.C. 1987).  Rather, the focus of judicial inquiry should be on the degree of reasonably expected harm.  See, e.g., Judicial Watch, Inc. v. U.S. Dept. of Commerce, 83 F.Supp.2d 105, 110 (D.D.C. 1999) (affirming withholding of information that, if disclosed, "would present an opportunity for misuse and fraud").

As for the "low" aspect of the exemption, the D.C. Circuit has explained that it covers information that:

> pertain[s] solely to housekeeping concerns of interest only to agency personnel, . . . does not purport to regulate activities among members of the public, . . . [and] does [not] . . . set standards to be followed by agency personnel in deciding whether to proceed against or take action affecting members of the public.

Cox v. United States Department of Justice, 601 F.2d 1, 5 (D.C. Cir. 1979).  "Differently stated, the unreleased information is not 'secret law[.]'"  Id.  Consistent with these standards, courts have routinely held that file numbers and other internal identification systems may be properly withheld under the "low 2" aspect of the exemption.  See, e.g., Lesar v. United States Department of Justice, 636 F.2d 472, 485-86 (D.C. Cir. 1980) (upholding the nondisclosure of symbols used to identify informants as "a matter of internal significance in which the public has no substantial interest [and which] bear[s] no relation to the substantive contents of the records

- 27 -

released to appellant"); Scherer v. Kelly, 584 F.2d 170, 175-76 (7th Cir. 1978) (listing "file

numbers, initials, signature and mail routing stamps, references to interagency transfers, and data

processing reference" as exempt); Nix v. United States, 572 F.2d 998, 1005 (4th Cir. 1978)

(listing "file numbers, routing stamps, cover letters and secretary initials" as exempt); Branch v.

Federal Bureau of Investigation, 658 F. Supp. 204, 208 (D.D.C. 1987) ("There is no question that

[source symbols and file numbers] . . . may be withheld as a matter of law under Exemption 2.").

C.     Exemption 3

Exemption 3 protects from disclosure information that is "specifically exempted from

disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from

the public in such a manner as to leave no discretion on the issue, or (B) establishes particular

criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552

(b)(3).  In evaluating an Exemption 3 withholding, a court must determine, first, whether the

statute cited by the defendant agency qualifies as an exemption statute for purposes of the FOIA

and, second, whether the withheld information satisfies the criteria of the exemption statute.  See

CIA v. Sims, 471 U.S. 159, 167 (1985); Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir. 1990).

D.     Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums

or letters which would not be available by law to a party . . . in litigation with the agency."  5

U.S.C. § 552(b)(5).  Exemption 5 incorporates the privileges available to an agency in civil

litigation, the three principal ones being the deliberative process privilege, the attorney-client

privilege, and the attorney work product privilege.  See NLRB v. Sears, Roebuck & Co., 421

U.S. 132, 148-49 (1975).

- 28 -

The privilege most relevant in this case is the deliberative process privilege, which

protects from disclosure documents that reflect pre-decisional agency deliberations.  See id. at

150-52;  Wolfe v. Department of Health and Human Services, 839 F.2d 768, 773-74 (D.C. Cir.

1988);  Hoover v. Dep't of the Interior, 611 F.2d 1132 (5th Cir. 1980).  For the deliberative

process privilege to apply, three requirements must be met.  First, the document in question must

be an "inter-agency or intra-agency" communication.  Department of Interior v. Klamath Water

Users Protective Ass'n, 532 U.S. 1, 9 (2001).  Second, the document must be pre-decisional, i.e.

"antecedent to the adoption of an agency policy."  Jordan v. U.S. Department of Justice, 591 F.2d

753, 774 (D.C. Cir. 1978).  Finally, the communication contained in the document must be "a

direct part of the deliberative process" in that it "makes recommendations or expresses opinions

on legal or policy matters."  Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

E.      Exemption 6

Exemption 6 protects from disclosure "personnel or medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5

U.S.C. § 552 (b)(6).  The requirement of files "similar" to personnel or medical files has been

read broadly by the Supreme Court to encompass any "information which applies to a particular

individual."  United States Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982).

Thus, regardless of the heading under which a record is filed, Exemption 6 covers "detailed

government records of an individual which can be identified as applying to that individual."  Id.;

see also New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1991) (finding voice

tapes from the shuttle Challenger to qualify as "similar files" because they identified crew

members by the sound and inflection of their voices).  The Supreme Court considered this broad

- 29 -

construction of "similar files" to be necessary in light of Congress's primary purpose in enacting Exemption 6, which was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Washington Post, 456 U.S. at 599.

In evaluating Exemption 6 withholdings, a court must balance the subject individual's right to privacy against the public's interest in disclosure. See United State Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976); Reed v. National Labor Relations Board, 927 F.2d 1249, 1251 (D.C. Cir. 1991). The only relevant public interest is "the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." United States Dep't of Defense v. Federal Labor Relations Authority, 510 U.S. 487, 495 (1994) (internal quotation marks and citation omitted). Plaintiffs carry the burden of demonstrating that disclosure of identifying information would serve this interest. See Carter v. United States Dep't of Commerce, 830 F.2d 388, 391 nn. 8 & 13 (D.C. Cir. 1987). Most frequently, information about private citizens in government files "would reveal little or nothing about an agency's own conduct." Reed, 927 F.2d at 1251 (internal quotation marks and citation omitted).

## III. DOS IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

DOS is entitled to summary judgment on Counts 1-3 and 5-6 of the plaintiffs' Complaint. DOS has conducted thorough searches in response to the separate requests that form the basis for these counts. No responsive material was withheld from Plaintiff Okada (Count 2). The only material that has been withheld from Plaintiffs Larson (Count 1), Henehan (Count 3), Portillo-

Bartow (Count 5), and Joslin (Count 6) is information that is exempt from disclosure under 5 U.S.C. § 552(b), and DOS has segregated all releasable information.

> A.      DOS Has Conducted Adequate Searches

The searches conducted by DOS were reasonably calculated to uncover records responsive to the plaintiffs' requests.  The Declaration of Bernard C. Dowling, Acting Director of DOS's Office of Information Resources Management Programs and Services ("IPS"), details the particulars of these searches.  Dowling Declaration (Ex. A), ¶¶ 5-9, 14-19, 21-22.  In the absence of the Director of IPS, as is presently the case, Mr. Dowling is the DOS official immediately responsible for responding to FOIA and Privacy Act requests.  Id. at ¶ 1.  His Declaration notes that DOS maintains a centralized automated record system (DOS's "Central Foreign Policy Records") which was searched in response to each of the plaintiffs' requests.  Id. at ¶¶ 5-9, 14-17, 19, 21-22.  DOS also searched the files of particular DOS Bureaus or Offices where these were likely to possess additional records responsive to a given request.[17]  Id. at ¶¶ 6-8, 14-17, 19, 21-22.  Altogether, DOS's searches fully satisfied DOS's obligations under the FOIA and the Privacy Act.

---

[17]These offices included the Bureau of Western Hemisphere Affairs; the Bureau of Democracy, Human Rights, and Labor; the Bureau of International Organization Affairs; the Bureau of Diplomatic Security; the Bureau of Intelligence and Research; the Bureau of Political Military Affairs; the Office of the Legal Adviser; the Office of Overseas Citizens Services; the American Embassy in Guatemala; the Bureau of International Narcotics and Law Enforcement Affairs; the Bureau of Consular Affairs; and the Office of the Coordinator for Counter Terrorism. Id. at ¶¶ 6-8, 14-17, 19, 21-22.

B.       DOS Is Entitled to Summary Judgment on Count 2

In its response to Plaintiff Okada's FOIA request, which forms the basis for Count 2 of the plaintiffs' Complaint, DOS released in full all five documents it had located.  Dowling Declaration (Ex. A), ¶ 21.  Because DOS has thus fulfilled its obligations under the FOIA, it is entitled to summary judgment on Count 2.

