# EXHIBIT A

# (Part II)

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

---

September 4, 1997

SEP 14 6 52 PM '97

Ms. Margaret P. Grafeld
Acting Director, Programs and Services
Office of Information Resources Management
U.S. Department of State
2201 C Street, N.W., Room 1512
Washington, D.C. 20520-1512

Re: *Freedom of Information/Privacy Act Request* **for William Hervey Woods, Jr.**

Dear Ms. Grafeld:

We have been retained by U.S. citizen Father Thomas P. Henehan to represent him in obtaining documents related to the mysterious air crash and death of Father William H. Woods, near the Ixcan, Guatemala on November 20, 1976. Father Henehan's social security number is 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. He lives in Maryknoll, New York.

Father Woods worked in Guatemala for 18 years as a missionary, the last few which he devoted to organizing agricultural cooperatives for the indigenous Mayans in the Ixcan jungle. On November 20, 1976, a small plane he was piloting crashed, killing Father Woods and his four U.S. citizen passengers, John Gauker, Selwyn Puig, Ann Kerndt, and Dr. Michael D. Okada. The Cessna 185 was in sound mechanical condition, the weather was good, and Father Woods was an experienced pilot.

Father Woods was born in Houston, Texas on September 14, 1931. He entered the Maryknoll seminary in Illinois in 1949, then later spent time as a Maryknoll in Massachusetts (1953-1954) and New York (1957-1958). Between 1954 and 1957, Father Woods studied in Mexico, ministered to migrant farm workers in California, and served as chaplain in a hospital in Houston, Texas. In 1958, he was transferred to Guatemala where he ministered with the Maryknoll Father and Brothers/Catholic Foreign Mission Society of America, Inc. until his death in 1976.

Documents relating to this request include but are not limited to cable traffic, airgrams, notes, letters, memos, memoranda of conversation, reports, analyses, interviews, briefings, correspondence, diplomatic notes, or démarches. Please advise us if William H. Woods' name is contained in other "See Reference" files as well, so that we can make a decision regarding whether to have such files searched.

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 28

Pursuant to the Freedom of Information Act and Privacy Act (FOIA), 5 U.S.C. § 552, as amended, we request disclosure of the documents described on the attached pages for inspection and copying. We further request that all documents be reviewed in their entirety and that no information be omitted on the grounds of non-relevance.

If you regard any of these documents as potentially exempt from the FOIA's disclosure requirements, we ask that you nonetheless exercise your legally-authorized discretion to disclose them as the value of the documents clearly outweighs any agency regulation or privacy interest that might be asserted. Please note that § 1.8 of Clinton Executive Order 12958, 60 F.R. 19825, provides that *in no case shall information be classified in order to:*

*(1) conceal violations of law, inefficiency, or administrative error;*
*(2) prevent embarrassment to a person, organization, or agency;...or*
*(4) prevent or delay the release of information that does not require protection in the interest of national security.*

Attorney General Reno's Oct. 4, 1993 memo on the FOIA, 1993 WL389373 (White House) urged government officials to favor discretionary release of documents rather than withhold them. In that memo, Janet Reno also noted that the Justice Department would no longer routinely defend agency withholding without justification. Similarly, on Oct. 4, 1993, President Clinton directed the executive branch to "renew their commitment to the Freedom of Information Act, to its underlying principles of government openness, and to its sound administration." 1993 WL 389373 (White House). Given that in 1995, the President ordered his Intelligence Oversight Board (IOB) to conduct a wide-ranging investigation into certain aspects of U.S. policy toward Guatemala, a precedent of disclosure has been established concerning human rights information on Guatemala maintained by the U.S. government.

As the FOIA requires, in the event you determine that a document contains exempt material, please review the document line-by-line and release all reasonably segregable portions. To permit us to reach an informed decision about whether to file an administrative appeal of any withheld material, please describe any withheld documents (or portions thereof) by date, origin, and number of pages and explain in full the basis for withholding. If documents are classified, please treat this FOIA request as a request to declassify. If words and phrases are excised, please black, rather than white, them out.

Please waive all fees in connection with this request. Disclosure of the records that we have requested is clearly within the public interest, and, therefore, constitutes an appropriate circumstance for the waiver of fees. Should you decline to waive the fees, please notify us immediately and describe the specific reasons in writing.

Our request involves information bearing on the extent of the U.S. government's knowledge of the suspected murder of William H. Woods and four other U.S. citizens. Given the Guatemala-CIA revelations in the spring of 1995 and the summer of 1997 and the release of the Intelligence Oversight Board (IOB) report in June 1996 , the public has a great interest in understanding more about the human rights situation in Guatemala and about specific human rights cases. In May 1996, over 100 members of the House of Representatives sent a letter to President Clinton requesting a broad declassification of information pertaining to human rights violations in Guatemala.

The American public will benefit by gaining a better understanding of the U.S. government's intelligence operations and activities abroad as well as its historical relationship with Guatemala and its military forces, particularly in relation to the death of a man who had organized woodworking cooperatives, medical clinics, and land resettlement schemes for the Guatemalan people. The Maryknollers, a non-profit missionary order active for at least 50 years in Guatemala, are filing this FOIA request for one of their own -- a priest killed while fulfilling his organization's goal of helping the poorest build lives of justice and dignity.

To speed disclosure of the requested records, please release them as they become available to you, without waiting until all documents have been processed. Given the great value of these records to the public, we ask that you expedite the handling of this request. More than twenty years have passed since Father Woods' death and the Maryknolls still know almost nothing about the identity or motives of those who brought down the plane.

Department of State offices most likely to have responsive documents include, at a minimum: *Bureau of Interamerican Affairs* (ARA & ARA/EX), including the Office of Central American Affairs and its Guatemala Desk (ARA/CEN) and the Office of Economic Policy (ARA/ECP); the *Office of Policy Planning and Coordination* (ARA/PPC); the *Bureau of Consular Affairs* (CA), particularly the Office of Deputy Assistant Secretary for Overseas Citizens Services (CA/OCS) and its Inter-American Division (CA/OCS/EMR/ARA); the *Bureau of Intelligence and Research* (INR & INR/EX), including the Office of Analysis for Inter-American Republics (INR/IAA), the Office of Intelligence Coordination (INR/IC), the Office of Economic Analysis (INR/EC), the Office of Terrorism and Narcotics Analysis (TNA), the Office of Political-Military Analysis (INR/PMA), the Office of Intelligence Liaison (INR/IL), and the Office of Active Measures Analysis and Response (INR/AMR); the *Bureau of International Narcotics Matters* (INM); the *Bureau of Diplomatic Security* (DS), including the Diplomatic Security Service (DSS), Countermeasures and Counterintelligence (DS/CMI), and Emergency Plans Counterterrorism (DS/EPC); the *Bureau of Political/Military Affairs* (PM), including the Office of Policy Analysis (PM/P), the Office of Defense Relations and Security Assistance (PM/DRSA), and the Office of International Security Operations (PM/ISO); the *Office of the Legal Advisor* (L), including the Assistant Legal Advisors for Consular Affairs (L/CA), Inter-American Affairs (L/ARA), Law Enforcement and Intelligence (L/LEI), Politico-Military Affairs (L/PM); and the American Embassy in Guatemala City.

If you have any questions regarding the identity of the records, their location, the scope of the request, or any other matter, please call Linette Tobin at (301) 588-8066. We look forward to receiving your response within the 10-day statutory limit. We understand that we may appeal if we do not receive a response or if documents are withheld or redacted.

Documents and reports should be sent to:

Linette Tobin/Monica Schurtman
Guatemala Human Rights Commission/USA
3321 12th Street N.E.
Washington, D.C. 20017

Very truly yours,

Linette Tobin, Esq.

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

## NOTICE OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE

Date: 07/24/97

At the request of FR. THOMAS P. HENEHAN, MM, 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,
Name Social Security Number

P.O. BOX 303, MARYKNOLL, NY 10545-0303
Address

I hereby enter my appearance as attorney for such person in all matters relating to Freedom of Information Act requests filed with U.S. government agencies.

I am an attorney and a member in good standing of the Bar of the Supreme Court of the United States or of the highest court in the following State or the District of Columbia:

D.C. Court of Appeals
State Name of Court

Pursuant to the Privacy Act of 1974, I hereby consent to the disclosure to the following named attorney of any record pertaining to me which appears in any U.S. government system of records.

Monica Schurtman, Esq.
Linette Tobin, Esq.

REV. THOMAS P. HENEHAN, MM — Thomas P. Henehan — 07/24/97
Name of Person Consenting — Signature — Date

Linette Tobin — [signature] — 9/4/97
Name of Attorney — Signature — Date

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

SEP 14 6 52 PM '97

SUBJECT OF REQUEST

*WILLIAM H. WOODS*

All documents relating in whole or in part to the mysterious air crash and death of Father William H. Woods, M.M. near Ixcán, Guatemala on November 20, 1976. Aboard the plane were also four U.S. citizens, John Gauker, Selwyn Puig, Ann Kerndt, and Dr. Michael D. Okada.

At a minimum, responsive records ought to be found in categories indexed or covered by the following **TAGS** dealing with security, assistance to citizens, aid, aviation, petroleum, military affairs, political relations, intelligence, national security, terrorism, narcotics, crime, and justice: ASEC, CASC, EAID, EAIR, EPET, MARR, MASS, MOPS, PGOV, PINR, PINS, PREL, PTER, SNAR, KCRM, KJUS.

Subjects relating to this request should include but are not limited to:

- Information on when and how any U.S. agency, agent, or official, including but not limited to the State Department, the U.S. Embassy in Guatemala, its Political and Consular Sections, its Defense Attaché's Office, its Legal Attaché's Office, and the CIA first knew of the crash and death of Father Woods.

- The arrest, detention, or questioning of Guatemalan citizens or armed forces personnel in the crash of Father Woods' aircraft.

- Any information regarding possible motives for an attack on William H. Woods.

- Information regarding any investigation of Father Woods carried out by the Guatemalan government, police, or armed forces prior to the crash.

- Information regarding any investigation of Father Woods by any agent, official, or agency of the U.S. government prior to or subsequent to the crash of William H. Woods' airplane.

- Any information regarding any efforts on the part of the U.S. government, including the FBI or NTSB, to investigate the crash or Father Woods' death.

- Any information regarding any investigation of the crash conducted by the Guatemalan government, including but not limited to, the Ministry of the Interior and the Guatemalan judiciary.

- Documents which may suggest a link between the death of Father Woods and oil rights in the Ixcán or the purchase of land near or in the Ixcán by Guatemalan officials or agents.

- Any records containing names or identities of witnesses to the crash.

- Any records regarding Guatemalan troop movements in the Ixcán region around the time of the crash.

- Any documents regarding the evidence related to the plane crash or the evaluation thereof.

- Any documents related to Father Woods' meetings with any Guatemalan government official, including but not limited to, General Kjell Laugerud.

- A copy of the embassy death report or any document referring to the recovery, examination, viewing, or transport of Father Woods' body.

- Copies of the death notice cable and any follow up messages regarding Father Woods' death to or from the U.S. embassy.

- Any information that Father Woods was in danger or that his name was on a death list or that other persons should not fly with him.

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

---

SUBJECT OF REQUEST

*THREATS AGAINST WILLIAM H. WOODS OR THE MARYKNOLL FATHERS AND BROTHERS/CATHOLIC FOREIGN MISSION SOCIETY OF AMERICA, INC.*

All documents relating in whole or in part to any threats against or surveillance of Father Woods or the Maryknoll Fathers and Brothers/Catholic Foreign Mission Society of America, Inc. in Guatemala.

At a minimum, responsive records ought to be found in categories indexed or covered by the following TAGS dealing with security, assistance to citizens, aid, aviation, petroleum, military affairs, political relations, intelligence, national security, terrorism, narcotics, crime, and justice: ASEC, CASC, EAID, EAIR, EPET, MARR, MASS, MOPS, PGOV, PINR, PINS, PREL, PTER, SNAR, KCRM, KJUS.

Subjects related to this request include, but are not limited to:

- Information on when and how any U.S. agency, agent, or official, including but not limited to the State Department, the U.S. Embassy in Guatemala, its Political and Consular Sections, its Defense Attaché's Office, its Legal Attaché's Office, and the CIA first knew of any threats against or surveillance of Father Woods, the Maryknoll Society, or any of its members in Guatemala.

- Information regarding the warning given to William H. Woods by U.S. Ambassador Francis E. Meloy that Woods was in danger from Guatemalan government or military officials.

- Any information regarding possible motives for the threats against Father Woods or the Maryknoll Society.

- Any information regarding any investigation of the Maryknoll Society conducted by the Guatemalan government, police, or security forces.

- Any documents accusing or suggesting that the Maryknolls were involved in subversive or communist activities in Guatemala or otherwise disregarded the laws of that country.

3321 12th St. Washington, DC 20017 T.(202)529-6599 F. (202) 526-4611 e-mail: ghrc@igc.apc.org
A PROJECT OF THE GUATEMALA HUMAN RIGHTS COMMISSION/USA

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

## SUBJECT OF REQUEST

*INVESTIGATION OF THE CRASHED CESSNA 185*

Subjects related to this request include, but are not limited to:

- Any documents related to the cause of the crash of Father Woods' Cessna.
- Any documents either supporting or contradicting the Guatemalan government's statement that the plane had caught fire.
- Any documents supporting or contradicting the Guatemalan government's statement that the plane crashed because of bad weather.
- Any documents supporting or contradicting the Guatemalan government's statement that the plane had crashed because of engine failure.
- Any documents concerning the visit of Armand Edwards, U.S. National Transportation Safety Board, to Guatemala in connection with Father Woods' crash.
- Any documents relating to the plane's missing windshield and side windows.
- Any documents related to the removal of the bodies from the plane.
- Any information suggesting that the plane had been fired upon or shot down.

3321 12th St. Washington, DC 20017 T.(202)529-6599 F. (202) 526-4611 e-mail: ghrc@igc.apc.org
A PROJECT OF THE GUATEMALA HUMAN RIGHTS COMMISSION/USA

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

---

SUBJECT OF REQUEST

*THE ORIGINAL 1995 FOIA REQUEST FOR WILLIAM H. WOODS*

- Documents concerning the 1995 FOIA and Privacy Act requests regarding the air crash and death of Father William H. Woods, M.M., originally filed by Father Stephen Judd, M.M. This request includes, but is not limited to, a copy of the entire original FOIA/PA file created as the result of his 1995 request, including the search slips and any document used or generated in acting upon the request.

3321 12th St. Washington, DC 20017 T.(202)529-6599 F. (202) 526-4611 e-mail: ghrc@igc.apc.org
A PROJECT OF THE GUATEMALA HUMAN RIGHTS COMMISSION/USA



United States Department of State

*Washington, D.C.  20520*

OCT 21 1999

Case Control No. 199703182

Ms. Linette Tobin
Coalition Missing
3321 12th street
Washington, DC 20017

Dear Ms. Tobin:

I refer to your letter of September 4, 1997, requesting the
release of certain Department of State material under the
Freedom of Information Act (Title 5 USC Section 552).

A search of files under the Department's control has resulted
in the retrieval of 23 documents which appear relevant to
your request.  We have determined that 21 may be released,
and two may be released with excisions.

The material in the excised portions of two of the documents
released in part is of such a nature that its release would
constitute a clearly unwarranted invasion of personal
privacy.  As such, it is exempt from release under subsection
(b)(6) of the Freedom of Information Act.

In the case of a document released in part, all non-exempt
material that is reasonably segregable from the exempt
material has been released.

With respect to material we have withheld under the Freedom
of Information Act, you have the right to appeal our
determination within 60 days.  Appeals should be addressed to
the Assistant Secretary for Public Affairs, c/o Appeals
Office, IPS/PP/IA, Room 1512, Department of State,
Washington, D. C. 20520-1512.  The letter of appeal should
refer to the case control number shown above.

Sincerely,

Margaret P. Grafeld
Director
Office of IRM Programs and Services

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 29

December 9 , 1999
2017 Mission St. #303
San Francisco, California 94110

Assistant Secretary for Public Affairs
Appeals Office
IPS/PP/IA Room 1512
Department of State
Washington D.C. 20520-1512

Re : FOIA CASE # 199703182

APPEAL

Dear Officers,

This letter constitutes a legal appeal of the Department of State's response of October 21, 1999 to the Freedom of Information Act request for information concerning the murder of Father William Woods in Guatemala. For your convenience, a copy of the U.S. Department of State response is enclosed for reference. We specifically appeal for the following reasons :

1. According to your response, certain information has been excised on the basis of personal privacy. We note that all persons aboard Father Wood's plane that day were killed, and that most other important persons involved in the case would have been citizens of Guatemala. Privacy issues would be inapplicable. With regards to any involved U.S. citizens still alive, we note that the incident occurred more than twenty years ago. We insist that all underlying facts be disclosed, as there would be no likelihood of identifying any individuals after such a long time period, and as such underlying facts cannot be withheld in any event. If the excised portions identify U.S. officials acting in their official and public capacities, we also ask that their identities be disclosed, or that further justification of the denial be given to us. We also urge

your review of President Clinton's decrees requiring full disclosure in situations of this nature.

2. According to your response, only 23 documents could be retrieved that were responsive to the FOIA request. We do not find this to be credible. Father Woods was an extremely popular priest who had been receiving threats for some time, as the United States government was well aware, including U.S. Embassy officials in Guatemala. As noted in the 1999 United Nations sponsored Truth Commission report, or Report on Historical Clarification, well over 90% of the assassinations of this nature were carried out by the Guatemalan military, especially the G-2 or intelligence division, with which the United States had an extremely close working relationship. Information was freely and fully exchanged between the two governments, especially in cases like this, where Father Woods was repeatedly accused of participating in the "subversion". The depth and quantity of information compiled and shared in such situations is well illustrated by the case of Efrain Bamaca Velasquez, well known to your offices. We note that together with Father Woods, a young volunteer, a young doctor, and a mother and journalist, all U.S. citizens, were killed as well. The circumstances, reports and evidence all clearly indicate a military assassination. Obviously, such a case would have been of enormous interest and concern to the United States government, especially the Embassy. Obviously a great deal of inquiry would have been made of all of our contacts, liaisons, assets and other colleagues within the Guatemalan government and military branches. Accordingly, we ask that the search for relevant documents be continued.

3. We note as well the findings and admonishments of the Intelligence Oversight Board in

report on its investigation on the Guatemala cases, as ordered by President Clinton. The

IOB clearly found that various U.S. agencies, including the Department of State, had improperly withheld information from family and friends of victims in Guatemala. We ask that a further attempt to locate appropriate information be carried out by your Agency.