C.       DOS Is Entitled to Summary Judgment on Count 3

In its response to Plaintiff Henehan's FOIA request, which forms the basis for Count 3 of the plaintiff's Complaint, DOS withheld in part two documents, with excisions made pursuant to FOIA Exemption 6.  Dowling Declaration (Ex. A), ¶ 19.  Pursuant to an e-mail exchange with plaintiffs' counsel on April 9, 2003, it is the government's understanding that Henehan is not challenging DOS's withholdings.  Having fulfilled its obligations under the FOIA, DOS is therefore entitled to summary judgment on Count 3.

D.       DOS Is Entitled to Summary Judgment on Count 1

In its response to Plaintiff Larson's FOIA/Privacy Act request, which forms the basis for Count 1 of the plaintiffs' Complaint, DOS made the following withholdings:  With regard to Case No. 199702754, DOS withheld in part one document, with excisions made pursuant to FOIA Exemption 6.  Dowling Declaration (Ex. A), ¶ 5.  With regard to Case No. 199702792, DOS withheld in part three documents, with excisions made pursuant to FOIA Exemption 6.  Id. at ¶ 6.  With regard to Case No. 199702794, DOS withheld in part eleven documents, with excisions made pursuant to FOIA Exemption 6.  Id. at ¶ 8.  Finally, with regard to Case No. 199702795, DOS withheld in part five documents, with excisions made pursuant to FOIA

- 32 -

Exemptions 1, 3, and 6, and withheld in full one document pursuant to FOIA Exemption 1.  Id. at

¶ 9.

Pursuant to an e-mail exchange with plaintiffs' counsel on April 9, 2003, it is the

government's understanding that Larson is challenging only some of DOS's withholdings, and

specifically: (i) with regard to Case No. 199702792, the Exemption 6 withholding made from

one partially withheld document; (ii) with regard to Case No. 199702794, the Exemption 6

withholdings made from two partially withheld documents; and (iii) with regard to Case No.

199702795, the Exemptions 1, 3, and 6 withholdings made from four partially withheld

documents,  as well as the full withholding of one document pursuant to Exemption 1.  Only

these challenged withholdings are detailed in the Vaughn index that is included in the Dowling

Declaration.

> 1.    *DOS's Exemption 6 Withholdings Are Proper*

At issue are DOS's Exemption 6 withholdings in five documents that were partially

released in response to Larson's request.  In each case, the material withheld consists of

information that would identify one or more confidential sources who provided the U.S.

government with information about threats and/or violence in Guatemala, and who might be

subject to physical danger were their identities to be revealed.  Dowling Declaration (Ex. A),

pages 45-47, 48, 50.

Manifestly, the privacy interest underlying DOS's withholdings is powerful.  Cf.

McCutchen v. U.S. Dept. of Health and Human Services, 30 F.3d 183, 189 (D.C. Cir. 1994)

("The complainants have a strong privacy interest in remaining anonymous because, as

'whistle-blowers,' they might face retaliation if their identities were revealed."); see also Holy

Spirit Ass'n for Unification of World Christianity v. F.B.I., 683 F.2d 562, 565 (D.C. Cir. 1982)

(MacKinnon, J., concurring) ("Where a person's fear of reprisals from the subject of his

communication is reasonable . . . privacy interests support the application of . . . Exemption

6[.]").

Furthermore, to the extent that a number of the confidential sources at issue appear to be

Guatemalan citizens, it is well established that the FOIA affords persons who are not U.S.

citizens the same degree of privacy protections as enjoyed by U.S. citizens. See, e.g., Shaw v.

United States Dep't of State, 559 F.Supp. 1053, 1067 (D.D.C. 1983) (the FOIA "makes no

exception for the privacy interests of . . . aliens").

Finally, revealing the identity of any of these confidential sources would not advance the

only public interest that matters in this context, namely the interest in disclosure of the U.S.

government's performance of its own duties. See, e.g., Federal Labor Relations Authority, 510

U.S. at 495-496; Reporters Committee, 489 U.S. at 773 (1989). For these reasons, DOS

properly asserted Exemption 6 in withholding information from Larson.

## 2.    *DOS's Exemption 1 Withholdings Are Proper*

Larson challenges DOS's Exemption 1 withholdings in two documents that were released

in part, and in one document that was withheld in full. In each case, the material withheld

consists of information that might reveal the identity of a confidential foreign source. Disclosure

of that source would jeopardize not only the safety of the source, but also the ability of the U.S.

government to acquire information from the same or similar sources in the future. Dowling

Declaration (Ex. A), pages 49-52.[18] The material withheld is specifically protected under Section

---

[18]DOS has withheld in full one of the documents in question because it would not be
sufficient to excise only the name of the source – the substance of the information in the

1.4(d) of Executive Order 12958, which exempts from disclosure information concerning

"foreign relations or foreign activities of the United States, including confidential sources."

Application of Section 1.4(d) protection under Exemption 1 is procedurally proper because

Dowling is authorized to classify national security information pursuant to Executive Order

12958. Id. at ¶ 1. Substantively, the Court should find that the withheld information falls within

the scope of Section 1.4(d) because the Dowling Declaration contains "reasonable specificity"

regarding the harm likely to result from disclosure, and is not called into question by

contradictory evidence in the record or by evidence of agency bad faith. See Halperin, 629 F.2d

at 148.

      3.    *DOS's Exemption 3 Withholding Is Proper*

    Larson challenges DOS's Exemption 3 withholding in one document that was released in

part. The material withheld consists of information concerning the application for and

subsequent refusal of a request for a visa. Dowling Declaration (Ex. A), pages 47-48. As such, it

is information specifically exempted from disclosure by the Immigration and Nationality Act, 8

U.S.C. § 1202(f), which exempts from disclosure "[t]he records of the Department of State and

of diplomatic and consular offices of the United States pertaining to the issuance or refusal of

visas or permits to enter the United States." This provision clearly qualifies as an exemption

statute for purposes of Exemption 3. See, e.g., Medina-Hincapie v. Department of State, 700

F.2d 737, 741-42 (D.C. Cir. 1983); De Laurentiis v. Haig, 686 F.2d 192, 192-93 (3rd Cir. 1982);

Church of Scientology of California v. Department of State, 493 F.Supp. 418, 423 (D.D.C.

---

document itself might lead to the source's identification. Id. at page 51. Thus, no portion of the
document may be reasonably segregated and released. See Mead Data Central v. Department of
the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977) ("[N]on-exempt portions of a document must
be disclosed unless they are inextricably intertwined with exempt portions.").

1980).  Furthermore, while 8 U.S.C. § 1202(f) does allow the Secretary of State discretion to

disclose information protected by the statutory provision in certain narrow circumstances, neither

of those circumstances apply in the present case.  See 8 U.S.C. § 1202(f)(1-2).

E.       DOS Is Entitled to Summary Judgment on Count 5

In its response to Plaintiff Portillo-Bartow's FOIA request, which forms the basis for

Count 5 of the plaintiffs' Complaint, DOS withheld in full two documents pursuant to FOIA

Exemption 5.  Dowling Declaration (Ex. A), ¶ 22.  The two documents are the American

Embassy in Guatemala's draft submissions for the annual Country Human Rights Report for

Guatemala for the years 1999 and 2000, respectively.  Id. at page 52.  (The final reports, prepared

by DOS, were published by Congress and are thus in the public domain.  Id.)  The withheld

material is clearly protected in its entirety by the deliberative process privilege incorporated

within Exemption 5.  First, the documents in question qualify as intra-agency communications

because they were prepared by DOS and were not circulated outside the federal government.  Id.

Second, as "draft material," both documents intrinsically fall within the rubric of "pre-

decisional."  See, e.g., Dudman Communications Corp. v. Dep't of the Air Force, 815 F.2d 1565,

1569 (D.C. Cir. 1987);  City of Virginia Beach v. U.S. Dep't of Commerce, 995 F.2d 1247, 1253

(4th Cir. 1993);  Town of Norfolk v. U.S. Corps of Engineers, 968 F.2d 1438, 1458 (1st Cir.

1992);  see also Sears, 421 U.S. at 150 (protecting "recommendations").  Finally, the documents

were part of a deliberative process that lead to the development of an official U.S. government

position.  Dowling Declaration (Ex. A), page 52;  see Vaughn, 523 F.2d at 1143-44.  For these

reasons, DOS properly asserted Exemption 5 in withholding information from Larson.