4. This case is clearly a matter of great public concern and interest. Full disclosure will also help to restore public confidence in the United States government. Again, we would refer you to the recent United Nations Historical Clarification or Truth Commission report, and the voluminous press that surrounded its release, as well as President Clinton's resulting apology to the people of Guatemala. Similar coverage

and concern resulted from the release of the Guatemalan death squad notebook earlier this year.


This letter constitutes our formal and legal appeal of your October 21, 1999 decision.


Sincerely,

Jennifer Harbury
Attorney at Law
Coalition Missing Chairperson



United States Department of State

*Washington, D.C. 20520*

Case Control No. 199703182

JAN 14 2000

Jennifer Harbury, Esquire
Coalition Missing Chairperson
2017 Mission St. #303
San Francisco, CA 94110

Dear Ms. Harbury:

A Department of State Appeals Review Panel, whose members are listed in an enclosure to this letter, has considered your appeal of December 9, 1999, on behalf of Linette Tobin, for the release of two documents withheld in part by the Department in the course of responding to her request under the Freedom of Information Act.

The Panel has determined that the previously withheld portions of both documents must continue to be withheld. A List of Documents With Unchanged Excisions is enclosed.

The information in the deleted portions of both documents is of such a nature that its release would constitute a clearly unwarranted invasion of personal privacy. Individuals who write to the government expressing their personal opinions generally do so with some expectations of confidentiality, and thus their identities, but not necessarily the substance of their correspondence, should be withheld. This is in accord with Department of Justice guidance on the application of the exemption under subsection (b)(6) of the Freedom of Information Act, 5 USC Section 552(b)(6), for these types of documents.

No further non-exempt, meaningful information can be segregated from the exempt material and released.

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 31

The Panel's decision represents the final decision of the Department of State. If you wish to seek judicial review of this determination, you may do so under 5 USC Section 552(a)(4).

Sincerely,

Francis Terry McNamara

FRANCIS TERRY McNAMARA
CO-CHAIRMAN, APPEALS REVIEW PANEL

Enclosures:
List of Panel Members.
Document list

TANIA ROSE
ATTORNEY AT LAW
2527 COLLEGE AVENUE
BERKELEY, CA 94704
510.849.1900

RECEIVED BY DEPARTMENT OF STATE
02 MAR -8 PM 2:35

21 January 2002

Margaret Grafeld
Office Of Information Resources Mgmt. Program
4/RPS /IPS1 SA-2
Department of State
Wash, DC 20522

Re: Freedom of Information/Privacy Act Request for MICHAEL OKADA

To whom it may concern:

I have been retained by U.S. citizen Kimi Okada to represent her in obtaining documents related to the death of her brother in Guatemala on or about November 20, 1976. Dr. Okada, a physician, had been in Guatemala to offer medical assistance, and was flying in a Cessna 185 plane when it crashed near Quiche, Guatemala. The plane was piloted by Father William Woods, a Maryknoll priest. The cause of the crash has not been conclusively determined. Kimi Okada is the sister of Dr. Michael Okada.
Dr. Okada was twenty-nine years old at the time of his death. He resided in San Francisco, California. He was survived by his sister, Kimi, his mother, and his daughter, Mari.

Documents relating to this request include but are not limited to cable traffic, airgrams, notes, letters, memos, memoranda of conversation, reports, analyses, interviews, briefings, correspondence, diplomatic notes, or non-papers. Please advise us if Dr. Michael Okada's name is contained in other "See reference" files as well, so that we can make a decision whether to have such files searched.

Pursuant to the Freedom of Information and Privacy Act , 5 U.S.C. 552, as amended, we request disclosure of the documents described as follows:

- Information on when and how any U.S. agency or official first heard about the crash of the subject airplane;

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 32

- The questioning of Guatemalan citizens or armed forces or other security forces suspected in the plane crash;
- Any information regarding possible motives for either sabotage to the aircraft or shooting down of the aircraft by anyone;
- Any information regarding the air crash compiled by the Guatemala Human Rights Ombudsman current or past;
- The role of any Guatemelan agent or organization potentially involved in either sabotage of or shooting down of the subject aircraft;
- Any investigation of the air crash undertaken by the NTSB;
- Any investigation of the air crash undertaken by Guatemalan government officials;
- Any communication between any Guatemalan agency and any U.S. agency regarding the subject air crash;
- Any information regarding threats by anyone against the pilot of the aircraft, Father William Woods;
- Any information regarding the Guatemalan government's hostility towards foreigners doing work on behalf of indigenous peoples in Guatemala;

I request that all documents be reviewed in their entirety and that no information be omitted on the grounds of non-relevance. If you regard any of these documents as potentially exempt under the statutorily prescribed exemptions, we ask that you nonetheless exercise your legally authorized discretion to disclose them as the value of the documents outweighs any agency regulation.

Please waive all fees in connection with this request. Disclosure of the records is clearly within the public interest as the production of such documents may significantly enhance the public's knowledge both of what happened to four American citizens who lost their lives in Guatemala while there to do work to improve the lives of Guatemalans, and will enhace the public's knowledge of the activities of the Department of Defense.

Should you decline to waive the fees, please notify me immediately and describe the reasons in writing. If fees are not waived, I agree to pay for costs up to $150.00.

If you have any questions about any aspect of this request, please call me at the above number. I look forward to receiving your response.

Very Truly Yours,

TANIA ROSE

NOTICE OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE

DATE: January 21, 2002

At the request of Kimi Okada, Social Security number 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 and contact address of 564 Texas Street, San Francisco, California 94107

I hereby enter my appearance as attorney for such person in all matters relating to Freedom of Information Act requests filed with U.S. Government agencies.

I am an attorney in good standing of the Bar of California and licensed to practice before all the courts of the State of California

Pursuant to the Privacy Act of 1974, I hereby consent to the disclosure of the following named attorney of any record pertaining to me which appears in any U.S. government system of records:

Tania Rose

KIMI OKADA Date: January 21, 2002

TANIA ROSE Date: January 21, 2002

March 18, 2002
Request Number: 200200766

Ms. Tania Rose
Attorney At Law
2527 College Avenue
Berkeley, CA 94704

Dear Ms. Rose:

Thank you for your letter of January 21, 2001 that was received in the Department on March 8, 2002, in which you requested documents related to the death of Dr. Michael Okada.

For your information, the following are conditions which govern all Freedom of Information Act requests:

- The cut-off date for retrieving documents is the date of the requester's letter. Accordingly, no documents that originated after the date of your letter will be retrieved.

  Only existing documents are subject to the Freedom of Information Act. The Act does not provide for the creation of documents, compilation of data, preparation of lists, analyses of events, etc.

To process your request, we need the additional information requested below. We will hold your request open for ninety (90) days from the date of this letter pending receipt of the requested information.

<u>Information to Identify Records:</u> The Department of State is responsible for formulating and executing U.S. foreign policy and primarily maintains records dealing with U.S. foreign relations. The Department also maintains records about private individuals when they have traveled abroad or for those in its employ. For example, records maintained on applications for U.S. passports and visas to enter the U.S.,

records on consular assistance given to U.S. citizens abroad, employment records, etc. The Department is comprised of hundreds of offices and overseas posts, therefore requesters should be specific about the records they seek.

Provide the information described below regarding individuals about whom you have requested information:

(x) date and place of birth (include city and state)
(x) complete spellings of the name, and any other names or aliases by which the individual has been known
(x) citizenship status (U.S. citizen, permanent resident alien of the U.S., or other)

Third Party Requests:
The FOIA and Privacy Act restrict access to Federal records concerning private individuals by unauthorized third parties. In general, access to information about private individuals cannot be given to unauthorized third parties under the provisions of these laws absent the individuals written consent. The Department requires that written consent be in the form of a signed notarized statement from the individual, authorizing the Department of State to release information to the other party. **The statement should bear the original signature of the individual and original seal of the notary**, and be dated within six months of the date of the request. In lieu of notarization, the individual may declare, certify, verify or state under penalty of perjury, that the authorization attested to is correct (if inside the U.S.); declare, certify, verify or state under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct (if outside the U.S.).

For living individuals, provide written consent (see paragraph above), or tell us that none will be forthcoming. Requests can be processed without consent, but access may be severely limited as a result.

**For deceased individuals, provide proof of death, e.g., newspaper obituary or a copy of a death certificate or tell us that none will be forthcoming.**

Fee Information:
The Freedom of Information Act permits agencies to collect fees to recover the direct costs of processing requests,

unless a fee waiver has been granted or the charges fall below a certain amount. These issues are addressed below.

Your request for a fee waiver has been denied. If you wish to appeal this decision, you may write to: Ms. Kay Muse, Acting Chief, Requester Liaison Division, at the address below. Your appeal should address the points listed in the enclosed sheet entitled "Request for Fee Waiver."

You have stated your willingness to pay the fees associated with the processing of this request up to $150.00.

Based upon the information that you have provided, this request will be processed in accordance with the fee schedule designated for the following category of requesters. (See 22 C.F.R. Part 171.14 of the enclosed "Rules and Regulations".)

( ) commercial use requester
( ) educational institutions
( ) non-commercial scientific institutions
( ) representative of the news media
(x) all other requesters

The Department's search and review fees are:

| | |
|---|---|
| Administrative/Clerical | $8.00/hour |
| Professional | $17.00/hour |
| Executive | $30.00/hour |

Copy costs are assessed at the rate of $0.25 per page.

We will notify you of the costs incurred in processing your request as soon as the search and review actions have been completed.

Due to its central role in conducting U.S. foreign affairs and the significant public interest in access to its records, the Department receives requests of a number, range and complexity perhaps unparalleled among government agencies. Because of the large number of requests now pending with the Department, we anticipate that our response will be delayed.

If you have any questions with respect to the processing of this request, you may write to:

Office of IRM Programs and Services
A/RPS/IPS
U.S. Department of State, SA-2
Washington, D.C. 20522-6001

or telephone: (202) 261-8314 or fax: (202) 261-8579. Please be sure to refer to your request number in all correspondence about this case.

Sincerely,

/KAR/
Kathleen A. Reck
Requester Communication Branch

Enclosures:
As stated.

TANIA ROSE
ATTORNEY AT LAW
2527 COLLEGE AVENUE
BERKELEY, CA 94704
510.849.1900

August 22, 2002

Department of State
Margaret Grafeld
Director, Office of IRM Progrmas and Services
Fifth Floor
Wash DC 20522
Washington, DC 20505

Re: Freedom of Information/Privacy Act Request for MICHAEL OKADA-birthdate October 7, 1947, Chicago, IL

Please note that on or about January 21, 2002 I sent you a FOIA request regarding the same matter and you responded that you needed information regarding Dr. Okada's birthdate and proof of death

To Whom It May Concern::

I have been retained by U.S. citizen Kimi Okada to represent her in obtaining documents related to the death of her brother in Guatemala on or about November 20, 1976. Dr. Okada, a physician, had been in Guatemala to offer medical assistance, and was flying in a Cessna 185 plane when it crashed near Quiche, Guatemala. The plane was piloted by Father William Woods, a Maryknoll priest. The cause of the crash has not been conclusively determined. Kimi Okada is the sister of Dr. Michael Okada. Dr. Okada was twenty-nine years old at the time of his death. He resided in San Francisco, California. He was survived by his sister, Kimi, his mother, and his daughter, Mari.

Documents relating to this request include but are not limited to cable traffic, airgrams, notes, letters, memos, memoranda of conversation, reports, analyses, interviews, briefings, correspondence, diplomatic notes, or non-papers. Please advise us if Dr. Michael Okada's name is contained in other "See reference" files as well, so that we can make a decision whether to have such files searched.

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 34

Pursuant to the Freedom of Information and Privacy Act, 5 U.S.C. 552, as amended, we request disclosure of the documents described as follows:

- Information on when and how any U.S. agency or official first heard about the crash of the subject airplane;
- The questioning of Guatemalan citizens or armed forces or other security forces suspected in the plane crash;
- Any information regarding possible motives for either sabotage to the aircraft or shooting down of the aircraft by anyone;
- Any information regarding the air crash compiled by the Guatemala Human Rights Ombudsman current or past;
- The role of any Guatemelan agent or organization potentially involved in either sabotage of or shooting down of the subject aircraft;
- Any investigation of the air crash undertaken by the NTSB;
- Any investigation of the air crash undertaken by Guatemalan government officials;
- Any communication between any Guatemalan agency and any U.S. agency regarding the subject air crash;
- Any information regarding threats by anyone against the pilot of the aircraft, Father William Woods;
- Any information regarding the Guatemalan government's hostility towards foreigners doing work on behalf of indigenous peoples in Guatemala;

I request that all documents be reviewed in their entirety and that no information be omitted on the grounds of non-relevance. If you regard any of these documents as potentially exempt under the statutorily prescribed exemptions, we ask that you nonetheless exercise your legally authorized discretion to disclose them as the value of the documents outweighs any agency regulation.

Please waive all fees in connection with this request. Disclosure of the records is clearly within the public interest as the production of such documents may significantly enhance the public's knowledge both of what happened to four American citizens who lost their lives in Guatemala while there to do work to improve the lives of Guatemalans, and will enhace the public's knowledge of the activities of the Department of Defense.

Should you decline to waive the fees, please notify me immediately and describe the reasons in writing. If fees are not waived, I agree to pay for costs up to $250.00.

Please note that Ms. Okada, my client, cannot find a death certificate; however, there are voluminous records regarding the death of Dr. Okada, and I have included an excerpt from a book regarding his death.

If you have any questions about any aspect of this request, please call me at the above number. I look forward to receiving your response.

Very Truly Yours,

TANIA ROSE



United States Department of State

*Washington, D.C. 20520*

NOV 18 2002

Case Control No. 200202903
Segment: ER001

Ms. Tania Rose
2527 College Avenue
Berkeley, CA 94704

Dear Ms. Rose:

I refer to your letter dated August 22, 2002, requesting the release of certain Department of State material under the Freedom of Information Act (Title 5 USC Section 552).

A search of records under the Department's control has resulted in the retrieval of five documents that appear responsive to your request. We have determined that the five documents may be released.

Sincerely,

for Margaret P. Grafeld
Director
Office of IRM Programs and Services

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 35

TANIA ROSE
ATTORNEY AT LAW
2527 COLLEGE AVENUE
BERKELEY, CA 94704
TEL. 510.849.1900

# FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Department of State | FROM: Tania Rose |
| COMPANY: Law offices of Tania Rose | DATE: 7/1/02 |
| FAX NUMBER: 202.261.8579 | TOTAL NO. OF PAGES INCLUDING COVER: 7 TBR |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
| RE: Foia request | YOUR REFERENCE NUMBER: |

☐ URGENT ☐ FOR REVIEW ☐ PLEASE COMMENT ☐ PLEASE REPLY ☐ PLEASE RECYCLE

DEPARTMENT OF STATE
OFFICE OF IRM
PROGRAMS AND SERVICES
2002 JUL 16 A 10:30

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 36

TANIA ROSE
ATTORNEY AT LAW
2527 COLLEGE AVENUE
BERKELEY, CA 94704
TEL. 510.849.1900

Department of State
Margaret Grafeld
Director, Office of IRM Programs and Services
Fifth Floor
Wash DC 20522

BY FACSIMILE TRANSMISSION

Re: Freedom of Information/Privacy Act Request for ADRIAN PORTILLO-BARTOW
To whom it may concern:

I have been retained by U.S. citizen Adriana Portillo-Bartow to represent her in obtaining documents related to the disappearance of her father Adrian Portillo-Bartow, on or about September 11, 1981 Guatemala City, Guatemala. Mr. Portillo-Bartow, along with five other people, two of whom were daughters of the requester Adriana Portillo-Bartow, were taken from his home on or about September 11, 1981, by whom the Guatemala Historical Clarification Commission has come to believe were agents of the State of Guatemala. At the time of Mr. Portillo-Bartow's detainment, he was seventy ·ears old. His residence, from where he was taken, was located at 2nd Avenida 1-57 of ·ne 11 of Guatemala City. Also taken from the residence at the same time were five ·r women and girls, ranging in age from 23 years to eighteen months. Not one of ·has been seen or heard from since September 11, 1981.

While, because Mr. Portillo-Bartow and his relatives are disappeared, and · there are no certificates of death, I have included notations from the United ·istorical Clarification Commission Report, Annex 1, Volume 1, Adriana ·estimony, Illustrative Case #87. This report can also be accessed on the

worldwide web at. www. Watchproject.org. Upon arrival at the cite, click on "English", then "Cases".

Documents relating to this request include but are not limited to cable traffic, airgrams, notes, letters, memos, memoranda of conversation, reports, analyses, interviews, briefings, correspondence, diplomatic notes, or non-papers. Please advise us if Mr. Adrian Portillo-Bartow's name is contained in other "See reference" files as well, so that we can make a decision whether to have such files searched.

Pursuant to the Freedom of Information and Privacy Act , 5 U.S.C. 552, as amended, we request disclosure of the documents described as follows:

- Any documentation mentioning the raid on Mr. Portillo-Bartow's home;
- News articles relating to the same subject;
- Any documentation regarding the existence of a "safe-house" located at 2nd Avenida 1-57 of Zone 11, Guatemala City;
- The investigation of Mr. Portillo-Bartow's disappearance in Guatemala by either Guatemalan officials or officials of any other government;
- Any communications or reports of any nature made to U.S. officials regarding Mr. Portillo-Bartow's disappearance;
- Any communications of any kind between U.S. and Guatemalan officials or other sources of information about Mr. Portillo-Bartow.

I request that all documents be reviewed in their entirety and that no information be omitted on the grounds of non-relevance. If you regard any of these documents as potentially exempt under the statutorily prescribed exemptions, we ask that you nonetheless exercise your legally authorized discretion to disclose them as the value of the documents outweighs any agency regulation.

Please waive all fees in connection with this request. Disclosure of the records is clearly within the public interest as the production of such documents may significantly enhance the public's knowledge both of what happened in this incident, and will enhance the public's knowledge of the activities of the Department of State. The documents are not being sought for a commercial purpose; rather they are sought by Ms. Portillo-Bartow so that she can attempt to uncover what happened to her loved ones.

Furthermore, to speed disclosure of the requested materials, please release them as they become available to you, without waiting for all the documents to be processed. Given the great value of these records to the public interest, and to Ms. Portillo-Bartow who has

been awaiting for many years to discover what happened to her father and her two daughters, Glenda Corina And Rosaura Margarita, who were disappeared with her father, receiving the documents as soon as is possible as they become available to you is appreciated.