- 36 -

F.      DOS Is Entitled to Summary Judgment on Count 6

In its response to Plaintiff Joslin's 1996 FOIA/Privacy Act request, which is raised at

Count 6 of the plaintiffs' Complaint, DOS withheld in part seven documents, with excisions

made pursuant to FOIA Exemption 6.  Dowling Declaration (Ex. A), ¶ 14.  In its response to

Joslin's 1997 FOIA/Privacy Act request, which is also raised at Count 6, DOS withheld in part

two documents, with excisions again made pursuant to FOIA Exemption 6.  Id. at ¶¶ 15-18.

Pursuant to an e-mail exchange with plaintiffs' counsel on April 9, 2003, it is the government's

understanding that Joslin is not challenging the withholdings made by DOS in its response to his

1997 request.  At issue here, then, are only the Exemption 6 withholdings made by DOS in its

response to Joslin's 1996 request.

The seven documents in question comprise (i) letters written by constituents to U.S.

Congresspersons or other U.S. officials regarding violence in Guatemala (Documents E20,

E21A, E22, and E30A); (ii) the transmittal forms accompanying some of these letters

(Documents E21 and E30); (iii) and a letter responding to one of the same (Document E27).

Dowling Declaration (Ex. A), pages 38-42.  The material withheld in each case consists solely of

the name of the private citizen who wrote the original letter.  Id.

Given the unlikelihood that the names of private citizens writing government officials

would shed light on government conduct, this information represents classic Exemption 6

material.  Indeed, a number of courts have found that individuals who write to the government

expressing personal opinions generally do so with some expectation of confidentiality (unless

they are advised to the contrary in advance), and that their identities ordinarily should be

withheld.  See, e.g., Voinche, 940 F.Supp. at 330 ("There is no reason to believe that the public

will obtain a better understanding of the workings of various agencies by learning the identities

of . . . private citizens who wrote to government officials[.]"); <u>Holy Spirit Association for</u>

<u>Unification of World Christianity, Inc. v. U. S. Dept. of State</u>, 526 F.Supp. 1022, 1034 (S.D.N.Y.

1981) ("[T]here is a strong public interest in encouraging citizens to communicate their concerns

regarding their communities to their elected representatives."); <u>but see</u> <u>Judicial Watch of</u>

<u>Florida, Inc. v. U.S. Dep't of Justice</u>, 102 F.Supp.2d 6, 18 (D.D.C. 2000) (contemplating

"scenarios in which disclosing the identity of those who wrote letters to the [Attorney General]

regarding campaign finance issues or Independent Counsel Act matters might not 'constitute a

clearly unwarranted invasion of personal privacy' within the meaning of FOIA Exemption Six").

For the foregoing reasons, DOS properly asserted Exemption 6 in withholding

information from Joslin.

## IV.   NSA IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

NSA is entitled to summary judgment on Counts 16, 17, and 19 of the plaintiffs'

Complaint.  NSA is entitled to summary judgment on Count 18 solely with respect to documents

processed by NSA and not referred to other agencies, and those documents referred to DOS.

NSA has conducted thorough searches in response to the separate requests that form the basis for

these counts.  The only material that has been withheld from Plaintiffs Larson (Count 16), Kerndt

(Count 17), and Henehan (Count 18) -- and that is not the subject of a pending referral -- is

information that is exempt from disclosure under 5 U.S.C. § 552(b), and NSA has segregated all

releasable information.  NSA can neither confirm nor deny the existence of material responsive

to Plaintiff Portillo-Bartow's request (Count 19).

A.    The Details of NSA's Search Are Privileged

In support of its motion for partial summary judgment, NSA submits the Declaration of

Louis F. Giles, Director of Policy for NSA.  Giles Declaration (Ex B).  In this capacity, Mr. Giles

is responsible for the processing of all FOIA requests.  Id. at ¶ 1.  The Giles Declaration contains

no details about the searches conducted by NSA in response to the plaintiffs' requests because

such information is privileged under Section 6 of the National Security Act of 1959, Pub.L. No.

86-36, quoted in 50 U.S.C. § 402 note.  See Linder v. National Security Agency, 94 F.3d 693,

696-97 (D.C. Cir. 1996).

> Section 6 provides in relevant part that:
>
> nothing in this Act or any other law . . . shall be construed to require the disclosure of the
> organization or any function of the National Security Agency, [or] of any information
> with respect to the activities thereof . . . .

The D.C. Circuit on multiple occasions has held that this provision reaches as broadly as its plain

language would suggest.  See, e.g., Linder, 94 F.3d at 696; see also Hayden v. NSA, 608 F.2d

1381, 1390 (D.C. Cir. 1979) ("[a] specific showing of potential harm to national security . . . is

irrelevant to the language of [section 6].  Congress has already . . . decided that disclosure of

NSA activities is potentially harmful.").  Indeed, the Court of Appeals has held that Section 6

exempts NSA even from the obligation of preparing a Vaughn index in the first place for the

signals intelligence information that it collects.  Linder, 94 F.3d at 697.  Given the broad scope of

NSA's Section 6 exemption, NSA is under no obligation to detail the searches it conducted in

response to the plaintiffs' requests.

B.     NSA Is Entitled to Summary Judgment on Count 16

In its response to Plaintiff Larson's FOIA/Privacy Act request, which forms the basis for

Count 16 of the plaintiffs' Complaint, NSA withheld in part eight documents, with excisions

made pursuant to FOIA Exemptions 1 and 3.  Giles Declaration (Ex. B), ¶ 8.

1.     *NSA's Exemption 1 Withholdings Are Proper*

All of the material withheld from Larson consists of foreign communications – termed

communications intelligence ("COMINT" or "SIGINT") – intercepted by NSA as part of its core

mission.  Giles Declaration (Ex. B), ¶¶ 4-5, 27.  In particular, the withheld information identifies

the "targets" whose communications were intercepted, or pertains to intelligence collection

assignments and the technical details of collection.  Id. at ¶ 27.  As such, the withheld

information qualifies for protection under Executive Order 12958 as variously pertaining to (i)

foreign government information (Section 1.4(b)); (ii) intelligence activities, intelligence sources

or methods, or cryptology (Section 1.4(c)); (iii) foreign relations or foreign activities of the

United States, including confidential sources (Section 1.4(d)); and/or (iv) vulnerabilities or

capabilities of systems projects and plans relating to the national security (Section 1.4(g)).  Id. at

¶ 26.

Because of the broad privilege enjoyed by NSA under Section 6 of the National Security

Act of 1959, NSA need not provide any further detail regarding the procedural or substantive

aspects of Executive Order 12958's application to the withheld information – detail which could

reveal sensitive information about NSA's capabilities and techniques[19] – in order to demonstrate

---

[19]Giles Declaration (Ex. B), ¶ 27.

that it properly asserted Exemption 1 in withholding this information from Larson.  See Linder,

94 F.3d at 696; Hayden v. NSA, 608 F.2d at 1390.

### 2.    *NSA's Exemption 3 Withholdings Are Proper*

Some of the material withheld from Larson also qualifies for protection under statutory

exemptions that are incorporated under Exemption 3.  Giles Declaration (Ex. B), ¶¶ 31, 35.  First,

some of this material directly concerns NSA's organization and functions, and thus is protected

by Section 6 of the National Security Act of 1959.  Id. at ¶¶ 32, 35.  Second, some of the material

directly concerns intelligence sources and methods.  Id. at ¶ 35.  Information of this latter sort is

protected under Section 103(c)(7) of the National Security Act of 1947, as amended, 50 U.S.C. §

403-3(c)(7), which provides that the Director of Central Intelligence, as head of the intelligence

community, shall "protect intelligence sources and methods from unauthorized disclosure."[20]  As

one of the member agencies of the U.S. intelligence community, NSA is fully entitled to this

statutory protection.  See 50 U.S.C. § 401a(4)(C);  Students Against Genocide v. Department of

State, 257 F.3d 828, 840 (D.C. Cir. 2001).