Should you decline to waive the fees, please notify me immediately and describe the reasons in writing. If fees are not waived, I agree to pay for costs up to $250.00.

If you have any questions about any aspect of this request, please call me at the above number. I look forward to receiving your response.

Very Truly Yours,

TANIA ROSE

NOTICE OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE

DATE :

At the request of Adriana Portillo-Bartow, Social Security number 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, and contact address of 3441 W. 59th pl. Chicago, IL 60629, I hereby enter my appearance as attorney for such person in all matters relating to Freedom of Information Act requests filed with U.S. Government agencies.

I am an attorney in good standing of the Bar of California and licensed to practice before all the courts of the State of California.

Pursuant to the Privacy Act of 1974, and the Freedom of Information Act, I hereby consent to the disclosure to Tania Rose of any record pertaining to Adrian Portillo Alcantara, which appears in any U.S. government system of records, and I consent to her seeking documents on my behalf:

Name of person consenting: [signature] Date: 6/20/2002

Adriana Portillo-Bartow

[signature] Date: 7/10/02

Tania Rose

On this 1st of July 2002 sworn by Irene Saldana

"OFFICIAL SEAL"
Irene Saldana
Notary Public, State of Illinois
My Commission Expires Feb. 21, 2003

Dónde Están los Niños

Where are the Children? Project

United Nations Historical Clarification Commission (CEH) Report

Annex I, Volume I, ADRIANA PORTILLO'S TESTIMONY, ILLUSTRATIVE CASE #87
THE DETENTION AND FORCED DISAPPEARANCE OF SIX MEMBERS OF THE PORTILLO FAMILY, INCLUDING THREE LITTLE GIRLS.

*"These sixteen years have been the greatest torture that could possibly exist. .. Years of agony, desperation, anguish, pain."* 1

I. Antecedents

Adrián Portillo Alcántara was born in El Salvador and left from that country into exile in 1952 because of his participation in labor unions. He began living in Guatemala and, after a time, became a Guatemalan citizen.

From his first marriage he had eight adult children—two daughters and six sons. He married again (after the death of his wife in 1972), and another daughter was born from that marriage. Several grandchildren were also part of the family group.

Adrián Portillo Alcántara made a living as an insurance sales agent, an activity he was involved in until the time of his disappearance.

His sons left their studies after the first years of secondary school and began to help their father. The daughters, on the other hand, were able to finish their secondary education.

According to one of his daughters, Adrián Portillo Alcántara had been *"a revolutionary from the time he was very young. He was very political and very aware of reality and of the great concept of social justice. He had been able to teach us a love for justice and equality for all."* 2 These ideals inspired in his children, according to their own words, *"the need to do something ."* and they felt that there was no choice but to join *"the already existing efforts to change the situation of the country ."* 3 That was how the father, along with the brothers and sisters, joined the Organization of the People in Arms (ORPA), with various levels of participation therein.

In 1978, one of Adrián Portillo's sons was recruited to serve in the Army when he was 17 years old. He stayed in the institution during almost the whole period of his obligatory service, until he deserted in April of 1981 *"because of the intensity of the armed conflict and because of what it means to be a member of the armed forces ."* 4 It seems that shortly before the end of his required 30 months of service, some revolutionary propaganda started to appear among his belongings, an occurrence which made him fear for his life and which ultimately led him to flee.

On July 25, 1981 there was a military operation in the Vista Hermosa II neighborhood in Zone 15 of the capital city that ended in the death of several men and women. The Army had detected a guerrilla safe house and had attacked it with a large number of soldiers and with heavy weaponry. The next day the newspapers alluded to the event describing some of the dead bodies and accompanying the article with photographs. One of the photos was of Carlos Alfredo Portillo Hernández, a 23 year old son of Adrián who was a guerrilla combatant. His sister states: *"When I read the newspapers I realized that the description of the one of the bodies, including the clothing, and the photograph that [accompanied the article] were of my brother ."* 5 No family member ever went to claim the body because, *"at that time, admitting that a family member was a guerrilla was tantamount to a death sentence ."* 6

Military operations of this kind, carried out to dismantle guerrilla safe houses, and the death or disappearances of the occupants of the houses were frequent during that time.7 In one case registered by the Historical Clarification Commission, state security forces detected houses that had been set up in Guatemala by Salvadoran insurgent groups. On April 17 of 1981, there was a raid in Zone 15 of the capital in which Berta Menjívar de Lobo, her five year old son Walter Ernesto Lobo Menjívar, and Luis Antonio Saracay, all Salvadoran citizens, were all disappeared. On the following night, a group of armed men broke into another safe house, this time along the highway which goes from the capital to Mexico. One of the people living in the house, a Chilean by the name of Iride del Carmen Marasso de Burgos, had left the house before the break-in to communicate with one of the disappeared people in the house in Zone 15. She was also never heard from again. At the time of her disappearance she was 8 months pregnant. The whereabouts of these victims, including the 5 year old boy and the baby about to be born has never been discovered.8

II. The Facts Related to the Incident

On Friday, September 11, 1981, around nine thirty in the morning, young armed men, dressed in civilian clothing, riding in vehicles with polarized windows and without license plates, went to some offices located on 9th Calle between Avenida Elena and First Avenida of Zone 1 of the capital. Two of them entered the offices, one carrying a rifle and the other a pistol.9 They asked for Adrián Portillo Alcántara, 70 years of age, who was visiting the offices at the time. They had a police composite drawing of him. Once he was identified, they proceeded to interrogate him, asking him, among other things, about the person who had been with him earlier that day when he was driving his truck. Portillo Alcántara answered that that person was his son, Angel Antonio, but that he had gone to the bus terminal in Zone 4 to pick up some family members who were arriving. The truth is that Angel Antonio was present at that location, and was able in this way to avoid being recognized, and at the same time be a witness to what was occurring. Once they heard his explanations, the armed men took his father out of the office at gunpoint, and forced him into a vehicle. *"I was able to see when my father was made to get into the car, and that afterwards the car headed towards the center of the city ."* 10

After witnessing his father's detention, Angel Antonio went by bus to his father's home to tell his family members who were there what had happened. When he arrived, he realized that there was a military operation going on around the block where his father lived. It was being directed by a man who appeared to be the same man who had interrogated and detained his father shortly before.

Vehicles without license plates, military jeeps and an undetermined number of armed men—some dressed in civilian clothing and others in military uniform—carrying radio transmitters, had taken possession of the house located on 2nd Avenida 1-57 of Zone 11 of Guatemala City.

*"It was a surprise when suddenly the Army came, but not just like that* [with their faces uncovered, but rather] *with ski masks they call pasamontanas, but they were definitely from the Army ."* The soldiers *"surrounded practically the whole block. They had the whole block surrounded and then other private cars arrived. According to what people were saying in those times, they were cars of the Secret Police ."* When they arrived, *"they broke down the door forcibly (. . .) This was at approximately eleven o'clock in the morning ."* One witness did not see the soldiers take people out of the house, but he noticed something unusual: *"What seemed so strange to me was that when they did that* [broke into the house], *a light blue (. . .) double-cabin pickup truck went in and (. . .) since before there used to be a garage there, they went in that way. They backed in, you could say, and (...) they were carrying something inside ,"* even though, *"no, we never found out what it was ."* The news media came about 35 or 40 minutes after the operation had begun, and it ended *"at about three thirty (. . .) or four* [in the afternoon]." Two agents were left guarding the place. 11

The raided house was the residence of Adrián Portillo Alcántara, his wife, Rosa Elena Latín de Portillo who was 25 years of age, and their daughter Alma Argentina who was only 18 months old. On the day the incident took place, two of Adrián Portillo Alcántara's young grand-daughters, Rosaura Margarita and Glenda Corina Carrillo Portillo, 10 years old and 9 years old respectively, were visiting from Jutiapa and were also in the house. In addition, Edilsa Guadalupe Alvarez Morales, 18 years of age, who was the life partner of Manuel Alfonso, another son of the owner of the house, was also present. Some neighbors told family members that during the military operation, they heard the voices of women and children crying and asking for help.12 The Security Forces, however, said that they had found the house empty. The press echoed the official version: "Aside from the [subversive material] that was seized, there were no arrests reported of people who were residing in the place of reference. When the public security

agents arrived, the house was uninhabited."13

Angel Antonio Portillo, who had arrived at his father's house when the operation was beginning, chose to walk along the sidewalk to a corner store, where he asked the store-owner what was going on. Later, "*still suffering from tremendous shock* ," he decided to leave the area, and go towards "*the house of my boss (. . ) with whom I worked selling books and who lived in Zone 5* ." 14

At about two in the afternoon, Adriana Margarita Portillo, the mother of Glenda Corina and Rosaura Margarita, arrived at her father's house with the wife of her brother, Angel Antonio, and her niece and nephew. They found the entire block surrounded by agents of the National Police, the Ambulatory Military Police, the Judicial Police and soldiers. Upon approaching the house, they were intercepted and interrogated "*by a guy who appeared to be in charge* [who] *was tall and thin, with fair skin, curly brown hair and eyes which were green or light brown. He wore round gold-colored glasses and had a thin mustache. He was dressed very well and appeared to be very well educated* ." 15 When Adriana Margarita asked about her family members, the military men at first told her that they were not there. Moments later, they told here they were there, and asked her if she wanted to go inside and see them. They did not go into the house out of fear, and they left the place quickly. From the street they were able to see that some men were washing the floor of the house with a hose and brooms.

She was never able to learn any more about the whereabouts and the fate of Adrián Portillo Alcántara, his wife and daughter-in-law, or about the three kidnapped children.

## III. After the Incident

On the following day, the newspapers found out about the operation and identified the house where Adrián Portillo had been living, publishing photographs and exact references of the address, as a "safe house" of the guerrillas. In fact, the ORPA did acknowledge to the Historical Clarification Commission that "*it was a safe house(. . .) and (. . ) compañero Portillo was in charge of that house* ." 16

Following that incident, the surviving family members of Portillo Alcántara lived in fear that they would become the next victims. One of his children moved with her family to the capital: "We were try to lose ourselves amidst all the people, so for three years we stayed in the city without saying absolutely anything to anybody."17 Later, little by little, the family members started to leave the country.

The family members looked for support outside the country from non-governmental and governmental human rights organizations. Their case was taken up by the United Nations Working Group on Forced Disappearances and, since 1993, the Presidential Commission on Human Rights (COPREDEH). On April 1, 1998 they appeared before the Public Ministry in Guatemala, and made statements about the events which occurred, asking that the disappearance of their family members be investigated.

Government authorities never acknowledged that the detention of the disappeared persons had taken place. On July 31, 1998, the Historical Clarification Commission consulted the Army about the case. The army, in a note bearing the date of August 20 of the same year, answered stating that there was no information in their files about the case. They attached the transcription of a newspaper article dated September 12, 1981.

## IV. Conclusions

The Historical Clarification Commission, having studied the facts relevant to the case, has come to believe that Adrián Portillo Alcántara was illegally detained by agents of the State, who later covered up the crime. The fact that the arresting agents did not inform the competent authorities, and the fact that they continue to cover up --even today- what they know about the whereabouts of Portillo Alcántara, constitutes a forced disappearance for which the Guatemalan State is responsible.

The existing indications and testimonies convince this Historical Clarification Commission that security forces of the State, during an operation undertaken in the residence located on 2nd Avenida 1-57 of Zone 11 of the capital, illegally detained Rosa Elena Latín de Portillo--23 years of age, Alma Argentina Portillo Latín--18 months old, Edilsa Guadalupe Alvarez Morales--18 years old, Rosaura Margarita Carrillo Portillo--10 years of age, and Glenda Corina Carrillo Portillo--9 years of age. The refusal of the arresting agents to recognize the detention of these people, and the lack of information about their whereabouts, also constitute a forced disappearance.

The forced disappearances of the people named above constitute grave violations of their human rights, and illustrate the extremes of cruelty with which the Security Forces acted within the pretext of counterinsurgency struggle, turning young children into victims of their repression, and destroying entire families through their actions.

The fact that some of the victims participated in a guerrilla organization does not represent in the least a legal or moral justification for the crimes described.

The lack of official acknowledgement of these events represents a serious obstacle to the ability to find information about the whereabouts of the victims, and certainly to national reconciliation.

## V. List of Victims

**Forced Disappearances:**
Adrian Portillo Alcántara
[illegible]
Edilsa Guadalupe Alvarez Morales
[illegible]
Rosa Elena Muñoz Latín de Portillo
[illegible]
Berta Menjívar de Lobo (Salvadoran)
Walter Ernesto Lobo Menjívar (Salvadoran child)
Luis Antonio Saracay (Salvadoran)
Carmen Marrasco de Burgos (Chilean)

1. Direct witness (mother and daughter of the victims) CEH.
2. Direct witness (family member of the victims) CEH.3. Ibid.
4. Direct witness, CEH.
5. Direct witness (family member of the victims) CEH.
6. Ibid.
7. Reference witness, CEH.
8. C 865. April, 1981. Guatemala City
9. Direct Witness (family member of the victims) CEH. According to the witness, one of the individuals was "of muscular build, dark skinned, almost mulatto, with curly hair, approximately 25 years old, and approximately 1.65 meters in height and, 150 pounds in weight. He was armed with a Galil rifle, the regulation weapon of the Guatemalan Army." The other individual was, "of thin build, light skinned, approximately 1.70 meters in height and weighing about 130 pounds, curly hair combed back, carrying a .45 or .9 mm calibre weapon.
10. Ibid.
11. Direct Witness, CEH.
12. Reference Witness, CEH.
13. *Diario el Gráfico* , September 13, 1981.
14. Ibid.
15. Direct witness (family member of victim), CEH.
16. Direct witnesses (former members of the ORPA leadership) CEH.
17. Direct witness, CEH. 1 67



United States Department of State

*Washington, D.C. 20520*

Case Control No. 200202417
Segment: ER001

NOV 22 2002

Tania Rose
Attorney at Law
2527 College Avenue
Berkeley, CA 94704

Dear Counselor Rose:

I refer to your letter dated July 12, 2002 requesting on behalf of your client Adriana Portillo-Bartow the release of certain Department of State material under the Freedom of Information Act (Title 5 USC Section 552).

A search of records under the Department's control has resulted in the retrieval of four documents that appear responsive to your request. We have determined that two may be released and two may not be released.

The material in the two documents withheld in full constitutes interagency or intra-agency communications forming part of the deliberative process. As such, it is exempt from release under subsection (b)(5) of the Freedom of Information Act.

You have the right to appeal our determination within 60 days. Appeals should be addressed to the Chairman, Appeals Review Panel, c/o Appeals Officer, A/RPS/IPS/PP/IA, SA-2, Room 6001, Department of State, Washington, D.C. 20522-6001. The letter of appeal should refer to the case control number shown above. A copy of the appeals procedures is enclosed.

Sincerely,

Melvin E. Sinn
for Margaret P. Grafeld
Director
Office of IRM Programs and Services

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 37

TANIA ROSE
ATTORNEY AT LAW
2527 COLLEGE AVENUE
BERKELEY, CA 94704
TEL. 510.849.1900

30 May 2002

Department of State
Margaret Grafeld
Director, Office of IRM Pros.
Fifth Floor
Wash, DC 20522

BY FACSIMILE TRANSMISSION

FREEDOM OF INFORMATION ACT REQUEST

To Whom It May Concern:

I have been retained by U.S. citizen Lisel Holdenried to represent her in obtaining documents related to the death of her father, Frank Holdenried, a United States citizen who was murdered in Livingston, Izabal, Guatemala on April 2, 1983. Mr. Holdenried's date of birth was December 7, 1932, and he was born in Los Angeles, California. The name on his birth certificate would be Francis Xavier Holdenried. I am legally requesting any information of any kind about Mr. Holdenreid, whether direct or indirect, or received before or after, his murder, including but not limited to the following:

- Mr. Holdenried himself;
- Mr. Holdenried's presence and activities in Guatemala;
- Any observations or surveillance activities taken by Guatemalan, U.S. or other officials with regard to Mr. Holdenried at any time, whether in Guatemala or in the United States;
- Any reports of any nature about Mr. Holdenried;
- Mr. Holdenried's work or the people he worked with or associated with in Guatemala or the United States;
- Mr. Holdenried's death in Guatemala;
- The investigation of Mr. Holdenried's death in Guatemala;
- Any communications or reports of any nature made to U.S. officials regarding Mr. Holdenried's death;
- Any follow up efforts of any kind with respect to Mr. Holdenried's murder;
- Any communications of any kind between U.S. and Guatemalan officials or other sources of information about Mr. Holdenried.

I request that all documents be reviewed in their entirety and that no information be omitted on the grounds of non-relevance. If you regard any of these documents as potentially exempt under the statutorily prescribed exemptions, we ask that you

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 38

nonetheless exercise your legally authorized discretion to disclose them as the value of
the documents outweighs any agency regulation.

Please be aware that Ms. Holdenried made a request for documents in 1995, and received
some documentation. However, some documentation was not submitted to her. Please
regard this as a renewed request.

Please waive all fees in connection with this request. Disclosure of the records is clearly
within the public interest as the production of such documents may significantly enhance
the public's knowledge both of what happened to four American citizens who lost their
lives in Guatemala while there to do work to improve the lives of Guatemalans, and will
enhace the public's knowledge of the activities of the Department of Defense.

Should you decline to waive the fees, please notify me immediately and describe the
reasons in writing. If fees are not waived, I agree to pay for costs up to $150.00.

Furthermore, to speed disclosure of the requested materials, please release them as they
becom available to you, without waiting for all documents to be processed. Given the
great value of these records to the public interest, we ask that you expedite the handling
of the request rather than routinely apply the "first in, first out" approach. Ann Kerndt's
family needs and wants to know the truth about what happened to her many years ago.

If you have any questions about any aspect of this request, please call me at the above
number. I look forward to receiving your response.

                                        Very Truly Yours,


                                        TANIA ROSE

os Angeles Times

VIEW

Ideas

# he Life and Death of a Good Samaritan

By KATHLEEN HENDRIX, *Times Staff Writer*

For a man who had spent the last ars of his life living among the orest in the slums of Guatemala y, a man whose life and good n's had been cut short by mur- ers on the Caribbean coast of atemala, the memorial service Frank Holdenried held recently a funeral chapel in Pasadena med strangely out of sync

**Murder Unsolved**

A medley of his favorites, "If er I Would Leave You," "Over Rainbow," "Amazing Grace," possible Dream," coming from hind a wood-paneled wall, sound- like soft cocktail music, bou- ts of pristine lilies, his widow a, and 12-year-old daughter, el, cheerfully greeting callers; ople meeting each other, and the low, for the first time and ex- ining how they happened to ow Frank: nothing seemed to fit.