### C.    NSA is Entitled to Summary Judgment on Count 17

In its response to Plaintiff Kerndt's FOIA request, which forms the basis for Count 17 of

the plaintiffs' Complaint, NSA withheld in full one document pursuant to FOIA Exemptions 1

and 3.  Giles Declaration (Ex. B), ¶ 13.  NSA also referred a potentially responsive record to CIA

for its review and direct response to Kerndt.  Id.

---

[20]It is settled that Section 403-3(c)(7) qualifies as an exemption statute for purposes of
Exemption 3.  See, e.g., Sims, 471 U.S. at 167 (1985);  Krikorian, 984 F.2d at 465 (D.C. Cir.
1993); Fitzgibbon, 911 F.2d at 761 (citing cases).

### 1.    *Document Processed by NSA*

The document processed and withheld in full by NSA is communications intelligence that had been intercepted by NSA.  Id. at ¶¶ 14, 27.  The argument for its full withholding pursuant to Exemptions 1 and 3 is precisely the same as the argument, set forth above, which supports NSA's similar withholdings in response to Plaintiff Larson's request.[21]  Id. at ¶¶ 26-27, 31-32, 34-35.  Accordingly, the government respectfully refers the Court to the preceding argument in support of the conclusion that NSA properly asserted Exemptions 1 and 3 in withholding information from Plaintiff Kerndt.  See supra Part IV(B)(1-2).

### 2.    *Document Referred to CIA*

The document referred by NSA to CIA was withheld by CIA in part, with excisions made pursuant to FOIA Exemption 3.  McNair Declaration (Ex. D), ¶ 8.  According to the Vaughn index attached to the McNair Declaration, the only material withheld from Kerndt is the name of a CIA employee and certain filing information.  Id., Vaughn Index (Ex. 1), page 11.  The first piece of information is protected under Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 403g, which exempts CIA from having to disclose, inter alia, the names of the personnel it employs.  The second piece of information is covered by the more general provision which protects against the disclosure of CIA intelligence sources and methods, Section 103(c)(7) of the National Security Act of 1947.  Thus, CIA properly asserted Exemption 3 in withholding both pieces of information from Kerndt.

---

[21]Except for the fact that NSA was unable to reasonably segregate and release any portion of the document found to be responsive to Plaintiff Kerndt's request.

D.    NSA Is Entitled to Summary Judgment on Count 19

In its response to Plaintiff Portillo-Bartow's FOIA request, which forms the basis for

Count 19 of the plaintiffs' Complaint, NSA notified Portillo-Bartow that, pursuant to FOIA

Exemptions 1 and 3, it could neither confirm nor deny the existence of records responsive to her

request.  Giles Declaration (Ex. B), ¶ 19.  As explained in the Giles Declaration, the fact of the

existence or non-existence of this information pertains to intelligence activities, intelligence

sources and methods, and cryptology.  Id. at ¶ 28.  Also, the information would concern

vulnerabilities and capabilities of systems, and specifically, the success or lack of success in

collecting information, projects or plans relating to the national security.  Id.  Thus, NSA's

response is protected by Sections 1.4(c) and 1.4(g), respectively, and the agency's assertion of

Exemption 1 was properly made.

In addition, the Giles Declaration further notes that any substantive response to Portillo-

Bartow's request would concern core functions and activities of NSA, and would likely impair

intelligence sources and methods.  Id. at ¶ 36.  Thus, NSA's response is also protected by Section

6 of the National Security Act of 1959 and Section 103(c)(7) of the National Security Act of

1947, respectively, and the agency's assertion of Exemption 3 also was properly made.

E.    NSA Is Entitled to Partial Summary Judgment on Count 18

In its response to Plaintiff Henehan's FOIA request, which forms the basis for Count 18

of the plaintiffs' Complaint, NSA withheld in part thirty (30) documents, with excisions made

pursuant to FOIA Exemptions 1, 2, and 3, and withheld in full one-hundred and thirty-seven

(137) documents pursuant to FOIA Exemptions 1 and 3.  Giles Declaration (Ex. B), ¶ 16.  NSA

also referred a number of potentially responsive documents to other agencies:  two documents to

- 43 -

DOS for its review and direct response to Henehan; eleven documents to USIA for its review and direct response to Henehan; four documents to DOD for its review and direct response to Henehan; four documents to DOD for its review and response to NSA; and five documents to CIA for its review and response to NSA.  Id. at ¶¶ 16-17.

    1.    *NSA's Exemption 1 and 3 Withholdings are Proper*

The documents processed and withheld by NSA, whether in part or in full, are communications intelligence that had been intercepted by NSA.  Id. at ¶ 27.  The argument for NSA's Exemption 1 and 3 withholdings is precisely the same as the argument, set forth above, which supports NSA's similar withholdings in response to Plaintiff Larson's request.  Id. at ¶¶ 26-27, 31-32, 34-35.  Accordingly, the government respectfully refers the Court to that preceding argument in support of the conclusion that NSA properly asserted Exemptions 1 and 3 in withholding information from Plaintiff Henehan.  See supra Part IV(B)(1-2).

    2.    *NSA's Exemption 2 Withholdings Are Proper*

Some of the material withheld from the set of thirty (30) documents that NSA withheld in part consists of e-mail routing information that appears before the text of messages.  Id. at ¶ 30.  Such information is of the sort that may be withheld under both the "low" and "high" aspects of Exemption 2.  See e.g., Palacio v. U.S. Department of Justice, 2002 U.S. Dist. LEXIS 2198, at *15 (D.D.C. Feb. 11, 2002); Coleman v. F.B.I., 13 F.Supp.2d 75, 79 (D.D.C. 1998).  On the one hand, e-mail routing information does appear closely analogous to the routine file numbers and other internal identification systems to which courts have frequently applied the "low" aspect of the exemption.  See, e.g., Kelly, 584 F.2d at 175-76;  Nix, 572 F.2d at 1005; Branch 658 F. Supp. at 208.  On the other, the Giles Declaration emphasizes that disclosure of NSA e-mail routing

information would reveal how NSA's information network is constructed, and so could expose the network to unauthorized access.  Giles Declaration (Ex. B), ¶ 30.  Thus, disclosure of the withheld information can be regarded as posing danger to NSA's operations sufficient to qualify under the "high" aspect of Exemption 2.  See, e.g., Jefferson v. U.S. Dep't of Justice, No. 00-1489, slip op. at 3 (D.D.C. Nov. 30, 2000) (disclosure of computer pathnames "might be used to compromise the security" of agency's electronic databases and computer systems), aff'd in part & remanded in part on other grounds, 284 F.3d 172 (D.C. Cir. 2002); Kuffel v. U.S. Bureau of Prisons, 882 F.Supp. 1116, 1123 (D.D.C. 1995).

In either event, the conclusion remains that NSA properly asserted Exemption 2 in withholding information from Henehan.

### 3.    *Referrals to Other Agencies*

Of the referrals NSA made to other agencies of documents potentially responsive to Henehan's request, all remain pending except for the referral to DOS.  DOS has released in  full the two documents that NSA referred to it.  Dowling Declaration (Ex. A), ¶ 20.  Accordingly, NSA is entitled to summary judgment on Count 18 only with respect to documents processed by NSA and not referred to other agencies, and those documents referred to DOS.

## V.    DIA IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

DIA is entitled to summary judgment on Counts 8-11 of the plaintiffs' Complaint.  DIA is entitled to summary judgment on Count 7 solely with respect to documents processed by DIA and not referred to other agencies, and those documents referred to DOS, NSA, and CIA.  DIA has conducted thorough searches in response to the separate requests that form the basis for these counts.  There were no records found to be responsive to the requests of Plaintiffs Holdenried

(Count 8), Portillo-Bartow (Count 9), Kerndt (Count 10), and Joslin (Count 11).  The only

material that has been withheld from Plaintiff Larson (Count 7) -- and that is not the subject of a

pending referral -- is information that is exempt from disclosure under 5 U.S.C. § 552(b), and

DIA has segregated all releasable information.