A murder had taken place and mained unsolved. For many who ew Holdenried, especially for those who also know Guatemala, the thought persisted that it was politically motivated, and not sim- ply a criminal act; For others, Guatemala might have been on another planet and the Frank Hol- denried they memorialized might have been another person entirely.

—Blase Bonpane, a former Mary- knoll priest expelled from Guatema- la in the mid-'70s and an activist in Central American affairs ever since spoke darkly of the "diabolical lead- ership of that country," saying that "anyone working on behalf of social justice really has no right to live in Guatemala. Frank understood that."

—Bill Hughes, his old Army bud- dy from Ft. Ord days, chuckled about "watching him get involved in so many things over the years— the monastery, the dog shows."

—Bill Piers, his former business partner, joked that the only thing they agreed about when running a restaurant together in Saugus was "how to pump out the cesspool."

—Jim Bigler, his lawyer for the last 10 years, mused how he had followed Frank in his travels around the world and "always had the feeling he missed his calling when he left the seminary."

—The Rev. Gerry Phelps, a Methodist minister from Bakersfield and self-described "old activist" who had specialized in Latin Ameri- can economics, revealed her initial consternation upon meeting Hol- denried, who struck her as conser- vative and apolitical. Those impres- sions notwithstanding, she un- abashedly took up a collection at the service to continue the work Hol- denried had started with his Helpers of the Poor organization.

**Kept Her Composure**

—Lisel, his daughter, pretty in her ruffled blue dress and proud of her father, bravely kept her compo- sure as she told the gathering, "I think he's right along there with Martin Luther King and all those martyrs. We didn't get to spend as

Please see MARTYR, Page 10

Frank Holdenried, left photo, was murdered in Guatemala, among the poor in Guatemala City; Holdenried shown at

Wednesday, May 4, 1983/Pa

PERRI GLADSTONE / Los Angeles T

widow Fara and daughter Lisel
morial service held in Pasade



NOTICE OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE

DATE:

At the request of Lisel Holdenried, Social Security number 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, and contact address of 451 Ludlow Ave #302 Cincinnati, OH 45220

I hereby enter my appearance as attorney for such person in all matters relating to Freedom of Information Act requests filed with U.S. Government agencies.

I am an attorney in good standing of the Bar of California and licensed to practice before all the courts of the State of California.

Pursuant to the Privacy Act of 1974, and the Freedom of Information Act, I hereby consent to the disclosure to Tania Rose of any record pertaining to Frank Holdenried which appears in any U.S government system of records, and I consent to her seeking documents on my behalf

Name of person consenting:

[signature]
LISEL HOLDENRIED
[signature]

Date 4/18/02

Lisel A. Holdenried appeared before me this 18th day of April, 2002 to swear to the above

[signature]

[signature]
TANIA ROSE

Date 5/30/02

NOTARY PUBLIC STATE OF OHIO

JEREMY FULLER
Notary Public, State of Ohio
My Commission Expires
July 10, 2006

United States Department of State

*Washington, D.C. 20520*

Case Control No. 199602469

JUL 29 1998

Mr. Benjamin Cox
Student Attorney
Center for Legal and Social Justice
St. Mary's University School of Law
2507 NW 36th Street
San Antonio, Texas 78228

Dear Mr. Cox:

A Department of State Appeals Review Panel, whose members are listed in an enclosure to this letter, has considered your appeal of October 27, 1997 on behalf of Lisel Holtenried, for the release of thirteen documents withheld in full and forty-one withheld in part by the Department in the course of responding to your request under the Freedom of Information Act.

The Panel has carefully considered the grounds on which you based your appeal. It has decided to release in their entirety seven of the documents initially withheld in full or in part. A List of Released Documents is enclosed, along with the released material.

The Panel has determined that one document initially withheld in full may be released with excisions. Additional portions of twelve documents previously withheld in part are now being released. A List of Documents Withheld in Part is enclosed, along with the released material.

The Panel has determined that the previously withheld portions of twenty-four documents must continue to be withheld. A List of Documents With Unchanged Excisions is enclosed.

The Panel has determined that nine documents must continue to be withheld in their entirety. A separate List of Documents Withheld in Full is enclosed.

RECEIVED
AUG 03 1998
BY:__________

Document number U185, originally denied in full, is a duplicate of document U164 and has therefore been withdrawn from the case.

The information in six documents withheld in full and in the excised portions of 32 other documents is properly classified in accordance with Executive Order 12958 (National Security Information) despite the passage of time. Its release reasonably could be expected to cause damage or serious damage to the national security of the United States. It is therefore exempt from disclosure under subsection (b)(1) of the Freedom of Information Act, 5 USC Section 552(b)(1).

Exemption (b)(3) of the Freedom of Information Act, 5 USC 552(b)(3), applies to those records that are specifically exempted from disclosure by statute. The information in two documents withheld in full and in the excised portions of one document pertains to the issuance or denial of a visa or to a permit to enter the United States and is considered confidential under Section 222(f) of the Immigration and Nationality Act, 8 USC Section 1202(f).

The information in one document withheld in full and in the excised portions of six other documents is of such a nature that its release would constitute a clearly unwarranted invasion of personal privacy. It is therefore exempt from disclosure under subsection (b)(6) of the Freedom of Information Act, 5 USC Section 552(b)(6).

The material in two of the documents withheld in full and in the excised portions of one of the documents released in part is information compiled for law enforcement purposes which, if produced, could reasonably be expected to interfere with enforcement proceedings. As such, it is exempt from release under subsection (b)(7)(A) of the Freedom of Information Act, 5 USC Section 552(b)(7)(A).

The material in the excised portions of one of the documents released in part is information compiled for law enforcement purposes which, if produced, could reasonably be expected to disclose the identity of a confidential source. As such, it is exempt from release under subsection (b)(7)(D) of the Freedom of Information Act, 5 USC Section 552(b)(7)(D).

CASE NO:199602469 - FR

LIST OF RELEASED DOCUMENTS

| SEGMENT | DOC NO | EXEMPTION CATEGORIES |
|---|---|---|
| USA | 000017 | |
| USA | 000038 | |
| USA | 000040 | |
| USA | 000041 | |
| USA | 000141 | |
| USA | 000164 | |
| USA | 000166 | |

TOTAL NUMBER OF DOCUMENTS:7

Assistant Secretary for Public Affairs
Appeals Office, IPP/PP/IA
Room 1512
Department of State
Washington, DC 20520-1512

→ Also sent to USAISC... They said not their decision, see DOS.

Re: Freedom of Information Act Appeal
Case Control No. 9602469

Assistant Secretary for Public Affairs:

This is an administrative Appeal under the Freedom of Information Act of a request for information made by Lisel Holdenried on September 9, 1995 This appeal is being made on behalf of Ms. Holdenried by the Center for Legal and Social Justice at St. Mary's University Law School. The response being appealed is identified by Case Control No 9602469 (copy enclosed; hereinafter 'response')

Ms. Holdenried appeals the denials contained in the response to the extent they constitute denials made by the Department of State (DOS), and to the extent they constitute denials made by the Department of the Army (DOA) to identical requests made to each agency The response addresses documents referred to DOS by DOA, but indicates that any appeal should be made to DOS. Ms. Holdenried's original requests both sought "any and all information referring to, or pertaining to, [her] deceased father, Frank Xavier Holdenried." (copy enclosed; hereinafter 'request') Her request was first acknowledged by DOS in a September 25, 1995 letter from Rosemary Melendy, Chief Initial Processing and Control Branch Office of Freedom of Information, Privacy and Classification Review. That acknowledgment identified Ms. Holdenried's request as Number 9503944. (copy enclosed; hereinafter 'acknowledgment')

We appeal the DOS response to the Ms. Holdenried's request because it is evident that the DOS has not conducted a comprehensive search of its own records. The response indicates that review was made only of DOS-originating documents which were referred back to DOS by the Department of the Army(DOA). We expect DOS to make a reasonable search for all relevant records in its possession, not only those documents referred to it by DOA.

In regards to the records which were reviewed and enumerated in the response, we appeal every decision to withhold in full 13 documents and to excise portions of 35 documents The Department has not provided sufficient information to support the various exemptions claimed, and has failed to describe the 13 documents withheld in full, and how each claimed exemption applies to those documents and to excisions made to 35 documents released in part. We expect DOS to provide functional descriptions of requested documents, and to provide more complete explanations as to why the materials may not be released pursuant to claimed exemptions. We further expect DOS to indicate why material qualifying under the exemptions claimed cannot be redacted, allowing at least partial release of the documents withheld in full.

In light of the concerns of Ms. Holdenried and the public in attaining the release of these records, changed circumstances in Guatemala, and explicit policy goals of the Executive Department, we cannot accept that 13 documents related to the life and death of Frank Xavier Holdenried can be withheld in full under the exemptions claimed almost 15 years after his death. President Clinton has made a clear commitment to clearing the air over human rights violations and murders of U.S. citizens committed in Guatemala during that country's late civil war He has also made a commitment to releasing all possible evidence of American involvement or lack thereof in those abuses and murders. These commitments are evidenced by the Intelligence Oversight Board Guatemala Review and President Clinton's further ordering of review and release of pre-1984 records related to Guatemalan abuse cases

The President, by issuing Executive Order 12958, has clearly altered the standards for release of classified documents, and the Executive Department has set a goal of increasing government openness, as evidenced by, for instance, the President's and Attorney General's October 4, 1993 Memorand[a] for Heads of Departments and

Agencies concerning administration of the FOIA. Those memoranda called for higher withholding standards and encouraged greater use of agency discretion to disseminate material properly falling in exemptable categories.

In addition to appealing the blanket application of the exemptions claimed in the response because of recent changes of Administrative policy regarding FOIA requests and materials related to Guatemala, we specifically appeal the decisions taken to withhold documents under the following exemptions.

(b)(1) National Security exemption

The response states that six documents were withheld in full because they are "currently and properly classified under Executive Order 12958, section 1.5 (b), foreign government information, *or* section 1.5 (d), foreign relations or foreign activities of the United States, including confidential sources."(emphasis added) We appeal this decision because it fails to explain which of the six documents were withheld pursuant to which of the four possible reasons for classification cited; the decision fails even to parse the documents according to the two distinct provisions cited. The decision also fails to explain how the Department of State concludes that release of these documents could foreseeably harm national security interests, especially given that Frank Holdenried was murdered almost 15 years ago. It also fails to explain why properly made excisions could not address any such foreseeable harm.

It is unclear whether the six documents are "currently and properly classified" because they were originally classified in preparation of the response, were derivatively classified based on classification decisions made by DOS while the DOA was in possession of the documents, or if the referred documents were classified prior to their possession by the DOW We appeal the decision because it fails to explain when, how, and why the documents were "properly classified." Without such information, Ms. Holdenried is unable to determine when she may make a request for classification review under Executive Order 12598. Neither does the decision indicate what declassification date or event has been assessed in relation to each document, as required by Executive Order 12958.

We request review of the decision to determine whether the 6 documents are in fact currently and properly classified under Executive Order 12958, keeping in mind that order's admonition that if there is "any significant doubt about the need to classify information, it should not be classified."

Section 3.2 of the Executive Order explicitly authorizes agencies to declassify information otherwise meeting the classification standards when the public interest in disclosure of the information outweighs the continued need to protect the information. Public interest in Guatemalan human rights violations, including the murders of U.S. citizens, is great. Both the President and the DOS have asserted interest in disclosure of information evidencing concerning U.S. knowledge of, involvement or lack of involvement in, human rights violations committed during Guatemala's civil war. That civil war has ended, and the Executive Order specifically recognizes that "significant changes" of this sort alter U.S. security needs in relation to disclosure of information. Considering these stated policies, and the FOIA requirement that reasonably segregable material be disclosed, we question whether DOS can withhold in full six documents concerning the death of her father in Guatemala almost 15 years ago.

Even if the materials can properly be categorized as classified under the Executive Order, that only means that the material is not subject to mandatory disclosure under the FOIA. Considering the personal concern of Lisel, public interest in human rights violations and the deaths of American missionaries and human rights workers during the Guatemalan civil war, and pronouncements of Presidential and DOS policy concerning U.S. government-held information about those abuses and deaths, the DOS can and should use its discretion to release relevant materials.

Even if DOS is unwilling to release all of the materials, surely the sensitive portions of the documents can be excised, allowing Ms. Holdenried and the public to get the fullest possible picture of the events of Frank Holdenried's life and death in Guatemala. We ask that the materials withheld in full be reviewed for release with appropriate excisions, consistent with FOIA's segregable portions rule.

(b)(3) Statutory exemption

The response claims that material in three of the documents withheld in full "is specifically exempted from disclosure by statute. to wit. the Immigration and Nationality Act . 8 USC Section 1202 (f)." The response does not indicate whether the material is exempt under (b)(3)(A) or under (b)(3)(B). We ask that DOS review the documents to determine whether all of the material in those documents is in fact covered by one or the other provisions of (b)(3), and to determine if appropriate excisions can be made allowing the release of such material as is not exempt under 1202 (f). We also ask that the documents be more particularly identified so that Ms. Holdenried can determine if she has already had possession of the documents, in which case such materials may not be covered by USC 1202 (f).

(b)(5) Deliberative Process exemption

The response claims that material in three of the documents withheld in full "constitutes interagency or intra-agency communications forming part of the deliberative process" and is therefore exempt under (b)(5).

We question whether documents relating to Frank Holdenried's murder 15 years ago can properly be considered as antecedent to the adoption of an agency policy or that it makes recommendations or expresses opinions on legal or policy matters and therefor qualifies as privileged under the deliberative process exemption. It seems unlikely that the release of any such documents might diminish frank discussions on matters of policy, prematurely disclose proposed policies before final adoption, or result in public confusion as reasons and rationales which were not the ultimate grounds for an agency action.

Even if the materials do qualify as part of the deliberative process, we ask that DOS reconsider discretionary release of the documents e materials to the extent that their release would cause no foreseeable harm to particular agency deliberation processes, pursuant to the President and Attorney General's Memoranda. We also ask that DOS review whether proper excisions of any exempt material withheld will allow the release in part of these three documents, in accord with the segregable portions rule of the FOIA.

(b)(6) Privacy exemption

The response claims that disclosure of any portion of one document would "constitute a clearly unwarranted invasion of personal privacy." We appeal the blanket invocation of exemption (b)(6) which fails even to indicate whether the material being withheld constitutes personnel files, medical files, or 'similar' files within the language of the exemption. We further question whether the entire contents of the file might be identifiable to any specific individual, even when properly excised information is excluded. Considering the great public interest in any possible U.S. involvement in human rights abuses and murders of U.S. citizens during the Guatemalan civil war, the express concerns of both Congress and the Executive Department in revealing all evidence of any U.S. involvement or lack thereof, and the extensive releases of materials relevant to those concerns, it is unquestionable that there is a high degree of public interest in any materials related to the murder of Frank Holdenried. Various branches of the Executive Department have already released a great deal of information which could properly be characterized as "invasion[s] of personal privacy," but which releases were not "clearly unwarranted" due to the degree of public and governmental concern. We ask that the DOS reconsider the release of the withheld document because we believe that public interest in attaining its release outweighs any 15 year old privacy interests which DOS believes might still exist.

We also remind the DOS that the subject of the original FOIA request being denied under this exemption, Frank Xavier Holdenried, is deceased. Ms. Holdenried realizes that some information released pursuant to her request may reveal graphic details concerning the manner of her father's death, and in fact seeks any such information which may prove helpful in putting to rest the mysterious circumstances of his murder.

If the document withheld in full is not a medical or personnel file, it would seem unlikely that the entire document must be withheld. We ask that DOS reconsider whether the withheld document might properly be released with any necessary excisions.

(b)(7)(A), (D), and (F) Law Enforcement information exemptions:

The response claims that one document withheld in full is "information compiled for law enforcement purposes which, if produced, could reasonably be expected to interfere with enforcement proceedings." The response fails to indicate how the release of the withheld document might relate to concrete prospective law enforcement proceedings, and how it might reasonably be expected to interfere with any such proceedings. Ms. Holdenried is unaware of any on-going investigation, either by United States or Guatemalan authorities, into the death of her father almost 15 years ago, and it seems unlikely that any law-enforcement manuals or similar material used for general law-enforcement purposes could be both relevant to her original request and still in current use. Without further explanation, we can see no way an entire document relevant to the FOIA request could be withheld based on this exemption.

The response claims that release of portions of one of the documents may not be released because if produced "could reasonably be expected to disclose the identity of a confidential source." Ms. Holdenried has not determined which excision has been made under this exemption. We ask for further identification of the excision made so that Ms. Holdenried may determine whether the excision appears appropriate to the purpose of the exemption.

The response claims that one of the documents withheld in full is exempt because it "is information compiled for law enforcement purposes which, if produced, could reasonably be expected to endanger the life or physical safety of an individual." While Ms. Holdenried does not seek the disclosure of information which could reasonably endanger the life or safety of any individual, we question whether material related to Frank Holdenried's death could contain any such information. We also question whether an entire document must be withheld in order to prevent such harm. We request review of this document to determine whether a release with excisions could protect the individual at risk while furthering the requirements of the FOIA, and a more complete explanation of why the DOS considers that such information could reasonably threaten anyone's life or personal safety.

We again ask that DOS address the general concerns set out above our particular complaints. We ask that DOS reconsider the exemptions made, review the withholdings in full for possible release in part pursuant to the segregable portions rule, and provide descriptions of the materials withheld with more complete explanations of the reasons for their withholding.

Sincerely,

Benjamin Cox
Center for Legal and Social Justice at
St. Mary's University School of Law
2507 NW 36th Street
San Antonio, TX 78228
(210) 431-5702



United States Department of State

*Washington, D.C. 20520*

MAR 28 2003

Case Control No. 200201872
ER Segment

Tania Rose, Esq.
2527 College Avenue
Berkeley, CA 94704

Dear Ms. Rose:

I refer to your letter dated May 30, 2002, requesting the release of certain Department of State material under the Freedom of Information Act (Title 5 USC Section 552) on behalf of your client, Lisel A. Holdenried.

We initiated a search in the following record systems: the Central Foreign Policy Records (the principal record system of the Department of State), the Bureau of Western Hemisphere Affairs, the Office of Passport Services, the Office of Overseas Citizens Services, and the American Embassy in Guatemala City. The search in the Central Foreign Policy Records has been completed, resulting in the retrieval of 35 documents that appear responsive to your request. The search in the other files is continuing and we will let you know when it is concluded.