> A.     DIA Has Conducted Adequate Searches

The searches conducted by DIA were reasonably calculated to uncover records

responsive to the plaintiffs' separate requests.  The Declaration of Robert P. Richardson, Chief of

DIA's Freedom of Information Act Staff, details the particulars of these searches.  Richardson

Declaration (Ex. C), ¶¶ 4-6.  Mr. Richardson is the DIA official responsible for supervising the

receipt and processing of, and response to, FOIA and Privacy Act requests.  Id. at ¶ 1.  His

Declaration notes that DIA maintains a Research and Reference Library as its principal records

repository for intelligence records, and that this office was tasked to search for records

responsive to each of the plaintiffs' requests.  Id. at ¶¶ 5-6.  Only the Research and Reference

Library was tasked to search for responsive records because this office would have the most

complete data indexed to the subjects of the plaintiffs' requests, and would encompass

information which would  have originated with other Directorates within DIA.  Id. at ¶ 6.

Altogether, DIA's searches fully satisfied DIA's obligations under the FOIA and the Privacy

Act.

> B.     DIA Is Entitled to Summary Judgment on Counts 8-11

Notwithstanding the searches described in the foregoing section, DIA located no records

responsive to the FOIA requests of Plaintiffs Holdenried, Portillo-Bartow, or Kerndt, or to the

FOIA/Privacy Act request of Joslin.  Richardson Declaration (Ex. C), ¶¶ 16, 24, 27, 30.  These

requests form the basis for Counts 8-11, respectively, of the plaintiffs' Complaint.  Because

DIA's search fully satisfied DIA's obligations under the FOIA and the Privacy Act, DIA is

entitled to summary judgment on these counts.

C.     DIA Is Entitled to Partial Summary Judgment on Count 7

In its response to Plaintiff Larson's FOIA/Privacy Act request, which forms the basis for

Count 7 of the plaintiffs' Complaint, DIA withheld in part one document, with excisions made

pursuant to FOIA Exemptions 2, 3, and 6.  Richardson Declaration (Ex. C), ¶ 7.  DIA also

referred – or, pursuant to an earlier request, already had made relevant referrals of – a number of

potentially responsive documents to other agencies for their review and direct response to

Larson.  The referrals included thirty (30) documents to DOS; one document to the Department

of the Army; one document to the Coast Guard; one document to NSA; one document to the

MAC Intelligence Center; and two documents to CIA.  Id.

1.     *DIA's Exemption 2, 3, and 6 Withholdings Are Proper*

The document partially withheld by DIA is described at the first item in the Vaughn

index that is attached to the Richardson Declaration.  Richardson  Declaration (Ex. C), Vaughn

Index (Ex. 1), Item No. 1.  Of the material withheld pursuant to Exemption 2, some is "low 2"

material, and some is "high 2" material.  Id.  First, the message routing data and the Intelligence

Information Report number that are withheld represent classic "low 2" material, insofar as they

"relate to trivial administrative matters of no genuine public interest."  Smith, 721 F.2d at 830

n.4.  Second, the substance of the discussions between a visiting Congressman and Guatemalan

officials is covered under the "high" aspect of the exemption.  These discussions concerned

specific internal rules and practices used by the Defense Attache Office in Guatemala.

- 47 -

Richardson  Declaration (Ex. C), <u>Vaughn</u> Index (Ex. 1), Item No. 1.  Disclosing the internal

practices of an American embassy manifestly would risk circumvention of the law.  Moreover, in

the "high 2" context, "whether there is any public interest in disclosure is irrelevant." <u>Voinche</u>,

940 F.Supp. at 328.

The material withheld from this document pursuant to Exemption 3 consists of the

identities of specific DIA personnel.  Under 10 U.S.C. § 424, DIA is generally exempted from

having to disclose, <u>inter alia</u>, the names of the personnel it employs.  Because this provision

clearly qualifies as an exemption statute for purposes of Exemption 3 – and because neither of

the two circumstances for disclosure contemplated by the statute applies to this case – DIA

properly asserted Exemption 3 in withholding information from Larson.

Finally, the material withheld from this document pursuant to Exemption 6 consists of the

names and identifying data of third parties.  Absent any evidence of how disclosure of these

identifies might contribute "significantly to public understanding of the operations or activities of

the government," <u>Federal Labor Relations Authority</u>, 510 U.S. at 495, it is clear that these

individuals are entitled to privacy protection under Exemption 6.

2. *Documents Referred to DOS*

Of the thirty (30) documents referred by DIA to DOS, DOS has released in full all but

two documents.  Dowling Declaration (Ex. A), ¶¶ 10-12.[22]  Both of these remaining two

documents were withheld in part:  one with excisions made pursuant to FOIA Exemption 6, the

other with excisions made pursuant to FOIA Exemptions 1 and 6.  <u>Id.</u> at ¶ 11, pages 42-45.

---

[22]The government notes that DIA tallies thirty (30) documents as having been referred, while DOS tallies twenty-nine (29).  The discrepancy appears simply to be a function of the non-uniform manner in which each agency counts documents.

Because the former document is a duplicate of a document already briefed in connection with Larson's direct request to DOS, only the latter document is briefed below.

The sole document at issue, then, is a telegram dated September 1989 from the Joint Staff, Washington, D.C. to a number of U.S. military addressees (repeating an earlier American Embassy telegram to DOS), which describes the visit to Sri Lanka of three representatives of Peace Brigades International.  Id. at page 43.  The material withheld pursuant to Exemption 1 consists of a single paragraph which relates an embassy officer's conversation with a Sri Lankan individual who expected confidentiality, and for whom the embassy specifically requested that that confidentiality be maintained.  Id.  As such, the material is specifically protected under Section 1.4(d) of Executive Order 12958, which exempts from disclosure information concerning "foreign relations or foreign activities of the United States, including confidential sources." Application of Section 1.4(d) protection under Exemption 1 is procedurally proper because Dowling is authorized to classify national security information pursuant to Executive Order 12958.  Id. at ¶ 1.  Substantively, the withheld information falls within the scope of Section 1.4(d) because the Dowling Declaration contains "reasonable specificity" regarding the harm likely to result from disclosure, see id. at page 43, and is not called into question by contradictory evidence in the record or by evidence of agency bad faith.  See Halperin 629 F.2d at 148.

The material in the same document withheld pursuant to Exemption 6 consists of the name of the leader of the three-person visiting group from Peace Brigades International. Dowling Declaration (Ex. A), page 44.  The name has been deleted wherever it appears in the document.  Id.  This withholding is premised on the strong privacy interest involved, and on the fact that the person's identity would reveal nothing about the U.S. government's own conduct.

- 49 -

3.     *Document Referred to NSA*

The document referred by DIA to NSA was withheld by NSA in full, pursuant to FOIA Exemptions 1 and 3.  Giles Declaration (Ex. B), ¶ 22.  The argument for this withholding is precisely the same as the argument, set forth above, which supports NSA's similar withholdings in response to Larson's direct request to NSA.  Accordingly, the government respectfully refers the Court to that preceding argument once again.  See supra Part IV(B)(1-2).

4.     *Documents Referred to CIA*

The two documents referred by DIA to CIA were withheld by CIA in part, pursuant to FOIA Exemption 3.  McNair Declaration (Ex. D), ¶ 8.  According to the Vaughn index attached to the McNair Declaration, the only material withheld from both documents is the name of the CIA employee who drafted the documents.  Id., Vaughn Index (Ex. 1), pages 11-12.  This information is protected under Section 6 of the Central Intelligence Agency Act of 1949, which exempts CIA from having to disclose, inter alia, the names of the personnel  it employs.  Thus, CIA properly asserted Exemption 3 in withholding information from Larson.

5.     *Documents Referred to Other Agencies*

The referrals DIA made to the Department of the Army, the Coast Guard, and the MAC Intelligence Center all remain pending.  Accordingly, DIA is entitled to summary judgment on Count 7 only with respect to documents processed by NSA and not referred to other agencies, and those documents referred to DOS, NSA, and CIA.