After reviewing the documents we retrieved, we determined that all 35 may be released.

Please note that a number of these released documents were previously released to Ms. Holdenried in her Freedom of Information Case No. 199503944. Also, other documents responsive to your request can be found in the Guatemala collection at our website, www.state.gov.

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 39

If you have any questions with respect to the processing of your request, you may write to the Office of IRM Programs and Services, SA-2, Department of State, Washington, D.C. 20522-6001. Please be sure to refer to the case control number shown above in all correspondence about this case.

Sincerely,

for

Margaret P. Grafeld
Director
Office of IRM Programs and Services

Enclosures:
As stated.

DEPARTMENT OF STATE
FPC/RD

JAN 11 10 59 AM '96

9600061

Hudson Catholic High School
790 Bergen Avenue
Jersey City, New Jersey 07306
Telephone(s) day-201-332-5970
eve-201-332-0971

Mr. Frank Machak
Director of FOI Privacy and Classification Review
Department of State
Room 1512
2201 C Street, NW
Washington, DC 20520-1512

Re: Freedom of Information Act Request

Dear Mr. Machak:

This is a request under the Freedom of Information Act as amended (5 U.S.C. Section 552) in conjunction with the Privacy Act (5 U.S.C. Section552a).

I wish to obtain copies of any and all documents referring to Brother James A. Miller FSC (Hermano Santiago Miller FSC) or retrievable in a search for files listed under his name. I also wish to obtain copies of all documents pertaining to the Christian Brothers (Hermanos De La Salle) in Guatemala from 1981 and 1982; I was working as an administrator/teacher for this religious order when my co-worker Brother James A. Miller FSC was assassinated on February 13, 1982 by three armed, masked men. Please advise me if his name or the name of other Christian Brothers (Hermanos De La Salle) are contained in other "See Reference" files as well, so that I can make a decision whether to have any such files searched.

These documents should include, but no be limited to:

1. documents that refer or relate to the killing of Brother James A. Miller FSC on February 13, 1982 in the city of Huehuetenango, Guatemala or any subsequent investigation or inquiry regarding this event.

2. documents that refer to threats made by members of the G-2 death squad against the Christian Brothers (Hermanos De La Salle) in February of 1982

3. documents that refer or relate to my visits to Ambassador Frederick Chapin in late February/1982 and August/1982

In order to assist your search for these files, I am offering you the following information about details of the life of Brother James A. Miller FSC

-Brother Theodore Drahman FSC (biographer of Brother James A. Miller)
Christian Brothers' Conference
4351 Garden City Drive Suite 200
Landover, Maryland 20785
Tel. 800-433-7593

-Brother Thomas Johnson FSC (provincial of the District to which Brother James A. Miller FSC belonged)
Christian Brothers' Provincialate
200 De La Salle Drive
Romeoville, Il. 60441-1899
Tel. 815-838-8903

-Brother Paul Joslin FSC (co-worker of Brother James A. Miller at the time of his death in Huehuetenango, Guatemala on February 13, 1982)
790 Bergen Avenue
Jersey City, New Jersey 07306
Telephone(s) day - 201-332-5970

Since November, 1993 I have worked with "Coalition Missing" an organization of US survivors of state and right wing violence in Guatemala whose members include Jennifer Harbury, Dianna Ortiz, Meredith Larson, Josh Zinner and the family of Nick Blake). I presented information on the case of Brother James A. Miller at a congressional briefing sponsored by Congresswoman Connie Morella in March 1995.

If you determine that any document responsive to this request is exempt from disclosure, I expect that I will be provided with "[a]ny reasonable segregableportion of [the] record...after deletion of the portions which are exempt," 5 U.S.C. {} 552(b), and informed of the grounds for the exemption(s) claimed for each page or passage. For documents withheld in

their entirety, please inform me of the date and the number of pages in each document. If any records responsive to this request are stamped classified, please treat this as a request that such records be declassified. I request that excised material be "blacked out" rather that "white out" or "cut out". If you determine that some portion of the requested material are exempt, I will expect, as the Act provides, that you will list the address and office where such an appeal can be sent.

I trust that the Department of State will provide full and prompt disclosure of the materials sought by this request. Given the Guatemala-CIA revelations that emerged this past spring, the public has a great interest in understanding what knowledge the United States government has concerning human rights abuses committed against US citizens in Guatemala, such as Brother James A. Miller, and what actions the United States government has taken in response to such human rights abuses. As you know, the amended FOIA requires you to reduce or waive search and/or copying fees when release of the requested information would be "in the public interest" [5 U.S.C. {} 552 (a)(4)(iii) and 28 C.F.R. {} 16.10(d). I believe that this request plainly fits that category, and I therefore ask that you waive such fees. If this request is processed under the Privacy Act, however, I expect, as that Act provides, that no fees will be charged for locating requested files.

If you have any questions regarding this request, please call me at the above number(s).

As provided in the Freedom of Information Act, I will expect to receive a reply within then working days of its receipt, as required by U.S.C. {} 552(6)(A)(i). I am aware that I have the right to make an administrative appeal should any part of this request for records be denied.

Sincerely,

Brother Paul Joslin FSC

Brother Paul Joslin FSC
SSN #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
date of birth: September 3, 1946

FRANK BECHT
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Oct. 26, 1999

Frank Becht
12/19/95



United States Department of State

*Washington, D.C. 20520*

Mr. Paul Joslin
Brothers of the Christian Schools
790 Bergen Avenue
Jersey City, New Jersey 07306

JAN 19 1996

Request Number 9600061

Dear Sir/Madam:

Thank you for your letter of undated in which you requested:

documents pertaining to James A. Miller

The following information may explain certain boundaries of the Department's search for documents in response to Freedom of Information Act requests.

The cut-off date for retrieving documents is the date of the requester's letter. Accordingly, no documents which originated after the date of your letter will be retrieved.

Only existing documents are subject to the Freedom of Information Act. The Act does not provide for the creation of documents, compilation of data, preparation of lists, analyses of events, etc.

[ ] We have begun to process your request based upon the information provided in your letter. As soon as responsive material has been retrieved and reviewed, we will notify you.

[xx] Before we can proceed, we need the additional information requested in the marked paragraph(s) in Section A and/or B. (We attempted to reach you by phone on ________ to discuss the need for this information). We will hold your request open for ninety (90) days from the date of this letter pending receipt of the requested information.

[xx] Please review the fee information provided in Section C.

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 41

[ ] We cannot proceed with the processing of your request for the reason marked below.

[ ] The Material that you seek pre-dates 1967. Generally, Department of State documents which fall within this time period are in the custody of the National Archives and Records Administration. To request access to documents responsive to your request, please write to: Clarence F. Lyons, Jr., Chief; Archives II Reference Branch; National Archives at College Park; 8601 Adelphi Road; College Park, MD 20740-6001.

[ ] The material that you requested appears to have been originated by another agency. Please contact the Freedom of Information Staff of that agency:

________________________________________

________________________________________

________________________________________

________________________________________

[xxx] SECTION A

Please:

[ ] Narrow/Specify time frame.

[ ] Identify specific subject matter, country, person or organization.

[ ] Specify a particular event, policy, or circumstance, rather than the effect a certain attitude or event had on another event.

[x] Please let us know if you are willing to pay the fees which will be incurred in the processing of your request. You may set a limit on the maximum amount that you wish to pay.

[xxx] SECTION C

The Freedom of Information Act permits Federal agencies to collect fees to recover the costs of processing requests, unless a fee waiver has been granted or the charges fall below a certain amount. The following marked paragraphs address these issues.

[ ] Your request for a fee waiver has been granted.

[ ] Your request for a fee waiver has been denied. Should you wish to appeal this decision, you may write to: Peter Sheils, Chief, Requests Management Division, at the address indicated below. Your appeal should address the points listed in the enclosed sheet entitled "Requests for Fee Waivers."

[ ] You have stated your willingness to pay the fees associated with the processing of this request.

[xxx] Based upon the information that you have provided, this request will be processed in accordance with the fee schedule designated for the following category of requesters. (See Subsection 171.14 of the enclosed Rules and Regulations).

[ ] commercial use requesters
[ ] educational institutions
[ ] non-commercial scientific institutions
[ ] representatives of the news media
[xxx] all other requesters

The Department's search and review fees are:

| | |
|---|---|
| Administrative/Clerical | $8.00/hour |
| Professional | $17.00/hour |
| Executive | $30.00/hour |

[xx] You have indicated your inclusion in a category different from the one above. Please provide the information asked on the attached sheet entitled " Requester Categories" to substantiate your inclusion in a particular category of requester.

[xxx] Before I can make a decision about your request for a fee waiver, I will need additional information as noted in the attached sheet entitled "Requests for Fee Waivers."

[ ] Your request for a fee waiver is being reviewed. We will notify you as soon as a decision has been made.

[4 ]

[ ] The Material that you seek pre-dates 1964. Generally, Department of State documents which fall within this time period are in the custody of the National Archives and Records Administration. To request access to documents responsive to your request, please write to: Clarence F. Lyons, Jr., Chief; Archives II Reference Branch; National Archives at College Park; 8601 Adelphi Road; College Park, MD 20740-6001.

[ ] The material that you requested appears to have been originated by another agency. Please contact the Freedom of Information staff of that agency at the following address:

________________________________________

________________________________________

________________________________________

________________________________________

If you have any questions regarding your request, you may write to the Office of Freedom of Information, Privacy and Classification Review, Room 1512, Department of State, 2201 C Street, N.W., Washington, D.C. 20520-1512, or telephone: (202) 647-6070. Please be sure to refer to your request number in all correspondence pertaining to this request.

Sincerely,

Lynn C. Dubose for

Rosemary Melendy, Chief
Initial Processing and Control Branch
Office of Freedom of Information,
Privacy and Classification Review

Enclosure(s):
xx Rules and Regulations
xx Request for Fee Waivers
xx Requester Categories



United States Department of State

*Washington, D.C. 20520*

OCT 22 1998

Brother Paul Joslin FSC
Hudson Catholic High School
790 Bergen Ave.
Jersey City, NJ 07306

RE: Freedom of Information Act Request No. 199600061
Information concerning the killing of Brother James A. Miller FSC on February 13, 1982 in Guatemala.

Dear Brother Joslin:

Pursuant to your request, this office initiated searches of the following record systems: the Central Foreign Policy Records (the principal record system of the Department of State); the Bureau of Inter-American Affairs and its retired files; and the Bureau of Democracy, Human Rights and Labor and its retired files.

The search of the Central Foreign Policy Records has been completed and has resulted in the retrieval of thirty-six documents that are responsive to your request. The Division of Classification Review has reviewed these documents. The results of that review, together with an explanation of your right to appeal, are set forth in the accompanying letter (with enclosures) of Acting Director, Margaret P. Grafeld.

The searches of the records of the Bureau of Inter-American Affairs and the Bureau of Democracy, Human Rights and Labor have been completed and have resulted in the retrieval of no documents that are responsive to your request.

Still in progress are the searches of the retired files of the Bureau of Inter-American Affairs and the Bureau of Democracy, Human Rights and Labor.

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 42

Additional information will be provided as it becomes available.

If you have any questions with respect to the processing of your request, you may write to the Office of IRM Programs and Services, Room 1512, Department of State, 2201 C Street, N.W., Washington, D.C. 20520-1512, or telephone: (202) 647-6070. Please be sure to refer to your request number in all correspondence about this case.

Your continuing cooperation is appreciated.

Sincerely,

Jeanne M. Sawka
Office of IRM Programs and Services

Enclosures:
As Stated.



United States Department of State

*Washington, D.C. 20520*

OCT 22 1998

Case Control No. 9600061

Brother Paul Joslin FSC
Hudson Catholic High School
790 Bergen Ave.
Jersey City, NJ 07306

Dear Brother Joslin:

I refer to your letter of October 1996, requesting the release of certain Department of State material under the Freedom of Information Act (Title 5 USC Section 552).

A search of files under the Department's control has resulted in the retrieval of 36 documents which appear relevant to your request. We have determined that 29 may be released and seven may be released with excisions.

The material in the excised portions of the seven documents released in part is of such a nature that its release would constitute a clearly unwarranted invasion of personal privacy. As such, it is exempt from release under subsection (b)(6) of the Freedom of Information Act.

In the case of a document released in part, all non-exempt material that is reasonably segregable from the exempt material has been released.

Please note that in one document one or more pages are missing or are illegible and cannot be found or replaced.

With respect to material we have withheld under the Freedom of Information Act, you have the right to appeal our determination within 60 days. Appeals should be addressed to the Assistant Secretary for Public Affairs, c/o Appeals Office, IPS/PP/IA, Room 1512, Department of State, Washington, D. C. 20520-1512. The letter of appeal should refer to the case control number shown above.

Sincerely,

Margaret P. Grafeld
Acting Director
Office of IRM Programs and Services

December 17, 1998

Assistant Secretary for Public Affairs
c/o Appeals Office
IPS/PP/IA
Room 1512
Department of State
Washington, D.C. 20520-1512

**Re: Freedom of Information Act Appeal for James Miller/Paul Joslin
Case Control No. 9600061**

Dear Sir/Madam:

This is an appeal from your letter dated October 22, 1998 in which you release seven documents with excisions in response to our FOIA request filed in October 1996.

You claim that these documents are exempt from disclosure as their release would constitute a clearly unwarranted invasion of personal privacy. Please identify with specificity how and why disclosure would constitute such an invasion and clarify why disclosure would be harmful.

We also ask that you reassess your decision to withhold this information, keeping in mind that FOIA exemptions are discretionary, rather than mandatory. Attorney General Janet Reno has urged government officials to favor discretionary release of documents rather than withholding, and has declared that the Justice Department will no longer routinely defend agency withholding without due justification. (October 4, 1994 Janet Reno memorandum). President Clinton has likewise directed the Executive Branch to renew its commitment to the Freedom of Information Act and to its "underlying principles of government openness." (October 4, 1994 memorandum).

As you review your decision, we ask that you take into account the particular circumstances of this case -- that Brother Miller was murdered while doing mission work in Guatemala. He was the innocent victim of a violent crime, and his order "The Christian Brother" only seeks to know as much as the U.S. government about the circumstances surrounding his death. As FOIA exemptions are discretionary, it is certainly within your power to choose compassion and release these documents due to the sympathetic nature of this case.

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 43

In light of the above, please review your decision to excise certain information from the documentation released on October 22, 1998.  We anticipate your reply within the 20 working day time limit.  Thank you for your courtesies.

Very truly yours,

Linette Tobin
Law Office of David Goren
8600 Second Avenue
Silver Spring, MD 20910



United States Department of State

*Washington, D.C. 20520*

December 30,1998

Ms. Linette Tobin
Law Office of David Goren
8600 Second Ave.
Silver Spring, MD 20910

Re: Freedom of Information Request No.9600061

Dear Ms. Tobin:

This is to inform you that your letter of December 17, 1998, appealing Freedom of Information Case No.9600061 has been received by the Chairman of the Department's Appeals Review Panel. Should you have any questions concerning its status, please write to:

The Appeals Officer
RPS/IPS/PP/IA
U.S. Department of State
Washington, D.C. 20520-1512

Sincerely,

Charles E. Lahiguera
Appeals Officer
Office of IRM Programs and Services

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 44

JUL 22 1999
Case Control No. 199600061

Brother Paul Joslin
Hudson Catholic High School
790 Bergen Avenue
Jersey City, New Jersey 07306

Dear Brother Joslin:

I refer to your letter of December 19,1995, requesting the
release of certain Department of State material under the
Freedom of Information Act (Title 5 USC Section 552).

A search of files under the Department's control has
resulted in the retrieval of three documents  which appear
relevant to your request.  We have determined that these may
be released. Because of privacy considerations, they are
being released only to you at this time.

                    Sincerely,

                    Margaret P. Grafeld
                    Director
                    Office of IRM Programs and Services

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 45



United States Department of State

*Washington, D.C. 20520*

JUL 22 1999

Mr. Paul Joslin
Brothers of the Christian Schools
790 Bergen Avenue
Jersey City, New Jersey 07306

RE: Freedom of Information Act Request No. 9600061
Information pertaining to Brother James A. Miller

Dear Mr. Joslin:

Reference is made to our letter dated October 22, 1998 in which you were given the status of your request.

The search of the retired records of the Bureau of Democracy, Human Rights and Labor have been completed and has resulted in the retrieval of three documents that are responsive to your request. The Division of Classification Review has reviewed the documents, and the results of that review are set forth in the accompanying letter (with enclosures) of Director, Margaret P. Grafeld.

The search of the retired files of the Bureau of Western Hemisphere Affairs (formerly the Bureau of Inter-American Affairs) has been completed. Please be advised that material which may have been responsive to your request have been destroyed pursuant to applicable disposition schedules, and therefore is no longer available.

Please be advised that information pertaining to your request is available on microfiche. The fiche is enclosed to further assist you in your search for responsive information. The cost of the fiche is $1.00. Please make your check or money order payable to the Treasury of the United States, and mail it to the Office of IRM Programs and Services at the new address: U.S. Department of State, A/RPS/IPS/CR/IR, SA-2, Room 6001, Washington, D.C. 20522-6001.

Accordingly, the Information Response Branch has completed the processing of your request.

The Freedom of Information Act permits Federal agencies to recover the direct cost of searching for and duplicating records that have been requested for non-commercial use. However, your request for a fee waiver has been granted, and your request has been processed without charge to you.

Your appeal in this case will be addressed in separate correspondence.

If you have any questions with respect to the processing of your request, you may write to the Office of IRM Programs and Services at the above-referenced address, or telephone: (202) 261-8314. Please be sure to refer to your request number in all correspondence about this case.

We hope the Department has been of service to you in this matter.

Sincerely,

Wilma M. Manning
Office of IRM Programs and Services

Enclosures:
As stated.

United States Department of State

Washington, D.C. 20520

Case Control No. 199600061

SEP 15 1999

Ms. Linette Tobin
Law Office of David Goren
8600 Second Ave.
Silver Spring, MD 20910

Dear Ms. Linette:

A Department of State Appeals Review Panel, whose members are listed in an enclosure to this letter, has considered your appeal of December 17, 1998, for the release of seven documents withheld in part by the Department in the course of responding to your request under the Freedom of Information Act.

The Panel has carefully considered the grounds on which you based your appeal. It has decided that the previously withheld portions of these seven documents must continue to be withheld. A List of Documents With Unchanged Excisions is enclosed.