## VI.    CIA IS ENTITLED TO SUMMARY JUDGMENT

CIA is entitled to summary judgment on Counts 12-15 of the plaintiffs' Complaint.  CIA has conducted thorough searches in response to the separate requests that form the basis for these

counts.  There were no CIA records found to be responsive to the request of Plaintiff Holdenried

(Count 13).  The only material that has been withheld from Plaintiffs Larson (Count 12), Portillo-

Bartow (Count 14), and Joslin (Count 15) is information that is exempt from disclosure under 5

U.S.C. § 552(b), and CIA has segregated all releasable information.

A.    CIA Has Conducted Adequate Searches

The searches conducted by CIA were reasonably calculated to uncover records responsive

to the plaintiffs' separate requests.  The Declaration of William H. McNair, the Information

Review Officer for CIA's Directorate of Operations ("DO"), details the particulars of these

searches.  McNair Declaration (Ex. D), ¶¶ 11-18, 21, 24, 31, 35.  Mr. McNair is the CIA official

responsible for the review of documents containing information originating with the DO, or

otherwise implicating DO interests, which may be responsive to FOIA or Privacy Act requests.

Id. at ¶ 1.  Also, Mr. McNair has been appointed by the Executive Director of the CIA as a

Records Validation Officer for purposes of this litigation, and thus is authorized to access all

Agency records on any subject relevant to this litigation, including those located in or under the

cognizance of CIA directorates other than the DO.  Id. at ¶ 2.

In response to the plaintiffs' requests, CIA's searches focused on the DO and the

Directorate of Intelligence ("DI") as the two CIA directorates determined to be most likely to

have responsive records.[23]  Id. at ¶ 14.  Additional searches were conducted, in response to

particular requests, of the Directorate of Administration (renamed in June 2001 the "Mission

Support Office", and hereinafter "MSO") and the Director of Central Intelligence Area ("DCI

---

[23] The DO is the CIA component responsible for the clandestine collection of foreign
intelligence information from human sources.  Id. at ¶ 15.  The DI is the CIA component that
analyzes, interprets, and forecasts foreign intelligence issues and world events of importance to
the United States.  Id. at ¶ 16.

Area").[24] Id. For each search, CIA employed a wide range of search terms, which the McNair Declaration details. Id. at ¶¶ 21, 24, 31, 35. Altogether, CIA's searches fully satisfied CIA's obligations under the FOIA and the Privacy Act.

B.     CIA Is Entitled to Summary Judgment on Count 13

Notwithstanding the search described in the foregoing section, CIA has been unable find any CIA records that are responsive to Plaintiff Holdenried's FOIA request. McNair Declaration (Ex. D), ¶ 31. Holdenried's request forms the basis for Count 13 of the plaintiffs' Complaint. Because CIA's search fully satisfied CIA's obligations under the FOIA, CIA is entitled to summary judgment on Count 13.

C.     CIA Is Entitled to Summary Judgment on Count 12

Notwithstanding the search described in Section VI(A) above, CIA has been unable to find any CIA records that are responsive to Plaintiff Larson's FOIA/Privacy Act request. Id. at ¶ 35. However, CIA did locate three responsive records originating with DIA that it referred to DIA for the latter agency's review and direct response to Larson. Richardson Declaration (Ex. C), ¶ 14; McNair Declaration (Ex. D), ¶ 9. The three documents referred by CIA to DIA were withheld in part, pursuant to FOIA Exemptions 1, 2, and 3. Richardson Declaration (Ex. C), ¶ 14. Because CIA's search fully satisfied CIA's obligations under the FOIA, and because DIA properly asserted Exemptions 1, 2, and 3 in withholding information from Larson, CIA is entitled to summary judgment on Count 12.

---

[24]The MSO is the principal administrative and support arm of the CIA. Id. at ¶ 17. The DCI Area encompasses not only the Director of Central Intelligence and the Deputy Director of Central Intelligence, but also several components not organized under one of CIA's four main directorates, such as the Office of Inspector General and the Office of General Counsel. Id. at ¶ 18.

1.    *DIA's Exemption 1 Withholdings Are Proper*

Two documents partially withheld by DIA contain material that was excised pursuant to Exemption 1.  Id., Vaughn Index (Ex. 1), Item Nos. 2, 4.  In both cases, the withheld material consists of data provided by sensitive intelligence sources and methods concerning various terrorist related activity around the world.  Id.  As such, the information is protected by Executive Order 12958, which exempts from disclosure information concerning "intelligence activities . . . , intelligence sources or methods, or cryptology" (Section 1.4(c)), as well as information concerning "foreign relations or foreign activities of the United States, including confidential sources" (Section 1.4(d)).  Application of these statutory protections under Exemption 1 are procedurally proper because Richardson is the DIA official responsible for determining whether responsive records are subject to FOIA exemptions, and in such capacity forwarded the documents in question to the appropriate original classification authorities within DIA.  Id. at ¶¶ 1, 33.  Substantively, the withheld information falls within the scope of Sections 1.4(c) and (d) because the Richardson Declaration contains "reasonable specificity" regarding the harm likely to result from disclosure, and is not called into question by contradictory evidence in the record or by evidence of agency bad faith.  See Halperin, 629 F.2d at 148.

2.    *DIA's Exemption 2 Withholdings Are Proper*

All three of the documents partially withheld by DIA contain material that was excised pursuant to Exemption 2.  Richardson Declaration (Ex. C), Vaughn Index (Ex. 1), Item Nos. 2-4.  In each case, the withheld material consists of message routing data.  As earlier noted, message routing data represents classic "low 2" material, insofar as it "relate[s] to trivial administrative matters of no genuine public interest."  Smith, 721 F.2d at 830 n.4.

- 53 -

3.      *DIA's Exemption 3 Withholdings Are Proper*

Finally, all three of the documents partially withheld by DIA also contain material that was excised pursuant to Exemption 3.  Richardson Declaration (Ex. C), <u>Vaughn</u> Index (Ex. 1), Item Nos. 2-4.  In each case, the withheld material consists of the identities of the DIA personnel who prepared the document.  As also earlier noted, under 10 U.S.C. § 424, DIA is generally exempted from having to disclose, <u>inter alia</u>, the names of the personnel it employs.  Because this provision clearly qualifies as an exemption statute for purposes of Exemption 3 – and because neither of the two circumstances for disclosure contemplated by the statute applies to this case – it is once again easy to conclude that DIA properly asserted Exemption 3 in withholding information from Larson.

D.      <u>CIA Is Entitled to Summary Judgment on Count 15</u>

In its response to Plaintiff Joslin's FOIA/Privacy Act request, which forms the basis for Count 15 of the plaintiffs' Complaint, CIA withheld in part four documents pursuant to FOIA Exemptions 1 and 3. McNair Declaration (Ex. D), at ¶ 22.

In each document, virtually all of the substantive information that is actually responsive to Joslin's request has been released, and the withheld material consists solely of paragraph classification markings, dissemination control markings and CIA organizational information. <u>Id.</u>, <u>Vaughn</u> Index (Ex. 1), pages 1-6.  Information of this nature is covered by Exemption 1 because it pertains to intelligence sources and methods, which are protected by Section 1.4(c) of Executive Order 12958.  <u>Id.</u>, ¶ 38.  Application of this statutory protection under Exemption 1 is procedurally proper because McNair holds original classification authority at the TOP SECRET level, and is thus authorized to conduct classification review and to make original classification

- 54 -

and declassification decisions.  Id. at ¶ 3.  Substantively, the withheld information falls within

the scope of Section 1.4(c) because the McNair Declaration contains great specificity regarding

the harm likely to result from disclosure, see id. at ¶¶ 40-55, and is not called into question by

contradictory evidence in the record or by evidence of agency bad faith.  See Halperin, 629 F.2d

at 148.

The information withheld from these documents is also protected by statutory exemptions

incorporated by Exemption 3.  In particular, CIA relies on Section 103(c)(7) of the National

Security Act of 1947 (requiring protection of intelligence sources and methods from

unauthorized disclosure), and Section 6 of the Central Intelligence Agency Act of 1949

(protecting privacy interests of CIA personnel).  McNair Declaration (Ex. D), ¶ 39.  Both

provisions are identified throughout this memorandum as exemption statutes for the purposes of

Exemption 3.