The information in the deleted portions of these documents is of such a nature that its release would constitute a clearly unwarranted invasion of personal privacy. Individuals who write to the government expressing their personal opinions generally do so with some expectations of confidentiality, and thus their identities, but not necessarily the substance of their correspondence, should be withheld. This is in accord with Department of Justice guidance on the application of the exemption under subsection (b)(6) of the Freedom of Information Act, 5 USC Section 552(b)(6), for these types of documents.

No non-exempt, meaningful information can be segregated from the exempt material and released.

The Panel's decision represents the final decision of the Department of State. If you wish to seek judicial review of

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 46

this determination, you may do so under 5 USC Section 552(a)(4).

Sincerely,

FRANCIS TERRY McNAMARA
CO-CHAIRMAN, APPEALS REVIEW PANEL

Enclosures:
List of Panel Members.
Document list.



9602965

DEFENSE INTELLIGENCE AGENCY

WASHINGTON, D.C. 20340-

UNCLASSIFIED

C-80,504/PO/FOIA 29 July 1996

Aug 6 9 58 AM '96

TO: Foreign Affairs Information Management Center/Information Services (FAIM/IS)
Department of State
Room 1239
Washington, D.C. 20520

SUBJECT: Freedom of Information/Privacy Act Request of Meredith Larson
Our case #PA-45-95

In processing the enclosed request, 27 documents have been located which originated with your organization. They are forwarded for your review and direct response to the requester.

FOR THE DIRECTOR:

ROBERT P. RICHARDSON
Chief, Freedom of Information Act Staff

2 Enclosures
1. Request letter (U)
2. Documents 1-27 (C/NF)

WHEN SEPARATED FROM ENCLOSURES
THIS DOCUMENT BECOMES UNCLASSIFIED

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 47

9602965

117 A East Longview Street
Chapel Hill, NC  27516
919-933-3525
July 18, 1995


Defense Intelligence Agency
PSP/FOIA
Washington, DC  20340-5100

   Re: Freedom of Information Act Request

Dear Sir or Madam:

This is a request under the Freedom of Information Act as amended (5 U.S.C.
Section 552) in conjunction with the Privacy Act (5 U.S.C. Section 552a).

I wish to obtain copies of any and all documents referring to me or retrievable in a
search for files listed under my name.  I wish to obtain copies of all documents
pertaining to Peace Brigades International (and copies that refer to the organization
as PBI or International Peace Brigades) in Guatemala in 1989 and 1990; I was working
for this human rights organization when I and two coworkers were assaulted by
men with knives.  Please advise me if my name or the name of Peace Brigades
International are contained in other "See Reference" files as well, so that I can make
a decision whether to have any such files searched.

These documents should include, but not be limited to:

1.  documents that refer or relate to the stabbing attack on myself on December 20,
1989 in Guatemala City or any subsequent investigation or inquiry regarding this
assault

2.  documents that refer to threats received by Peace Brigades International in May
1989 and a bombing of PBI's offices in August 1989

3.  documents that refer or relate to my visits to Guatemala in late July/early August
1994 and late October/early November 1994 (I visited Jennifer Harbury during her
hunger strike)

In order to assist your search for these files, I am offering you the following
information about myself:

•I lived in Great Falls, VA 1978-1984.  I attended Dartmouth College in Hanover,
NH from 1984 to 1988.  I worked in Guatemala City for Peace Brigades International
August - December 1989.  From March 1990 to July 1995, I lived in San Francisco, CA.
I have recently moved to Chapel Hill, NC.

•I have been involved with human rights and social justice work concerning
Guatemala from 1989 to the present. I have worked with Peace Brigades
International, Guatemala News and Information Bureau, and Coalition "Missing",
an organization of US survivors of state and right wing violence in Guatemala
(members of that group include Jennifer Harbury, Dianna Ortiz, and the family of
Nick Blake).

•Between December 1989 and March 1990, I met with US embassy, US State
Department officials, and congressional offices regarding the assault on myself and
the organization of PBI. I presented information on my case at two separate
congressional briefings sponsored by Congresswoman Connie Morella in May 1994
and March 1995.

I also ask that you check for additional records in any field offices in the cities of
Guatemala City and San Francisco, CA.

If you determine that any document responsive to this request is exempt from
disclosure, I expect that I will be provided with "[a]ny reasonable segregable portion
of [the] record . . . after deletion of the portions which are exempt," 5 U.S.C. § 552(b),
and informed of the grounds for the exemption(s) claimed for each page or passage.
For documents witheld in their entirety, please inform me of the date and the
number of pages in each document. If any records responsive to this request are
stamped classified, please treat this as a request that such records be declassified. I
request that excized material be "blacked out" rather that "white out" or "cut out". If
you determine that some portion of the requested material are exempt, I will expect,
as the Act provides, that you will list the address and office where such an appeal
can be sent.

I trust that the Defense Intelligence Agency will provide full and prompt disclosure
of the materials sought by this request. Given the Guatemala-CIA revelations that
emerged this past spring, the public has a great interest in understanding what
knowledge the United States government has concerning human rights abuses
committed against US citizens in Guatemala, such as myself, and what actions the
United States government has taken in response to such human rights abuses.

As you know, the amended FOIA requires you to reduce or waive search and/or
coping fees when release of the requested information would be "in the public
interest" [5 U.S.C. § 552(a)(4)(iii) and 28 C.F.R. § 16.10(d)]. I believe that this request
plainly fits that category, and I therefore ask that you waive such fees. If this request
is processed under the Privacy Act, however, I expect, as that Act provides, that no
fees will be charged for locating requested files.

If you have any questions regarding this request, please call me at the above
number.

As provided in the Freedom of Information Act, I will expect to receive a reply
within ten working days of its receipt, as required by U.S.C. § 552(6)(A)(i). I am

aware that I have the right to make an administrative appeal should any part of this request for records be denied.

Sincerely,

Meredith Larson
SSN# 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
date of birth: July 9, 1966
place of birth: Arlington, VA

**State of California**
**County San Francisco**

On 7/19/95 before me Jon W Lee personally appeared Meredith Larson proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me tht he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

JON WAI LEE
COMM. #937987
Notary Public-California
SAN FRANCISCO COUNTY
My Comm. Exp. SEPT. 8, 1995

Case Control No. 9602965

MAR 7 1997

Ms. Meredith Larson
117 A East Longview Street
Chapel Hill, NC 27516

SEP 11 1997

Dear Ms. Larson:

I refer to your letter of July 18, 1995 to the Defense Intelligence Agency, requesting the release of certain material under the Freedom of Information Act (Title 5 USC Section 552). Twenty-six of the relevant documents retrieved in response to your request originated with the Department of State and have been referred to us for appropriate action.

We have determined that eighteen may be released, four may be released with excisions, and four may not be released.

The material in the excised portions of two of the documents released in part and in two of the documents withheld in full is currently and properly classified under Executive Order 12958 in the interest of national defense or foreign relations. As such, it is exempt from release under subsection (b)(1) of the Freedom of Information Act.

The material in one of the documents withheld in full constitutes interagency or intra-agency communications forming part of the deliberative process. As such, it is exempt from release under subsection (b)(5) of the Freedom of Information Act.

The material in the excised portions of four of the documents released in part and in one of the documents withheld in full is of such a nature that its release would constitute a clearly unwarranted invasion of personal privacy. As such, it is exempt from release under subsection (b)(6) of the Freedom of Information Act.

In some cases, two or more exemptions in the Freedom of Information Act may apply to the same document. In the case of a document released in part, all non-exempt material that is reasonably segregable from the exempt material has been released.

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 48

With respect to material we have withheld under the Freedom of Information Act, you have the right to appeal our determination within 60 days. Appeals should be addressed to the Assistant Secretary for Public Affairs, c/o Appeals Office, IPS/RL/RC, Room 1512, Department of State, Washington, D. C. 20520-1512. The letter of appeal should refer to the case control number shown above.

Sincerely,

Moskowitz 3/7/97

Margaret P. Grafeld
Acting Director
Office of IRM Programs and Services

November 7, 1997

FOIA/PA Appeal
Assistant Secretary for Public Affairs
c/o Appeals Office, IPS/RL/RC
Room 1512
Department of State
Washington, D.C. 20520-1512

**Re: FREEDOM OF INFORMATION ACT APPEAL FOR MEREDITH LARSON**
**Case Control No. 9602965**

Dear Sir/Madam:

This is an appeal from the letter dated September 11, 1997 which was your response to the Freedom of Information Act and Privacy Act request of Meredith Larson to the Defense Intelligence Agency dated July 18, 1995.

In that letter you withhold four documents and release four excised documents. You cite the following seven exemptions:

1. Information classified in the interest of national defense or foreign policy; FOIA Subsection b(1);

2. Interagency or intra-agency documents, the disclosure of which would have an inhibitive effect on the development of policy and administrative direction; FOIA Subsection b(5); and

3. Clearly unwarranted invasion of personal privacy; FOIA Subsection b(6);

With regards to the documents withheld in their entirety, we cannot state our grounds for appeal with any specificity as we have not been provided with any index of the withheld documents or identifying information, such as date, number of pages, author, or subject matter. However, we challenge your finding that none of the information contained within these four documents can be segregated, declassified, or released as a matter of discretion.

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 49

Please recall that this case involves the stabbing attack on a U.S. citizen and subsequent investigations related to such attack. As the innocent victim of this violent crime, Ms. Larson is certainly entitled to know as much as her government about her case.

With regards to the four excised documents, we ask that they again be reviewed and either declassified or released as a matter of discretion. On October 4, 1993, President Clinton directed the executive branch to "renew their commitment to the Freedom of Information Act, to its underlying principles of government openness, and to its sound administration." 1993 WL 389373 (White House). Attorney General Reno wrote:

> The Department will no longer defend an agency's withholding of information merely because there is a "substantial legal basis" for doing so. Rather, in determining whether or not to defend a nondisclosure decision, we will apply a presumption of disclosure.

Attorney General Reno continued:

> I firmly believe that these exemptions are best applied with specific reference to such harm . . . . . Where an item of information might technically or arguably fall within an exemption, it ought not to be withheld from a FOIA requester unless it need be.

Attorney General Reno reminds agency officials that the FOIA exemptions are discretionary, rather than mandatory.

> Accordingly, I strongly encourage your FOIA officers to make "discretionary disclosure" whenever possible under the Act. . . . [A]gencies can make discretionary FOIA disclosures as a matter of good public policy without concern for future "waiver consequences" for similar information.

Similarly, the Intelligence Oversight Board (IOB) which conducted an investigation into Ms. Larson's case, along with those of Jennifer Harbury, Dianna Ortiz, and Michael Devine, issued a report in 1995 stating:

> As intelligence on the cases was reported to the U.S. government officials, very little of it was shared with victims or their surviving family members. The IOB believes, however, that in such cases the United States should provide its citizens more information whenever possible.

IOB Report, page 8.

Thirteen United States senators have also taken a special interest in Ms. Larson's case as shown in an April, 1995 letter to President Clinton in which they request declassification of as much information as possible on Ms. Larson's case. In light of the above, we urge that the withheld and excised information be released in your discretion.

In the event that you refuse to release the documents, please define your basis for withholding with specificity.

For instance, records withheld on the basis of national security must be demonstrated to be properly classified, and the real or expected damage that could result from declassification must be defined. Moreover, in no case shall information be classified in order to (1) conceal violations of law, inefficiency, or administrative error, (2) prevent embarrassment to a person, organization, or agency, or (3) prevent or delay the release of information that does not require protection in the interest of national security. EO 12958, Section 1.8.

In reviewing the reasons claimed for withholding and excising documents, please keep in mind that the exemptions are discretionary and that the presumption is for disclosure.

Thank you for your courtesies. We hope to hear from you within the 20 day time limit. I can be reached at (301) 588-8066 if you have any questions.

Very truly yours,

Linette Tobin
Attorney for Meredith Larson
Law Office of David Goren
8600 Second Avenue
Silver Spring, MD 20910



United States Department of State

*Washington, D.C.   20520*

Case Control No. 9602965

SEP 1 1 1997

Ms. Meredith Larson
117 A East Longview Street
Chapel Hill, NC 27516

Dear Ms. Larson:

I refer to your letter of July 18, 1995 to the Defense
Intelligence Agency, requesting the release of certain material
under the Freedom of Information Act (Title 5 USC Section
552).  Twenty-six of the relevant documents retrieved in
response to your request originated with the Department of
State and have been referred to us for appropriate action.

We have determined that eighteen may be released, four may be
released with excisions, and four may not be released.

The material in the excised portions of two of the documents
released in part and in two of the documents withheld in full
is currently and properly classified under Executive Order
12958 in the interest of national defense or foreign
relations.  As such, it is exempt from release under subsection
(b)(1) of the Freedom of Information Act.

The material in one of the documents withheld in full
constitutes interagency or intra-agency communications forming
part of the deliberative process.  As such, it is exempt from
release under subsection (b)(5) of the Freedom of Information
Act.

The material in the excised portions of four of the documents
released in part and in one of the documents withheld in full
is of such a nature that its release would constitute a clearly
unwarranted invasion of personal privacy.  As such, it is
exempt from release under subsection (b)(6) of the Freedom of
Information Act.

In some cases, two or more exemptions in the Freedom of
Information Act may apply to the same document.  In the case of
a document released in part, all non-exempt material that is
reasonably segregable from the exempt material has been
released.

With respect to material we have withheld under the Freedom of Information Act, you have the right to appeal our determination within 60 days. Appeals should be addressed to the Assistant Secretary for Public Affairs, c/o Appeals Office, IPS/RL/RC, Room 1512, Department of State, Washington, D. C. 20520-1512. The letter of appeal should refer to the case control number shown above.

Sincerely,

Margaret P. Grafeld
Acting Director
Office of IRM Programs and Services

# NOTICE OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE

Date: 6/11/97

At the request of Meredith Larson 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
Name Social Security Number

117 A East Longview St., Chapel Hill, NC 27516
Address

I hereby enter my appearance as attorney for such person in all matters relating to Freedom of Information Act requests filed with U.S. government agencies.

I am an attorney and a member in good standing of the Bar of the Supreme Court of the United States or of the highest court in the following State or the District of Columbia:

D. C. Court of Appeals
State Name of Court

Pursuant to the Privacy Act of 1974, I hereby consent to the disclosure to the following named attorney of any record pertaining to me which appears in any U.S. government system of records.

Monica Schurtman, Esq.
Linette Tobin, Esq.

Meredith Larson [signature] 6/11/97
Name of Person Consenting Signature Date

[signature] Linette Tobin 11/7/97
Name of Attorney Signature Date



United States Department of State

*Washington, D.C. 20520*

Case Control No. 9602965

FEB 18 1998

Ms. Linette Tobin
Law Office of David Goren
8600 Second Avenue
Silver Spring, MD 20910

Dear Ms. Tobin:

A Department of State Appeals Review Panel, whose members are listed in an enclosure to this letter, has considered your appeal of November 7, 1997, on behalf of Meredith Larson, for the release of four documents withheld in full and four withheld in part by the Department in the course of responding to your request under the Freedom of Information Act.

The Panel has carefully considered the grounds on which you based your appeal. It has decided to release in their entirety six of the documents initially withheld in full or in part. A List of Released Documents is enclosed, along with the released material.

The Panel has determined that one document initially withheld in full may be released with excisions. An additional portion of one document previously withheld in part is now being released. A List of Documents Withheld in Part is enclosed, along with the released material.

The information in a deleted portion of one document is properly classified in accordance with Executive Order 12958 (National Security Information) despite the passage of time. Its release reasonably could be expected to cause damage to the national security of the United States. It is therefore exempt from disclosure under subsection (b)(1) of the Freedom of Information Act, 5 USC Section 552(b)(1).

The information in deleted portions of two documents is of such a nature that its release would constitute a clearly unwarranted invasion of personal privacy. It is therefore

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 50

exempt from disclosure under subsection (b)(6) of the Freedom of Information Act, 5 USC Section 552(b)(6).

All non-exempt, meaningful information that is reasonably segregable from the exempt material has been released.

In regard to the request for a Vaughn index (detailed listing of the documents), courts have consistently held that a requester has no right to a Vaughn index during the administrative process.

The Panel's decision represents the final decision of the Department of State. If you wish to seek judicial review of this determination, you may do so under 5 USC Section 552(a)(4).

Sincerely,

Francis Terry McNamara

FRANCIS TERRY McNAMARA
CO-CHAIRMAN, APPEALS REVIEW PANEL

Enclosures:
- List of Panel Members
- Document lists (2)
- Eight documents

~~CONFIDENTIAL~~ UNCLASSIFIED

DEFENSE INTELLIGENCE AGENCY

WASHINGTON, D.C. 20340-

9702841

C-2,937/SVI-FOIA 8 August 1997

TO: Foreign Affairs Information Management Center/Information Services (FAIM/IS)
Department of State
Room 1239
Washington, D.C. 20520

SUBJECT: Freedom of Information Act Request of Meredith Larson
Our case #PA-45-95

In processing the enclosed request from Ms. Larson's attorneys, three new documents have been located which originated with your organization. They are forwarded for your review and direct response.

Also enclosed is a request from attorneys Ms. Larson has now authorized to represent her. In processing Ms. Larson's initial request, DIA located and referred to your office on 29 July 1997 27 documents for direct response. The documents should be reviewed for direct response to Ms. Larson's attorneys. If a new copy of the documents is needed, please contact this office.

FOR THE DIRECTOR:

ROBERT P. RICHARDSON
Chief, Freedom of Information Act Staff

3 Enclosures
1. Request letters
2. Documents 1-3 (C/UO)
3. Document list

AUG 19 1 35

WHEN SEPARATED FROM ENCLOSURES
THIS DOCUMENT BECOMES UNCLASSIFIED

~~US ONLY~~

UNCLASSIFIED

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 51

~~CONFIDENTIAL~~

117 A East Longview Street
Chapel Hill, NC  27516
919-933-3525
July 18, 1995


Defense Intelligence Agency
PSP/FOIA
Washington, DC  20340-5100

    Re:  Freedom of Information Act Request

Dear Sir or Madam:

This is a request under the Freedom of Information Act as amended (5 U.S.C.
Section 552) in conjunction with the Privacy Act (5 U.S.C. Section 552a).

I wish to obtain copies of any and all documents referring to me or retrievable in a
search for files listed under my name.  I wish to obtain copies of all documents
pertaining to Peace Brigades International (and copies that refer to the organization
as PBI or International Peace Brigades) in Guatemala in 1989 and 1990; I was working
for this human rights organization when I and two coworkers were assaulted by
men with knives.  Please advise me if my name or the name of Peace Brigades
International are contained in other "See Reference" files as well, so that I can make
a decision whether to have any such files searched.