     E.      CIA Is Entitled to Summary Judgment on Count 14

In its response to Plaintiff Portillo-Bartow's FOIA request, which forms the basis for

Count 14 of the plaintiff's Complaint, CIA withheld in full four documents pursuant to FOIA

Exemptions 1 and 3.  McNair Declaration (Ex. D), ¶ 25.

Each of these four documents contains the same sorts of paragraph classification

markings, dissemination control markings and CIA organizational information that was withheld

in response to Plaintiff Joslin's request, and for precisely the same reasons.  Id., Vaughn Index

(Ex. 1), pages 6-10.  These four documents found responsive to Plaintiff Portillo-Bartow's

request are fully withheld, however, because only certain, easily identifiable people would have

been in a position to know the substantive information contained in the documents.  Id.  Release

of the documents in redacted form, therefore, would be tantamount to releasing the protected

information.  Id.  Accordingly, no portion of the documents could be reasonably segregated and

released.

## VII.   NTSB IS ENTITLED TO SUMMARY JUDGMENT

NTSB is entitled to summary judgment on Count 20 of the plaintiffs' Complaint.  NTSB

has conducted a thorough search in response to the request of Plaintiff Kerndt that forms the

basis for this count.  In so doing, NTSB found no records responsive to Kerndt's request.

### A.   NTSB Has Conducted an Adequate Search

The search conducted by NTSB was reasonably calculated to uncover responsive records.

The Declaration of Melba D. Moye, Chief of the Public Inquiries/FOIA Branch of NTSB's

Office of Research and Engineering, details the particulars of NTSB's search.  Moye Declaration

(Ex. E), ¶¶ 3, 4(c).  Ms. Moye supervises all facets of NTSB's responses to FOIA requests.  Id. at

¶ 2

NTSB keeps four sets of records with regard to accident investigations:  (i) public

dockets, which fully document NTSB's investigative efforts pertaining to a particular accident;

(ii) accident briefs, which are available on a computerized database; (iii) investigation files

containing paper copies of documents collected during NTSB investigations; and (iv) safety

recommendation files, which contain recommendations developed by NTSB in conjunction with

its accident investigations.  Id. at ¶ 3.  Maintenance and control of these four sets of records is

shared by the following three NTSB offices:  the Public Inquiries Branch ("PIB") of the Office of

Research and Engineering, the Office of Aviation Safety ("OAS"), and the Office of Safety

Recommendations and Accomplishments ("OSRA").  Id. at ¶ 4(c).

In response to Kerndt's request, the PIB searched NTSB's public dockets and accident summaries; the OAS searched NTSB's investigation files; and the OSRA searched NTSB's safety recommendation files.  Id.  The search conducted by the OAS encompassed all of the investigative files on aviation accidents in Central America, without regard to the date of accident.  Id. at ¶ 4(d).  Likewise the searches conducted by the PIB and the OSRA extended to all electronically indexed files available for search without regard to the date of accident.  Id.  None of these NTSB offices were able to locate any records responsive to Kerndt's request.

Because NTSB's search fully satisfied NTSB's obligations under the FOIA, NTSB is therefore entitled to summary judgment on Count 20 of the plaintiffs' Complaint.

## CONCLUSION

For the foregoing reasons, Defendant DOS should be granted summary judgment on Counts 1-3 and 5-6 of the plaintiffs' Complaint;  Defendant NSA should be granted summary judgment on Counts 16, 17, and 19, and partial summary judgment on Count 18;  Defendant DIA should be granted summary judgment on Counts 8-11, and partial summary judgment on Count 7;  Defendant CIA should be granted summary judgment on Counts 12-15;  and Defendant NTSB should be granted summary judgment on Count 20.

Respectfully submitted,


ROBERT D. McCALLUM, JR.
Assistant Attorney General


/s/_____
ELIZABETH J. SHAPIRO
D.C. Bar #418925
Assistant Branch Director
U.S. Department of Justice, Civil Division
Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C.  20044
Delivery Address
20 Massachusetts Ave., N.W., Room 7152
Washington, D.C. 20001
Tel.: (202) 514-5302
Fax: (202) 616-8202
Email: Elizabeth.Shapiro@usdoj.gov


**Counsel for Defendants**


Dated:  May 30, 2003

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     DOS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.     Request of Meredith Larson (Count 1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.     Requests of Paul Joslin (Count 6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.     Request of Thomas Henehan (Count 3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    D.     Request of Kimi Okada (Count 2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    E.     Request of Adriana Portillo-Bartow (Count 5) . . . . . . . . . . . . . . . . . . . . . . 9

    F.     Request of Lisel Holdenried (Count 4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    G.     Referral from NSA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    H.     Referral from DIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.     Referral from CIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.    NSA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.     Request of Meredith Larson (Count 16) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.     Request of Patricia Kerndt (Count 17) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.     Request of Thomas Henehan (Count 18) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    D.     Request of Adriana Portillo-Bartow (Count 19) . . . . . . . . . . . . . . . . . . . . 14

    E.     Referral from DIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.   DIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    A.     Request of Meredith Larson (Count 7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

B.      Request of Paul Joslin (Count 11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

C.      Request of Adriana Portillo-Bartow (Count 9) . . . . . . . . . . . . . . . . . . . . . . . 17

D.      Request of Patricia Kerndt (Count 10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

E.      Request of Lisel Holdenried (Count 8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

F.      Referral from CIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.     CIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

A.      Request of Paul Joslin (Count 15) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

B.      Request of Adriana Portillo-Bartow (Count 14) . . . . . . . . . . . . . . . . . . . . . . . 19

C.      Request of Lisel Holdenried (Count 13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D.      Request of Meredith Larson (Count 12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

E.      Referral from NSA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

F.      Referral from DIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.      NTSB . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

A.      Request of Patricia Kerndt (Count 20) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.      SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

II.     FOIA EXEMPTIONS CLAIMED BY DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . 24

A.      Exemption 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

B.      Exemption 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

C.      Exemption 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

D.      Exemption 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

E.      Exemption 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

III.    DOS IS ENTITLED TO PARTIAL SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . 30

    A.    DOS Has Conducted Adequate Searches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    B.    DOS Is Entitled to Summary Judgment on Count 2 . . . . . . . . . . . . . . . . . . . . . . 32

    C.    DOS Is Entitled to Summary Judgment on Count 3 . . . . . . . . . . . . . . . . . . . . . . 32

    D.    DOS Is Entitled to Summary Judgment on Count 1 . . . . . . . . . . . . . . . . . . . . . . 32

        1.    *DOS's Exemption 6 Withholdings Are Proper* . . . . . . . . . . . . . . . . . . . 33

        2.    *DOS's Exemption 1 Withholdings Are Proper* . . . . . . . . . . . . . . . . . . . 34

        3.    *DOS's Exemption 3 Withholding Is Proper* . . . . . . . . . . . . . . . . . . . . . 35

    E.    DOS Is Entitled to Summary Judgment on Count 5 . . . . . . . . . . . . . . . . . . . . . . 36

    F.    DOS Is Entitled to Summary Judgment on Count 6 . . . . . . . . . . . . . . . . . . . . . . 37

IV.    NSA IS ENTITLED TO PARTIAL SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . 38

    A.    The Details of NSA's Search Are Privileged . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

    B.    NSA Is Entitled to Summary Judgment on Count 16 . . . . . . . . . . . . . . . . . . . . . 40

        1.    *NSA's Exemption 1 Withholdings Are Proper* . . . . . . . . . . . . . . . . . . . 40

        2.    *NSA's Exemption 3 Withholdings Are Proper* . . . . . . . . . . . . . . . . . . . 41

    C.    NSA is Entitled to Summary Judgment on Count 17 . . . . . . . . . . . . . . . . . . . . . 41

        1.    *Document Processed by NSA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

        2.    *Document Referred to CIA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