These documents should include, but not be limited to:

1.  documents that refer or relate to the stabbing attack on myself on December 20,
1989 in Guatemala City or any subsequent investigation or inquiry regarding this
assault

2.  documents that refer to threats received by Peace Brigades International in May
1989 and a bombing of PBI's offices in August 1989

3.  documents that refer or relate to my visits to Guatemala in late July/early August
1994 and late October/early November 1994 (I visited Jennifer Harbury during her
hunger strike)

In order to assist your search for these files, I am offering you the following
information about myself:

•I lived in Great Falls, VA 1978-1984.  I attended Dartmouth College in Hanover,
NH from 1984 to 1988.  I worked in Guatemala City for Peace Brigades International
August - December 1989.  From March 1990 to July 1995, I lived in San Francisco, CA.
I have recently moved to Chapel Hill, NC.

•I have been involved with human rights and social justice work concerning Guatemala from 1989 to the present. I have worked with Peace Brigades International, Guatemala News and Information Bureau, and Coalition "Missing", an organization of US survivors of state and right wing violence in Guatemala (members of that group include Jennifer Harbury, Dianna Ortiz, and the family of Nick Blake).

•Between December 1989 and March 1990, I met with US embassy, US State Department officials, and congressional offices regarding the assault on myself and the organization of PBI. I presented information on my case at two separate congressional briefings sponsored by Congresswoman Connie Morella in May 1994 and March 1995.

I also ask that you check for additional records in any field offices in the cities of Guatemala City and San Francisco, CA.

If you determine that any document responsive to this request is exempt from disclosure, I expect that I will be provided with "[a]ny reasonable segregable portion of [the] record . . . after deletion of the portions which are exempt," 5 U.S.C. § 552(b), and informed of the grounds for the exemption(s) claimed for each page or passage. For documents witheld in their entirety, please inform me of the date and the number of pages in each document. If any records responsive to this request are stamped classified, please treat this as a request that such records be declassified. I request that excized material be "blacked out" rather that "white out" or "cut out". If you determine that some portion of the requested material are exempt, I will expect, as the Act provides, that you will list the address and office where such an appeal can be sent.

I trust that the Defense Intelligence Agency will provide full and prompt disclosure of the materials sought by this request. Given the Guatemala-CIA revelations that emerged this past spring, the public has a great interest in understanding what knowledge the United States government has concerning human rights abuses committed against US citizens in Guatemala, such as myself, and what actions the United States government has taken in response to such human rights abuses.

As you know, the amended FOIA requires you to reduce or waive search and/or coping fees when release of the requested information would be "in the public interest" [5 U.S.C. § 552(a)(4)(iii) and 28 C.F.R. § 16.10(d)]. I believe that this request plainly fits that category, and I therefore ask that you waive such fees. If this request is processed under the Privacy Act, however, I expect, as that Act provides, that no fees will be charged for locating requested files.

If you have any questions regarding this request, please call me at the above number.

As provided in the Freedom of Information Act, I will expect to receive a reply within ten working days of its receipt, as required by U.S.C. § 552(6)(A)(i). I am

aware that I have the right to make an administrative appeal should any part of this request for records be denied.

Sincerely,

Meredith Larson
SSN# 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
date of birth: July 9, 1966
place of birth: Arlington, VA

**State of California**
**County San Francisco**

On 7/19/95 before me Jon W Lee personally appeared Meredith Larson proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

JON WAI LEE
COMM. #937987
Notary Public-California
SAN FRANCISCO COUNTY
My Comm. Exp. SEPT. 8, 1995

NOV 15 1999

Case Control No. 199702841

Linette Tobin/Monica Schurtman
Guatemala Human Rights Commission/USA
3321 12th Street N.E.
Washington, D.C. 20017

Dear Ms. Tobin and Ms. Schurtman:

I refer to your letter of July 21, 1997 to the Defense Intelligence Agency, requesting the release of certain material under the Freedom of Information Act (Title 5 USC Section 552). Three of the relevant documents retrieved in response to your request originated with the Department of State and have been referred to us for appropriate action.

We have determined that the three documents may be released.

Sincerely,

Olson for 2/12/98

Margaret P. Grafeld
Director
Office of IRM Programs and Services

Enclosures:
As stated.

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 52

CENTRAL INTELLIGENCE AGENCY
Washington, D.C. 20505

Z00000612

2 November 1998

2/29/2000 - Rec'd from Pol School to open.

TO: Ms. Margaret P. Grafeld, Director
Office of IRM Programs & Services
Room 1512
Department of State
Washington, D.C. 20520-1512

FROM: Information and Privacy Coordinator
Central Intelligence Agency

SUBJECT: FOIA/PA Request of Meredith Larson

CIA FOIA/PA No F97-01954

In connection with the review of CIA files responsive to the above request, the following was surfaced:

A. FOR YOUR DIRECT RESPONSE TO THE REQUESTER:

[XX] Two document(s) which originated with your agency and is/are being referred to you for direct response to the requester (enclosure A). We will advise the requester of this referral.

a. Document(s) numbered ______ We have identified the CIA-originated information in the document(s), and have no objection to its release.

b. Document(s) numbered 1, 2 We have been unable to identify any information as having originated with this Agency. If, as a result of your review of the source documents, information is identified which originated with this Agency, you are requested to coordinate this information with us prior to any release to the requester.

c. Document(s) numbered ______ Deletions have been made in each enclosed copy which consist of non-substantive internal markings, such as filing instructions. Since these markings will not appear on your file copy, no deletion or exemption for deletion should be necessary. If, however, you are unable to locate your file copy and must use the enclosed copy for your response, the requester should be advised that non-substantive deletions have been made by this Agency under [ ] FOIA exemption (b)(3)/[ ] PA exemption (j)(1).

d. Document(s) numbered ______ Substantive information has been deleted from this material as marked. The requester should be informed of this denial and of the FOIA/PA exemption(s) claimed. Please see additional information given under Comments.

[ ] Additional information about this/these document(s) is given under Comments.

B. FOR YOUR REVIEW AND RESPONSE BACK TO THIS AGENCY:

[ ] ______ CIA document(s) containing information provided by this Agency (enclosure ______). Please review your information and return the document(s) to us, marking any deletions you deem appropriate, citing FOIA/PA exemption(s) claimed, and stating the current and proper level of any classified information. In your response, please cite the date of this memo, the name of the requester, and the CIA case number.

[ ] Additional information about this/these document(s) is given under Comments.

A copy of the requester's initial letter and any other significant correspondence are enclosed for your records (enclosure B). If you have any questions, please contact Linda M. on 703-613-1323.

COMMENTS:

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 53

08/12/98

August 4, 1998

Agency Release Panel
c/o Lee Strickland
Information & Privacy
Central Intelligence Agency
Washington, DC 20505

Re:   Appeal of Denial of FOIA/PA Requests filed on behalf of Meredith Larson
P95-1776
P-1996-1618
F-1997-01954

Dear Sir/Madam:

This is an appeal from your denial and inaction on Freedom of Information Act/Privacy Act requests filed on July 18, 1995 and July 21, 1997.

More than three years have passed since our first request was filed in 1995, and we have yet to receive your response. We are considering your inaction a denial, and are appealing it as such.

On July 21, 1997, we filed an updated request which was acknowledged on September 8, 1997. Since then (almost a year ago now), we have heard nothing further. At this point, we have realized that you do not intend to process Ms. Larson's requests within any reasonable period of time. Interpreting your silence as another denial, we are appealing this inaction as well.

Just this week, Ms. Larson received the enclosed letter from you dated May 29, 1998. The letter was sent to an outdated North Carolina address, even though I have filed a notice of appearance as Ms. Larson's attorney of record in all FOIA/Privacy Act matters. As Ms. Larson's legal representative, please correspond directly with me in the future so that we are sure to receive all information in a timely manner.

The May 29, 1998 letter discusses documents which the DIA referred to you for your review, as the material had originated with the Foreign Broadcast Information Service (FBIS). You have released the document with excisions. By this letter, we appeal your decision to excise portions of the document.

This case involves the stabbing attack on a U.S. citizen and subsequent investigations related to that attack. As the innocent victim of a violent crime, Ms. Larson is surely entitled to know as much as her government about her case.

President Clinton himself has directed the executive branch to "renew their commitment to the Freedom of Information Act, to its underlying principles of government openness, and to its sound administration." 1993 WL 389373 (White House, October 4, 1993).

Similarly, Attorney General Reno has directed that "The Department will no longer defend an agency's withholding of information merely because there is a 'substantial legal basis' for doing so. Rather, in determining whether or not to defend a nondisclosure decision, we will apply a presumption of disclosure."

Attorney General Reno reminds agency officials that exemptions are discretionary, rather than mandatory and "strongly" encourages FOIA officers to make "discretionary disclosure whenever possible under the Act . . . ." 1993 WL 389373.

The Intelligence Oversight Board, which conducted an investigation into Ms. Larson's case, along with those of Jennifer Harbury, Dianna Ortiz, and Michael Devine, expressed its concern that intelligence on these cases was not shared with the "victims or their surviving family members." The IOB stressed that "the United States should provide its citizens more information whenever possible." IOB Report, page 8.

Thirteen U.S. Senators have also taken a special interest in Ms. Larson's case, urging in a April, 1995 letter to President Clinton that as much information on her case be declassified as soon as possible. In light of the above, we urge that the redacted information be revealed.

With regard to the FOIA/Privacy Act requests filed directly with you (P95-1776 and F-1997-01954), we find it incredible that you have not found the time in three years to respond. Your May 11, 1998 comment to Congress, that all FOIA requests regarding Guatemala are "underway and the majority of them, indeed, have been completed", was surprising to say the least. If you have been able to complete the majority of requests, perhaps it is time to prioritize this one -- a request from a woman who only wants to learn what her government already knows about the unsolved and brutal crime of which she was the victim.

We do expect a reply within the 20 day time limit.

Sincerely,

Linette Tobin
Attorney for Meredith Larson
Law Office of David Goren
8600 Second Avenue
Silver Spring, MD 20910
(301) 588-8066

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

July 21, 1997

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Re: *Freedom of Information/Privacy Act Request* for MEREDITH LARSON.

Dear Sir/Madam:

We have been retained by U.S. citizen Meredith Larson to represent her in obtaining documents related to her stabbing on the street in Guatemala City, Guatemala on December 20, 1989. Ms. Larson had been working as a volunteer human rights observer with PBI (Peace Brigades International or, sometimes, International Peace Brigade; in Spanish--Brigadas de Paz, Brigadas de Paz Internacional; BPI) in Guatemala from August to December 1989 when she and two Canadian co-workers (Mitchell Goldberg & Rusa Jeremic) were attacked by men with knives. The unknown assailants slashed Ms. Larson's chest and upper body. Her social security number is 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 and she was born in Arlington, Va. on July 9, 1966. She lived in Great Falls, Va. between 1978 and 1984 and attended Dartmouth College in Hanover, N.H. from 1984 to 1988. From 1990 to 1995, she lived in San Francisco, Calif. She currently resides in Chapel Hill, N.C.

Documents relating to this request include but are not limited to cable traffic, airgrams, notes, letters, memos, memoranda of conversation, reports, analyses, interviews, briefings, correspondence, diplomatic notes, démarches, or non-papers. Please advise us if Meredith Larson's name or the name of Peace Brigades International (PBI) is contained in other "See Reference" files as well, so that we can make a decision whether to have such files searched.

Pursuant to the Freedom of Information Act and Privacy Act (FOIA), 5 U.S.C. § 552, as amended, we request disclosure of the documents described on the attached pages for inspection and copying. We further request that all documents be reviewed in their entirety and that no information be omitted on the grounds of non-relevance. This request includes a call for a copy of Ms. Larson's entire original FOIA/PA file created as the result of her 1995 request and subsequent appeals, including the search slips and any document created or used in the search for records requested.

If you regard any of these documents as potentially exempt from the FOIA's disclosure requirements, we ask that you nonetheless exercise your legally-authorized discretion to disclose them as the value of the documents clearly outweighs any agency regulation or privacy interest that might be asserted. Please note that § 1.8 of Clinton Executive Order 12958, 60 F.R. 19825, provides that *in no case shall information be classified in order to:*

*(1) conceal violations of law, inefficiency, or administrative error;*
*(2) prevent embarrassment to a person, organization, or agency;...or*

3321 12th St. Washington, DC  20017   T.(202)529-6599  F. (202) 526-4611  e-mail: ghrc@igc.apc.org
A PROJECT OF THE GUATEMALA HUMAN RIGHTS COMMISSION/USA

*(4) prevent or delay the release of information that does not require protection in the interest of national security.*

Attorney General Reno's Oct. 4, 1993 memo on the FOIA, 1993 WL389373 (White House) urged government officials to favor discretionary release of documents rather than withhold them. In that memo, Janet Reno also noted that the Justice Department would no longer routinely defend agency withholding without justification. Similarly, on Oct. 4, 1993, President Clinton directed the executive branch to "renew their commitment to the Freedom of Information Act, to its underlying principles of government openness, and to its sound administration." 1993 WL 389373 (White House).

Given that the President ordered his Intelligence Oversight Board (IOB) to conduct a wide-ranging investigation into certain aspects of U.S. policy toward Guatemala, a precedent of disclosure has been established concerning human rights information on Guatemala maintained by the U.S. government. Many government documents have already been declassified in response to the IOB report which specifically stated:

> As intelligence on the cases was reported to the U.S. government officials, very little of it was shared with victims or their surviving family members. The IOB believes, however, that in such cases the United States should provide its citizens more information whenever possible.

IOB Report, page 8.

As the FOIA requires, in the event you determine that a document contains exempt material, please release all reasonably segregable nonexempt portions of records. If no information is "reasonably segregable", we request a line by line review for segregability. To permit us to reach an intelligent and informed decision whether or not to file an administrative appeal of any denied material, please describe any withheld documents (or portions thereof) and explain in full the basis for your exemption claims. If documents are withheld, please state the date, origin, and number of pages in each document. If documents are classified, please treat this FOIA request as a request to declassify them. If words and phrases are excised, please black them out rather than white them out.

Please waive all fees in connection with this request. Disclosure of the records that we have requested is clearly within the public interest, and, therefore, constitutes an appropriate circumstance for the waiver of fees. Should you decline to waive the fees, please notify us immediately and describe the specific reasons in writing. If fees are not waived, we agree to pay search, review, and copy costs up to $100.

Our request involves information bearing on the extent of the U.S. government's knowledge of or involvement in the stabbing of Meredith Larson. As evidenced by the press accounts of Ms.

Larson's case, the subject of this request is very much in the public interest. Given the Guatemala-CIA revelations in the spring of 1995 and the summer of 1997 and the release of the Intelligence Oversight Board (IOB) report in June 1996 , the public has a great interest in understanding more about the human rights situation in Guatemala and about specific human rights cases. Ms. Larson's case was documented in congressional language accompanying cuts to military aid to Guatemala in 1990 and has received coverage on CBS' *60 Minutes*. In April 1995, 13 senators called on President Clinton to declassify as much information as possible on a select list of both U.S. and Guatemalan human rights victims in Guatemala, and Meredith Larson's case was on that list. In May 1996, over 100 members of the House of Representatives sent a letter to President Clinton requesting a broad declassification of information pertaining to human rights violations in Guatemala.

The Guatemala Human Rights Commission/USA continues to receive requests from the news media and private citizens for updated information on Ms. Larson's case. The role of U.S. agencies in Guatemala has been the subject of several congressional hearings during the last few years. The public will benefit by gaining a better understanding of the U.S. government's intelligence operations and its relationship with Guatemala and its military forces. This relationship is part of American history and should be studied.

Moreover, the information we are seeking goes to the heart of the American government's operations and activities abroad and will provide the basis for scholarly research and other analytical work, particularly on Constitutional government and its relation to the modern administrative state, i.e. the rule of law and the democratic process. In addition to distributing information we obtain through our network of media contacts, the Guatemala Human Rights Commission/USA and St. Mary's University Human Rights Clinic will archive and analyze the records Meredith Larson receives and disseminate the information contained to lawyers, human rights advocates, policy makers, and academics.

To speed disclosure of the requested records, please release them as they become available to you, without waiting until all documents have been processed. Given the great value of these records to the public interest, we ask that you expedite the handling of this request, rather than routinely apply the "first in, first out" approach. As you know, eight years have elapsed since the attack and Ms. Larson still knows almost nothing about the identity or motives of her attackers.

CIA offices most likely having responsive documents would include, at a minimum, the following: *the Directorate of Intelligence* (DI)*; the Directorate for Operations* (DO)*; the Office of the General Counsel;* and *the CIA Station* and its Communications Section, *TCU*, at the American Embassy in Guatemala City, as well as any *CIA Bases* elsewhere in Guatemala.

If you have any questions regarding the identity of the records, their location, the scope of the request, or any other matter, please call J. Michael Springmann at (202) 529-6599; Linette Tobin at (301) 588-8066; or Monica Schurtman at (210) 431-5711. We look forward to receiving your response within the 10-day statutory limit. We understand that we may appeal if we do not

receive a response or if documents are withheld or redacted.

Documents and reports should be sent to:

Linette Tobin/Monica Schurtman
Guatemala Human Rights Commission/USA
3321 12th Street N.E.
Washington, D.C. 20017

Very truly yours,

Monica Schurtman, Esquire

Linette Tobin, Esquire

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

## NOTICE OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE

Date: 7/21/97

At the request of Meredith Larson, 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,
Name — Social Security Number

117A East Longview Street, Chapel Hill, NC 27516
Address

I hereby enter my appearance as attorney for such person in all matters relating to Freedom of Information Act requests filed with U.S. government agencies.

I am an attorney and a member in good standing of the Bar of the Supreme Court of the United States or of the highest court in the following State or the District of Columbia:

District of Columbia — D.C. Court of Appeals
State — Name of Court

Pursuant to the Privacy Act of 1974, I hereby consent to the disclosure to the following named attorney of any record pertaining to me which appears in any U.S. government system of records.

Monica Schurtman, Esq.
Linette Tobin, Esq.