    D.    NSA Is Entitled to Summary Judgment on Count 19 . . . . . . . . . . . . . . . . . . . . . 43

    E.    NSA Is Entitled to Partial Summary Judgment on Count 18 . . . . . . . . . . . . . . . 43

        1.    *NSA's Exemption 1 and 3 Withholdings are Proper* . . . . . . . . . . . . . . 44

        2.    *NSA's Exemption 2 Withholdings Are Proper* . . . . . . . . . . . . . . . . . . . 44

3.      *Referrals to Other Agencies* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

V.      DIA IS ENTITLED TO PARTIAL SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . 45

        A.      DIA Has Conducted Adequate Searches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

        B.      DIA Is Entitled to Summary Judgment on Counts 8-11 . . . . . . . . . . . . . . . . . 46

        C.      DIA Is Entitled to Partial Summary Judgment on Count 7 . . . . . . . . . . . . . . . 47

                1.      *DIA's Exemption 2, 3, and 6 Withholdings Are Proper* . . . . . . . . . . . . 47

                2.      *Documents Referred to DOS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

                3.      *Document Referred to NSA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

                4.      *Documents Referred to CIA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

                5.      *Documents Referred to Other Agencies* . . . . . . . . . . . . . . . . . . . . . . . . 50

VI.     CIA IS ENTITLED TO SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

        A.      CIA Has Conducted Adequate Searches . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

        B.      CIA Is Entitled to Summary Judgment on Count 13 . . . . . . . . . . . . . . . . . . . 52

        C.      CIA Is Entitled to Summary Judgment on Count 12 . . . . . . . . . . . . . . . . . . . 52

                1.      *DIA's Exemption 1 Withholdings Are Proper* . . . . . . . . . . . . . . . . . . . 53

                2.      *DIA's Exemption 2 Withholdings Are Proper* . . . . . . . . . . . . . . . . . . . 53

                3.      *DIA's Exemption 3 Withholdings Are Proper* . . . . . . . . . . . . . . . . . . . 54

        D.      CIA Is Entitled to Summary Judgment on Count 15 . . . . . . . . . . . . . . . . . . . 54

        E.      CIA Is Entitled to Summary Judgment on Count 14 . . . . . . . . . . . . . . . . . . . 55

VII.    NTSB IS ENTITLED TO SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . 56

        A.      NTSB Has Conducted an Adequate Search . . . . . . . . . . . . . . . . . . . . . . . . . . 56

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

## TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE(S)**

Abbotts v. NRC, 766 F.2d 604 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . .  23

Bowers v. Department of Justice, 930 F.2d 350 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . .  26

Branch v. Federal Bureau of Investigation, 658 F. Supp. 204
    (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28, 44

CIA v. Sims, 471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28, 41

Carter v. United States Dep't of Commerce, 830 F.2d 388 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

Church of Scientology of California v. Department of State,
    493 F. Supp. 418 (D.D.C. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

City of Virginia Beach v. U.S. Dep't of Commerce,
    995 F.2d 1247 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

Coleman v. F.B.I., 13 F. Supp. 2d 75 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

Cox v. United States Dep't of Justice, 601 F.2d 1 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . .  26, 27

Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051
    (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

De Laurentiis v. Haig, 686 F.2d 192 (3rd Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

Department of Interior v. Klamath Water Users Protective Ass'n,
    532 U.S. 1 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Dudman Communications Corp. v. Dep't of the Air Force,
    815 F.2d 1565 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28, 41

Founding Church of Scientology v. Smith, 721 F.2d 828 (D.C. Cir. 1983) . . . . . . . . .  26, 47, 53

Frugone v. Central Intelligence Agency, 169 F.3d 772 (D.C. Cir.1999) . . . . . . . . . . . . . . . .  26

Grounds Saucer Watch v. CIA, 692 F.2d 770 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . .  24

Halperin v. CIA, 629 F.2d 144 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

Hayden v. NSA, 608 F.2d  1381 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39, 41

Holy Spirit Ass'n for Unification of World Christianity v. F.B.I.,
    683 F.2d 562 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

Holy Spirit Association for Unification of World Christianity, Inc. v.
    U. S. Dept. of State, 526 F. Supp. 1022 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . .  38

Hoover v. Dep't of the Interior, 611 F.2d 1132 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . .  29

Institute for Policy Studies v. Department of the Air Force,
    676 F. Supp. 3 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

Jefferson v. U.S. Dep't of Justice, No. 00-1489 (D.D.C. Nov. 30, 2000) . . . . . . . . . . . . . . . .  45

Jordan v. U.S. Department of Justice, 591 F.2d 753 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . .  29

Judicial Watch, Inc. v. U.S. Dept. of Commerce, 83 F. Supp. 2d 105
    (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice, 102 F. Supp. 2d 6
    (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  38

Krikorian v. Department of State, 984 F.2d 461 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . .  26, 41

Kuffel v. U.S. Bureau of Prisons, 882 F. Supp. 1116 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . .  45

Lesar v. United States Department of Justice, 636 F.2d 472 (D.C. Cir. 1980) . . . . . . . . . . . .  27

Linder v. National Security Agency, 94 F.3d 693 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . .  39, 41

McCutchen v. United States Dep't of Health & Human Services,
    30 F.3d 183  (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 33

Mead Data Central v. Department of the Air Force, 566 F.2d 242
    (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

Medina-Hincapie v. Department of State, 700 F.2d 737, 741-42 (D.C. Cir. 1983) . . . . . . . . . .  35

Military Audit Project v. Casey, 656 F.2d 724 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . .  23, 25

Miller v. Casey, 730 F.2d 773 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

NLRB v. Sears, Roebuck & Co., 421 U.S. 132 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 36

New York Times Co. v. NASA, 920 F.2d 1002 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 29

Nix v. United States, 572 F.2d 998 (4th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 44

Oglesby v. Department of the Army, 920 F.2d 57 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . 23

Palacio v. U.S. Department of Justice, 2002 U.S. Dist. LEXIS 2198
   (D.D.C. Feb. 11, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Reed v. NLRB, 927 F.2d 1249 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Roberts v. U.S. Dep't of Justice, 1995 WL 356320, at 2 (D.D.C. Jan. 29, 1993) . . . . . . . . . . 24

Rushford v. Civiletti, 485 F. Supp. 477 (D.D.C. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Salisbury v. United States, 690 F.2d 966 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Shaw v. United States Dep't of State, 559 F.Supp. 1053 (D.D.C. 1983) . . . . . . . . . . . . . . . . . 33

Scherer v. Kelly, 584 F.2d 170 (7th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 44

Schiller v. National Labor Relations Board, 964 F.2d 1205
   (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Students Against Genocide v. Department of State, 257 F.3d 828
   (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Taylor v. Department of the Army, 684 F.2d 99 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . 25

Texas Independent Producers Legal Action Ass'n v. IRS,
   605 F. Supp. 538 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Town of Norfolk v. U.S. Corps of Engineers, 968 F.2d 1438
   (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

United State Dep't of the Air Force v. Rose, 425 U.S. 352 (1976) . . . . . . . . . . . . . . . . . . . . . 29

vii

United States Dep't of Defense v. Federal Labor Relations Authority,
    510 U.S. 487 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 34, 48

United States Dep't of State v. Washington Post Co., 456 U.S. 595 (1982) . . . . . . . . . . . . . . 29

United States Department of Justice v. Reporters Committee for
    Freedom of the Press, 489 U.S. 749 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 34

Vaughn v. Rosen, 523 F.2d 1136 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 36, 37

Voinche v. F.B.I., 940 F. Supp. 323 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 26, 37, 47

Washington Post v. DOD, 766 F. Supp. 1 (D.D.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Weisberg v. Department of Justice, 745 F.2d 1476 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . 23

Wiesenfelder v. Riley, 959 F. Supp. 532 (D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Wolfe v. Department of Health and Human Services, 839 F.2d 768
    (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## STATUTES

5 U.S.C. § 552(a)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

5 U.S.C. § 552(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

8 U.S.C. § 1202(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

10 U.S.C. § 424 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 53, 54

50 U.S.C. § 401a(4)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

50 U.S.C. § 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

50 U.S.C. § 403g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

50 U.S.C. § 403-3(c)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40