State - N.C.
County - Durham
Alissa Hayes Canty
My Commission Expires June 05, 1999

Meredith Larson — [signature] — 7/18/97
Name of Person Consenting — Signature — Date

Linette Tobin — [signature] — 7/21/97
Name of Attorney — Signature — Date

3321 12th St. Washington, DC 20017 T.(202)529-6599 F. (202) 526-4611 e-mail: ghrc@igc.apc.org
A PROJECT OF THE GUATEMALA HUMAN RIGHTS COMMISSION/USA

~~CONFIDENTIAL~~

199800834

UNCLASSIFIED

NATIONAL SECURITY AGENCY
CENTRAL SECURITY SERVICE
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FEB 23 10 42 AM '98

# FOIA/PA LETTER OF REFERRAL

| | | |
|---|---|---|
| | | DATE<br>19 February 1998 |
| TO<br>Department of State<br>Information & Privacy Staff<br>ATTN: Lonnie Patch<br>Room 1512<br>Washington, DC 20520 | SERIAL<br>J9837R3-97 | DATE RECEIVED BY NSA<br>16 Sep 1997 |
| | FOI/PA REQUEST OF:<br>Fr. Thomas P. Henehan | |
| FROM<br>FOI / PA<br>National Security Agency | NSA FOI/PA NUMBER<br>J9837-97 | |

IN OUR REVIEW OF NSA RECORDS RESPONSIVE TO THE ABOVE REQUEST, THE FOLLOWING WAS SURFACED

1. FOR YOUR DIRECT RESPONSE TO THE REQUESTER

2 document(s), attached as enclosure #1, which originated with your agency. We will advise the requester of this referral.

| | |
|---|---|
| | a. We have identified the NSA-originated information in the document(s) and have no objection to its release. |
| X | b. We have been unable to identify any information as having originated with this Agency. If, as a result of your review of the documents, information is identified which originated with this Agency, you are requested to coordinate this information with us prior to its release. |
| | c. Information that is currently and properly classified in accordance with E.O. 12958 has been indicated for deletion pursuant to: |
| | [ ] FOIA exemption (b) (1) and — [ ] 5 U.S.C. 552a (k) (1), the Privacy Act of 1974. |
| | [ ] This information is also exempt from disclosure pursuant to FOIA exemption (b) (3) which provides for the withholding of information specially protected from disclosure by statue. The specific statutes applicable in this case are: |
| | [ ] Title 18 U.S. Code 798 — [ ] Title 50 U.S. Code 403-3 (c) (5) |
| | [ ] Section 6, Public Law 86-36 *(50 U.S. Code 402 note)* |
| | d. Unclassified information which would reveal titles and names of NSA/CSS employees, or fucntions and activitiies of the Agency has been indicated for deletion pursuant to |
| | [ ] FOIA exemption (b) (3) and/or — [ ] Section 6 of Public Law 86-36 *(50 U.S. Code 402 note)* |
| | e. The initial denial authority for NSA information is the Deputy Director of Policy. The requester may appeal these deletions within 60 days after notification of the denial by writing to the NSA/CSS Appeal Authority, National Security Agency, Ft. George G. Meade, MD 20755-6000. The appeal shall reference the initial denial of access and shall contain in sufficient detail and particularity, the grounds upon which the requester believes release of the information is required. The NSA/CSS Appeal Authority shall respond to the appeal within ________ working days after receipt. |

2. FOR YOUR REVIEW AND RESPONSE BACK TO THIS AGENCY

________ NSA document(s), attached as enclosure ________, containing information provided by, or in respect to, your agency. Please review your information and return the document(s) to us making any deletions you deem appropriate, citing FOIA/PA exemption(s) claimed, and stating the current and proper level of any classified information. In your response, please cite the date of this memo, the name of the requester, and the NSA case number.

3. A COPY OF THE REQUESTER'S INITIAL LETTER AND ANY OTHER SIGNIFICANT CORRESPONDENCE ISATTACHED AS ENCLOSURE #2 FOR YOUR CONVENIENCE. IF YOU HAVE ANY QUESTIONS CONCERNING THIS REFERRAL, PLEASE CONTACT:

Nancy T. Morris on (301) 688-6527

| | |
|---|---|
| X | See attached for additional comments. |

Sincerely,

*Barbara Paisley*

BARBARA PAISLEY
Chief, FOIA/PA Services

UNCLASSIFIED

ENCL(s)
a/s

~~CONFIDENTIAL~~

FORM O4870 REV JUL 96
NSN: 7540-FM-001-3435

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 54

Serial: J9837R3-97

The attached documents were non responsive in Father Woods prior case (J9599-95) but were left in the case folder. Since the present requester asked for all documents in the prior FOIA request case concerning Father Woods, these documents are responsive for this request.

Both of these documents were referred to your agency on 7 October 96 for NSA FOIA case J9232-95 (Sister Dianna Ortiz).

KA

J9530-97

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

September 4, 1997

Freedom of Information/Privacy Act Requests
National Security Agency/Central Security Service
Attn: Q-43
Fort George G. Meade, MD 20755-6000

**Re: *Freedom of Information/Privacy Act Request* for William Hervey Woods, Jr.**

Dear Sir/Madam:

We have been retained by U.S. citizen Father Thomas P. Henehan to represent him in obtaining documents related to the mysterious air crash and death of Father William H. Woods, near the Ixcan, Guatemala on November 20, 1976. Father Henehan's social security number is 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. He lives in Maryknoll, New York.

Father Woods worked in Guatemala for 18 years as a missionary, the last few which he devoted to organizing agricultural cooperatives for the indigenous Mayans in the Ixcan jungle. On November 20, 1976, a small plane he was piloting crashed, killing Father Woods and his four U.S. citizen passengers, John Gauker, Selwyn Puig, Ann Kerndt, and Dr. Michael D. Okada. The Cessna 185 was in sound mechanical condition, the weather was good, and Father Woods was an experienced pilot.

Father Woods was born in Houston, Texas on September 14, 1931. He entered the Maryknoll seminary in Illinois in 1949, then later spent time as a Maryknoll in Massachusetts (1953-1954) and New York (1957-1958). Between 1954 and 1957, Father Woods studied in Mexico, ministered to migrant farm workers in California, and served as chaplain in a hospital in Houston, Texas. In 1958, he was transferred to Guatemala where he ministered with the Maryknoll Father and Brothers/Catholic Foreign Mission Society of America, Inc. until his death in 1976.

Documents relating to this request include but are not limited to cable traffic, airgrams, notes, letters, memos, memoranda of conversation, reports, analyses, interviews, briefings, correspondence, diplomatic notes, or démarches. Please advise us if William H. Woods' name is contained in other "See Reference" files as well, so that we can make a decision regarding whether to have such files searched.

Pursuant to the Freedom of Information Act and Privacy Act (FOIA), 5 U.S.C. § 552, as amended, we request disclosure of the documents described on the attached pages for inspection and copying. We further request that all documents be reviewed in their entirety and that no information be omitted on the grounds of non-relevance.

If you regard any of these documents as potentially exempt from the FOIA's disclosure requirements, we ask that you nonetheless exercise your legally-authorized discretion to disclose them as the value of the documents clearly outweighs any agency regulation or privacy interest that might be asserted. Please note that § 1.8 of Clinton Executive Order 12958, 60 F.R. 19825, provides that *in no case shall information be classified in order to:*

*(1) conceal violations of law, inefficiency, or administrative error;*
*(2) prevent embarrassment to a person, organization, or agency;...or*
*(4) prevent or delay the release of information that does not require protection in the interest of national security.*

Attorney General Reno's Oct. 4, 1993 memo on the FOIA, 1993 WL389373 (White House) urged government officials to favor discretionary release of documents rather than withhold them. In that memo, Janet Reno also noted that the Justice Department would no longer routinely defend agency withholding without justification. Similarly, on Oct. 4, 1993, President Clinton directed the executive branch to "renew their commitment to the Freedom of Information Act, to its underlying principles of government openness, and to its sound administration." 1993 WL 389373 (White House). Given that in 1995, the President ordered his Intelligence Oversight Board (IOB) to conduct a wide-ranging investigation into certain aspects of U.S. policy toward Guatemala, a precedent of disclosure has been established concerning human rights information on Guatemala maintained by the U.S. government.

As the FOIA requires, in the event you determine that a document contains exempt material, please review the document line-by-line and release all reasonably segregable portions. To permit us to reach an informed decision about whether to file an administrative appeal of any withheld material, please describe any withheld documents (or portions thereof) by date, origin, and number of pages and explain in full the basis for withholding. If documents are classified, please treat this FOIA request as a request to declassify. If words and phrases are excised, please black, rather than white, them out.

Please waive all fees in connection with this request. Disclosure of the records that we have requested is clearly within the public interest, and, therefore, constitutes an appropriate circumstance for the waiver of fees. Should you decline to waive the fees, please notify us immediately and describe the specific reasons in writing.

Our request involves information bearing on the extent of the U.S. government's knowledge of the suspected murder of William H. Woods and four other U.S. citizens. Given the Guatemala-CIA revelations in the spring of 1995 and the summer of 1997 and the release of the Intelligence Oversight Board (IOB) report in June 1996 , the public has a great interest in understanding more about the human rights situation in Guatemala and about specific human rights cases. In May 1996, over 100 members of the House of Representatives sent a letter to President Clinton requesting a broad declassification of information pertaining to human rights violations in Guatemala.

The American public will benefit by gaining a better understanding of the U.S. government's intelligence operations and activities abroad as well as its historical relationship with Guatemala and its military forces, particularly in relation to the death of a man who had organized woodworking cooperatives, medical clinics, and land resettlement schemes for the Guatemalan people. The Maryknollers, a non-profit missionary order active for at least 50 years in Guatemala, are filing this FOIA request for one of their own -- a priest killed while fulfilling his organization's goal of helping the poorest build lives of justice and dignity.

To speed disclosure of the requested records, please release them as they become available to you, without waiting until all documents have been processed. Given the great value of these records to the public, we ask that you expedite the handling of this request. More than twenty years have passed since Father Woods' death and the Maryknolls still know almost nothing about the identity or motives of those who brought down the plane.

NSA offices most likely to have responsive documents include, at a minimum: *Office of the Director* and *Deputy Director;* the *General Counsel;* the *Inspector General;* overseas telecommunications units, *TCU,* located at American Foreign Service Posts and elsewhere, particularly in Guatemala.

If you have any questions regarding the identity of the records, their location, the scope of the request, or any other matter, please call Linette Tobin at (301) 588-8066. We look forward to receiving your response within the 10-day statutory limit. We understand that we may appeal if we do not receive a response or if documents are withheld or redacted.

Documents and reports should be sent to:

Linette Tobin/Monica Schurtman
Guatemala Human Rights Commission/USA
3321 12th Street N.E.
Washington, D.C. 20017

Very truly yours,

Linette Tobin, Esq.

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

## NOTICE OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE

Date: 07/24/97

At the request of FR. THOMAS P. HENEHAN, MM, 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,
Name — Social Security Number

P.O. BOX 303, MARYKNOLL, NY 10545-0303
Address

I hereby enter my appearance as attorney for such person in all matters relating to Freedom of Information Act requests filed with U.S. government agencies.

I am an attorney and a member in good standing of the Bar of the Supreme Court of the United States or of the highest court in the following State or the District of Columbia:

D.C. — Court of Appeals
State — Name of Court

Pursuant to the Privacy Act of 1974, I hereby consent to the disclosure to the following named attorney of any record pertaining to me which appears in any U.S. government system of records.

Monica Schurtman, Esq.
Linette Tobin, Esq.

REV. THOMAS P. HENEHAN, MM — Thomas P. Henehan — 07/24/97
Name of Person Consenting — Signature — Date

Linette Tobin — [signature] — 9/4/97
Name of Attorney — Signature — Date

3321 12th St. Washington, DC 20017 T.(202)529-6599 F. (202) 526-4611 e-mail: ghrc@igc.apc.org
A PROJECT OF THE GUATEMALA HUMAN RIGHTS COMMISSION/USA

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

---

SUBJECT OF REQUEST

*WILLIAM H. WOODS*

All documents relating in whole or in part to the mysterious air crash and death of Father William H. Woods, M.M. near Ixcán, Guatemala on November 20, 1976. Aboard the plane were also four U.S. citizens, John Gauker, Selwyn Puig, Ann Kerndt, and Dr. Michael D. Okada.

At a minimum, responsive records ought to be found in categories indexed or covered by the following **TAGS** dealing with security, assistance to citizens, aid, aviation, petroleum, military affairs, political relations, intelligence, national security, terrorism, narcotics, crime, and justice: ASEC, CASC, EAID, EAIR, EPET, MARR, MASS, MOPS, PGOV, PINR, PINS, PREL, PTER, SNAR, KCRM, KJUS.

Subjects relating to this request should include but are not limited to:

- Information on when and how any U.S. agency, agent, or official, including but not limited to the State Department, the U.S. Embassy in Guatemala, its Political and Consular Sections, its Defense Attaché's Office, its Legal Attaché's Office, and the CIA first knew of the crash and death of Father Woods.

- The arrest, detention, or questioning of Guatemalan citizens or armed forces personnel in the crash of Father Woods' aircraft.

- Any information regarding possible motives for an attack on William H. Woods.

- Information regarding any investigation of Father Woods carried out by the Guatemalan government, police, or armed forces prior to the crash.

- Information regarding any investigation of Father Woods by any agent, official, or agency of the U.S. government prior to or subsequent to the crash of William H. Woods' airplane.

- Any information regarding any efforts on the part of the U.S. government, including the FBI or NTSB, to investigate the crash or Father Woods' death.

- Any information regarding any investigation of the crash conducted by the Guatemalan government, including but not limited to, the Ministry of the Interior and the Guatemalan judiciary.

---

- Documents which may suggest a link between the death of Father Woods and oil rights in the Ixcán or the purchase of land near or in the Ixcán by Guatemalan officials or agents.

- Any records containing names or identities of witnesses to the crash.

- Any records regarding Guatemalan troop movements in the Ixcán region around the time of the crash.

- Any documents regarding the evidence related to the plane crash or the evaluation thereof.

- Any documents related to Father Woods' meetings with any Guatemalan government official, including but not limited to, General Kjell Laugerud.

- A copy of the embassy death report or any document referring to the recovery, examination, viewing, or transport of Father Woods' body.

- Copies of the death notice cable and any follow up messages regarding Father Woods' death to or from the U.S. embassy.

- Any information that Father Woods was in danger or that his name was on a death list or that other persons should not fly with him.

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

---

SUBJECT OF REQUEST

*THREATS AGAINST WILLIAM H. WOODS OR THE MARYKNOLL FATHERS AND BROTHERS/CATHOLIC FOREIGN MISSION SOCIETY OF AMERICA, INC.*

All documents relating in whole or in part to any threats against or surveillance of Father Woods or the Maryknoll Fathers and Brothers/Catholic Foreign Mission Society of America, Inc. in Guatemala.

At a minimum, responsive records ought to be found in categories indexed or covered by the following **TAGS** dealing with security, assistance to citizens, aid, aviation, petroleum, military affairs, political relations, intelligence, national security, terrorism, narcotics, crime, and justice: ASEC, CASC, EAID, EAIR, EPET, MARR, MASS, MOPS, PGOV, PINR, PINS, PREL, PTER, SNAR, KCRM, KJUS.

Subjects related to this request include, but are not limited to:

- Information on when and how any U.S. agency, agent, or official, including but not limited to the State Department, the U.S. Embassy in Guatemala, its Political and Consular Sections, its Defense Attaché's Office, its Legal Attaché's Office, and the CIA first knew of any threats against or surveillance of Father Woods, the Maryknoll Society, or any of its members in Guatemala.
- Information regarding the warning given to William H. Woods by U.S. Ambassador Francis E. Meloy that Woods was in danger from Guatemalan government or military officials.
- Any information regarding possible motives for the threats against Father Woods or the Maryknoll Society.
- Any information regarding any investigation of the Maryknoll Society conducted by the Guatemalan government, police, or security forces.
- Any documents accusing or suggesting that the Maryknolls were involved in subversive or communist activities in Guatemala or otherwise disregarded the laws of that country.

---

3321 12th St. Washington, DC 20017 T.(202)529-6599 F. (202) 526-4611 e-mail: ghrc@igc.apc.org
A PROJECT OF THE GUATEMALA HUMAN RIGHTS COMMISSION/USA

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

## SUBJECT OF REQUEST

*INVESTIGATION OF THE CRASHED CESSNA 185*

Subjects related to this request include, but are not limited to:

- Any documents related to the cause of the crash of Father Woods' Cessna.
- Any documents either supporting or contradicting the Guatemalan government's statement that the plane had caught fire.
- Any documents supporting or contradicting the Guatemalan government's statement that the plane crashed because of bad weather.
- Any documents supporting or contradicting the Guatemalan government's statement that the plane had crashed because of engine failure.
- Any documents concerning the visit of Armand Edwards, U.S. National Transportation Safety Board, to Guatemala in connection with Father Woods' crash.
- Any documents relating to the plane's missing windshield and side windows.
- Any documents related to the removal of the bodies from the plane.
- Any information suggesting that the plane had been fired upon or shot down.

3321 12th St. Washington, DC 20017 T.(202)529-6599 F. (202) 526-4611 e-mail: ghrc@igc.apc.org
A PROJECT OF THE GUATEMALA HUMAN RIGHTS COMMISSION/USA

# COALITION MISSING

U.S. CITIZENS MURDERED, TORTURED, ASSAULTED OR MISSING IN GUATEMALA

## SUBJECT OF REQUEST

*THE ORIGINAL 1995 FOIA REQUEST FOR WILLIAM H. WOODS*

- Documents concerning the 1995 FOIA and Privacy Act requests regarding the air crash and death of Father William H. Woods, M.M., originally filed by Father Stephen Judd, M.M. This request includes, but is not limited to, a copy of the entire original FOIA/PA file created as the result of his 1995 request, including the search slips and any document used or generated in acting upon the request.

3321 12th St. Washington, DC 20017 T.(202)529-6599 F. (202) 526-4611 e-mail: ghrc@igc.apc.org
A PROJECT OF THE GUATEMALA HUMAN RIGHTS COMMISSION/USA

Case Control No. 199800834

APR 8 1998

Linette Tobin, Esq.
Guatamala Human Rights Commission/USA
3321 12th Street, N.E.
Washington, D.C. 20017

Dear Ms. Tobin:

I refer to your letter of September 4, 1997 to the National Security Agency, requesting the release of certain material under the Freedom of Information Act (Title 5 USC Section 552). Two of the relevant documents retrieved in response to your request originated with the Department of State and have been referred to us for appropriate action.

We have determined that both may be released.

Sincerely,

Margaret P. Grafeld
Director
Office of IRM Programs and Services

Enclosures:
As stated.

DOWLING DECLARATION
Civil Action # 1:02CV01937
Exhibit 55