# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MEREDITH LARSON,<br>ADRIANA PORTILLO-BARTOW,<br>PAUL JOSLIN,<br>THOMAS HENEHAN,<br>LISEL HOLDENREID,<br>PATRICIA KERNDT, and<br>KIMI OKADA,<br><br>         Plaintiffs,<br><br>         v.<br><br>DEPARTMENT OF STATE, CENTRAL<br>INTELLIGENCE AGENCY, NATIONAL<br>SECURITY AGENCY, DEFENSE<br>INTELLIGENCE AGENCY, and NATIONAL<br>TRANSPORTATION SAFETY BOARD,<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 02-01937-PLF |

DECLARATION OF ROBERT P. RICHARDSON
CHIEF OF THE FREEDOM OF INFORMATION ACT STAFF
DEFENSE INTELLIGENCE AGENCY

I, Robert P. Richardson, Chief of the Freedom of Information Act Staff, Defense Intelligence

Analysis Center, Bolling Air Force Base, Washington, D.C. 20340, do hereby declare the

following to be true and correct:

     1.  I am a civilian employee with the Defense Intelligence Agency and have served as the

Chief of the Freedom of Information Act (FOIA) Staff since December 1991.  I am responsible

for supervising an office which receives, processes, and responds to requests for DIA records

under the FOIA and the Privacy Act.  DIA personnel search records systems at my direction to

identify documents and other information which may be responsive to individual requests. I am also responsible for determining whether responsive records are subject to one of the statutory FOIA exemptions. The activities of my Branch are governed by Department of Defense (DoD) Regulation 5400.7-R, "DOD Freedom of Information Act Program," and DIA Regulation 12-39, "Administration: Freedom of Information Act Program." I assumed my present duties from Mr. Robert C. Hardzog under whose supervision I worked as a FOIA officer from January 1985 through November 1991. Prior to my assignment with DIA, I worked in the Federal Bureau of Investigation's FOIA office from August 1975 until January 1985. In the course of my official duties at DIA, I have become personally familiar with DIA's processing of plaintiffs' requests.

2. The statements made herein are based upon my personal knowledge, upon information made available to me in my official capacity, and upon determinations made by me in accordance therewith.

3. The Defense Intelligence Agency is a component of the Department of Defense. Its mission is to collect, analyze, and provide intelligence on the military capabilities of foreign military forces to the Secretary of Defense, the Joint Chiefs of Staff, and the other components of the Department of Defense. The Defense Intelligence Agency also manages the Defense Attache System for the Department of Defense. The DIA organization and mission is more fully set out at 32 C.F.R. Part 385, "Defense Intelligence Agency." Because of its mission to collect, analyze and provide foreign intelligence, the vast majority of Agency records are classified in the interests of national security in accordance with Executive Order 12958 of April 17, 1995, Classified National Security Information."

4. For new FOIA or Privacy Act requests, the FOIA office Staff Assistant sends out an internal tasker to the Research and Reference Library, and when appropriate, to other Directorates determined by me to be potential repositories of responsive documents, to search for, copy, and provide me any responsive documents located by their search.

5. The Research and Reference Library is the Defense Intelligence Agency's principal records repository for intelligence records. It maintains automated databases and paper files and can search indexes of paper files retired to the records storage repository. The Research and Reference Library does not review documents or messages to determine their releasability. Declassification review of classified documents is performed by the Agency's office or activity that originated the classified information. This ensures that proper consideration is given to national security interests and to the confidential sources and collections methods used to obtain the information by the intelligence activity that produced the document as required by Executive Order 12958 and implementing Department of Defense regulations. Section 3.7 of Executive Order 12958 requires the Defense Intelligence Agency to refer documents containing classified information that was obtained from another agency to that originating agency for its declassification review.

6. After the Research and Reference Library or other tasked Directorates respond to the initial search tasker by providing a compilation of responsive documents, the responsive documents are then placed in the FOIPA queue for subsequent processing for release.  In this litigation, involving the five Plaintiffs, only the Research and Reference Library was tasked to perform a search for records responsive to Plaintiffs' requests as this office would have the most complete data indexed to the subject of the requests, and would encompass information which would have originated with other Directorates within DIA.  In the following cases, beginning with plaintiff, Meredith Larson, through counsel, specifically requested information pertaining to her and Peace Brigades International by letter dated July 21, 1997.

Ms. Larson's FOIA Request

7. By letter dated January 9, 1998, Ms Larson, through counsel, was advised that DIA

had located 37 documents. Of these, 36 originated with other government agencies and had been

referred to those agencies for review and direct response. The breakdown for these referrals is as

follows: 30 documents to the Department of State,[1] one each to the Department of the Army,[2]

Coast Guard,[3] NSA,[4] and the MAC Intelligence Center[5] and the remaining two documents to the

CIA.[6] Portions of the remaining document were being released with additional portions being

withheld pursuant to FOIA exemption (b)(2), (b)(3), and (b)(6).

---

[1] The 30 documents referred to the Department of State are identified by date/time group information as follows:  (1) 211818Z Dec 89; (2) 220047Z Dec 89; (3) 031855Z Jan 90; (4) 011556Z Sep 89; (5) 010645Z Sep 89; (6) 261113Z Sep 89; (7) 172106Z Oct 89; (8) 242351Z Oct 89; (9) 091558Z Dec 89; (10) 242305Z Jan 90; (11) 072348Z Apr 89; (12) 252148Z Apr 89; (13) 151909Z May 89; (14) 152259Z May 89; (15) 312200Z May 89; (16) 212245Z Jun 89; (17) 161904Z Aug 89; (18) 240039Z Aug 89; (19) 311624Z Aug 89; (20) 311649Z Aug 89; (21) 011851Z Mar 90; (22) 152057Z Mar 90; (23) 021533Z Apr 90; (24) 272106Z Sep 90; (25) 172217Z Mar 92; (26) 160449Z Aug 95; (27) 160449Z Aug 95; (28) 142009Z Sep 95; (29) 111506Z Mar 97; (30) 172257Z Mar 97

[2] Described as 061300Z Oct 89

[3] Described as 240900Z Dec 89

[4] Described as 311805Z Aug 89

[5] Described as 181500Z Aug 89

[6] Described as 230209Z Dec 89 and 182259Z Aug 89

8.  By letter dated August 23, 1998, Ms Larson, through counsel requested the identification of agencies where documents were referred and referenced in DIA's letter of January 9, 1998.


9.  By letter dated October 7, 1998 Ms Larson, through counsel, was advised by DIA the one document, portions of which were released to her by DIA letter dated January 9, 1998, had been reviewed by the CIA and portions were withheld by DIA or CIA pursuant to FOIA exemption (b)(1), (b)(2) and (b)(3).


10.  By letter dated November 3, 1998, Ms Larson's attorney appealed the withholding of information as cited in DIA's letter of October 7, 1998.

11.  By letter dated December 4, 1998, Ms Larson's attorney was advised the material withheld was again reviewed and no additional information could be released.  Nothing further came of this matter at the time.

12.  By letter dated August 28, 2002, the Department of Defense (DoD) referred a two-page document, which originated with the Department of State (DoS), dated November 5, 1994, to DIA to determine if any information originated with DIA and to forward the response to the DoS.

13.  By letter dated September 23, 2002, DIA sent the two-page document referenced in paragraph 12 to the DoS, advising the document contained no DIA equities.

14.  After reviewing the file pertaining to Ms Larson , it was discovered three documents referred to DIA by the CIA on September 22, 1998 had not been addressed.  By letter dated November 19, 2002, portions of the three documents were forwarded to Ms Larson's attorney with portions of the documents being withheld pursuant to FOIA exemption (b)(1), (b)(2) and (b)(3) which was cited on behalf of the CIA.  An explanation for DIA's withholding of information from these documents, as well as the one document referenced in paragraph 7, is contained in paragraphs 32-47 of this declaration.

## Mr. Joslin's FOIA Request

15.  By letter dated August 7, 1997, Mr. Paul Joslin, through counsel, requested any information relating to the 1982 murder of Brother James Alfred Miller in Guatemala to include Mr. Joslin's visits to Guatemala in 1982.  This information was incorporated into the initial search before processing began.

16.  By letter dated October 7, 1998, DIA advised that it was unable to locate any information responsive to Mr. Joslin's request.

17.  By letter dated October 1998, Mr. Joslin, through counsel, appealed DIA's response of October 7, 1998.

18.  By letter dated April 17, 2001, Mr. Joslin's  attorney was advised that after again searching DIA's systems of records, no information was located which was responsive to this request.

## Ms Portillo-Bartow's FOIA Request

19.  By undated letter faxed to DIA on July 12, 2002, plaintiff Ms Adriana Portillo-Bartow, through counsel, requested information pertaining to her father, Adrian Portillo-Bartow and his 1981 disappearance from Guatemala.

20.  By letter dated July 17, 2002, Ms Portillo-Bartow's counsel was advised of the receipt of the request and that it could not be determined when the request would be completed.

21.  By letter dated July 24, 2002, the DoD forwarded an identical request from Ms Portillo-Bartow for DIA's review and direct response to plaintiff's attorney.

22.  By letter dated August 7, 2002, DoD forwarded a revised request from Ms Portillo-Bartow stating the search should be conducted for information pertaining to her father, Adrian Portillo Alcantara.

23.  By DIA letter dated September 3, 2002, Ms Portillo-Bartow's attorney was to be advised DIA could locate no information responsive to the subject of the request, Adrian Portillo Alcantara.  This letter was mis-addressed and the letter was returned by the United States Postal Service.

24.  By letter dated November 8, 2002, sent to the proper address, Ms Portillo-Bartow's attorney was advised that no information could be located pertaining to the subject of the request, Adrian Portillo Alcantara.

## Ms Ahern's FOIA Request

25.  By letter dated May 30, 2002, plaintiff Patricia Ahern, through counsel, requested information pertaining to the death of Ms Ahern's sister, Ann Kerndt, in Guatemala in 1976.

26.  By letter dated June 5, 2002, DIA advised Ms Ahern's attorney that DIA had received the request and could not determine when the request would be completed.

27. By letter dated November 14, 2002, DIA advised Ms Ahern's attorney that DIA was unable to locate any information pertaining to this request.

### Ms Holdenried's FOIA Request

28. By letter dated May 30, 2002, plaintiff Lisel Holdenried, through counsel, requested information pertaining to the death of her father, Frank Holdenried in Guatemala in 1983.

29. By letter dated June 5, 2002, DIA advised Ms Holdenried's attorney that DIA had received the request and could not determine when the request would be completed.

30. By letter dated November 14, 2002, DIA advised Ms Holdenried's attorney that DIA was unable to locate any information pertaining to this request.

31. The FOIA exemptions referenced in the attached Vaughn Index are explained in detail below and relate to plaintiff Meredith Larson's FOIA request:

### FOIA EXEMPTIONS CLAIMED

#### Exemption (1) -- Classified Information.

32. Subsection (b) of the FOIA provides, in pertinent part, that:

This section does not apply to matters that are -- (1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

33.  The information to which the (b)(1) exemption has been applied in this case is required to be kept secret in the interest of the national defense or foreign relations pursuant to Executive Order 12958, the current executive order governing national security information.  I referred the documents as to which the (b)(1) exemption has been asserted by DIA to the appropriate original classification authorities within DIA. Those authorities determined that the information which requires continued classification satisfies both the substantive and procedural requirements, (properly marked) of E.O. 12958, and it therefore has been withheld as exempt from disclosure under subsection (b)(1) of the FOIA.


(c) -- Intelligence Activities, Sources and Methods

34.  Section 1.5(c) of E.O. 12958 states, in pertinent part, that:

Information may not be considered for classification unless it concerns:


(c) intelligence activities (including special activities),intelligence sources or methods or cryptology.

35.   Under section 1.5(c) of E.O. 12958 the release of intelligence sources or methods would cause damage to the national security.  Disclosure of information the U.S. Government obtains through intelligence sources or methods, and in particular, information relating to intelligence methods or consideration of the utilization of U.S. government intelligence methods, reasonably could be expected to enable foreign authorities to identify U.S. intelligence activities, methods or sources and to take counter measures which would damage the ability of the U.S. government to acquire information that is often critical to the formulation of U.S. foreign policy and the conduct of foreign relations.  Moreover, intelligence activities, sources and methods can only be fruitful when they fully can be expected to operate in secrecy and confidence.

36.   Material identified as falling within category 1.5(c) has been determined on review to contain information which could reasonably be expected to disclose intelligence sources and/or methods (See paragraph 38 for discussion of harm to sources).  The disclosure of this information would cause damage to the national security.  The withheld information is currently and properly classified under E.O. 12958 and accordingly has been withheld as exempt from disclosure pursuant to 5 U.S.C. 552 (b)(1).

### (d) -- Confidential Sources

37.   Section 1.5(d) of E.O. 12958 states, in pertinent part, that:  Information may not be considered for classification unless it concerns:

(d) confidential sources.

38. U.S. government agencies involved with foreign relations and foreign activities often depend on information provided by sources outside the government on the specific condition, or with an implicit expectation, that the identity of the sources will be protected from disclosure. Confidential sources are often in situations where the very disclosure of the fact that they provided certain information to the U.S. government could expose them to adverse consequences, such as bodily harm to themselves or their family members, loss of business opportunities, social opprobrium, at the hands of foreign governments, business or professional competitors, political or criminal organizations, and others. If the explicit or implicit assurance of confidentiality is not honored, such sources of information important to the foreign relations and foreign activities of the U.S. government would inevitably become unable or unwilling to provide such information. This would seriously reduce the scope and volume of information available as a basis for planning and conducting U.S. foreign relations and foreign activities, and thereby cause damage to the national security. Protection of the identity of a confidential source often requires classification and withholding not only of the name, but also of circumstantial information (including the information conveyed by the sources which would enable foreign authorities or interested individuals to readily identify the source).

39. The information being withheld under this category in this case relates principally to the identity of private individuals who provided information in confidence to the U.S. government. In many instances, the information is so closely related to the individual providing it that the information itself must be withheld to protect the source's identity. Information of this type has been determined on review to contain information concerning confidential sources, disclosure of which reasonably could be expected to cause damage to U.S. foreign relations, and thereby to the national security, in one or more of the ways described above. Such information is currently and properly classified under E.O. 12958, and therefore has been withheld as exempt from disclosure pursuant to 5 U.S.C. 552 (b)(1).

### Exemption (b)(2) -- Internal Agency Practices

40. Subsection (b) of the FOIA Provides, in pertinent part, that:

   This section does not apply to matters that

are --

   (2) related solely to internal personnel rules

   and practices of an agency.

41. Certain message header data have been withheld from the documents. I have determined that this information, which relates solely to internal government procedures, is of no public interest and may be excluded under exemption 2.

Exemption (b)(3)  Statutory Exemption

42.  Subsection (b)(3) of the FOIA exempts from mandatory disclosure matters that are --

Specifically exempted from disclosure by statute …, provided that such statute (A)

requires that the matters be withheld from the public in such a manner as to leave no discretion

on the issue, or (B) establishes particular criteria for withholding or refers to particular types of

matters to be withheld.

43.  This provision of the FOIA was included in recognition of the existence of

collateral statutes limiting the disclosure of information held by the government, and thus

incorporates such statutes within the exemptions of FOIA provided that these statutes meet

specified criteria.  In this case, DIA has withheld information from Plaintiff because such

information falls within the provisions of Title 10, Section 424.

44.  Title 10, Section 424 requires the Director of DIA to protect personnel identifiers

such as name, office designators, positions, titles, organizational functions and official titles from

unauthorized disclosure.  This statute qualifies as a (b)(3) statute by its very terms which states

that "no provision of law shall be required to require the disclosure of (1) the organization or any

function of an organization of (the Defense Intelligence Agency); or (2) the number of persons

employed by or assigned or detailed to any such organization or the name, official title,

occupational series, grade, or salary of any such person."

45.  Because the foregoing statute is a statute within Exemption (b)(3) of the FOIA, the

remaining question is whether the information withheld falls within the scope of this statute.

In making its inquiry into the applicability of Exemption (b)(3), courts must accord substantial weight to the DIA's judgment with respect to the considerations at issue.

Exemption (b)(6) -- Personal Privacy

46.  Subsection (b)(6) of the FOIA provides, in pertinent part, that:  This section does not apply to matters that are --

personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.


47.  Names and other identifying information have been deleted from the documents, to protect the privacy of individuals.  Further discussion of the nature of these individuals may be provided to the court for in camera consideration by classified declaration. In the instances in which this exemption is asserted, the privacy interests of the individuals have been carefully weighed against the public interest in disclosure, and it has been determined that the former outweighs the latter.  Release of this information will not shed any light on Government operations or activities.


I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


ROBERT P. RICHARDSON
Chief, Freedom of Information Act Staff

Executed on May 13, 2003

**<u>Richardson Declaration, Ex. 1</u>**

## MEREDITH LARSON'S FOIA REQUEST
## VAUGHN INDEX TO THE DECLARATION OF MR. ROBERT P. RICHARDSON

Document Number: 1
Document Type: Message
Classification: CONFIDENTIAL
Date of Document: 060020Z Dec 94
To/From: From Attache Guatemala City to DIA Washington DC
Subject: Vist of Congressman Bill Richardson to Guatemala
Pages: 11
Exemption: 552 (b)(2) Document was released in part. The majority of the material withheld consists of data pertaining to various items Congressman Richardson discussed with Guatemalan government officials. If this information was disclosed, it would reveal certain internal rules and practices used by the Defense Attache Office in Guatemala.
Exemption: 552 (b)(2) was also used to withhold message routing data and the Intelligence Information Report number.
Exemption: 552 (b)(3), Title 10 Section 424 was used to withhold the identify of specific DIA personnel.
Exemption: 552 (b)(6) was used to withhold the names and identifying data of third parties.

Document Number: 2
Document Type: Message
Classification: SECRET
Date of Document: 150001Z Nov 89
To/From: From DIA Washington DC
Subject: Defense Intelligence Terrorism Summary DITSUM 218-89, 15 Nov 89
Pages: 3
Exemption: 552 (b)(1) (E.O. 12958 Section 1.5 (c) and (d)) Document withheld in part. The material withheld consists of data provided by sensitive intelligence sources and methods concerning various terrorist related activity around the world. If this information was disclosed, it would reveal those classified sources and methods and could endanger access to critical intelligence data in the future. The only data which pertains to Guatemala is at Page 2, paragraphs A and B. **Paragraph D, page 3 was withheld at the behest of the CIA pursuant to exemptions (b)(1) and (b)(3).**
Exemption: 552 (b)(2) was used to withhold message routing data.
Exemption: 552 (b)(3), Title 10 Section 424 was used to withhold the preparer of the document as the release of this information would identify specific DIA personnel.

Document Number: 3
Document Type: Message
Classification: CONFIDENTIAL
Date of Document: 262307Z Oct 89
To/From: From DIA Washington DC
Subject: Sri Lanka: Bodyguard Operations
Pages: 2

Exemption: 552 (b)(2) Document substantially released. The material withheld consists of message routing data.
Exemption: 552 (b)(3), Title 10 Section 424 was used to withhold the preparer of the document as the release of this information would identify specific DIA personnel.

Document Number: 4
Document Type: Message
Classification: SECRET
Date of Document: 180001Z Aug 89
To/From: From DIA Washington DC
Subject: Defense Intelligence Terrorism Summary DITSUM 158-89, 18 Aug 89
Pages: 4
Exemption: 552 (b)(1) (E.O. 12958 Section 1.5 (c) and (d)) Document withheld in part. The material withheld consists of data provided by sensitive intelligence sources and methods concerning terrorist activity in various parts of the world. If this information was disclosed, it would reveal those classified sources and methods and could endanger access to critical intelligence data in the future. The information pertaining to the Peace Brigades appears in Paragraph F, Page 3, which is being withheld pursuant to exemption (b)(1).
Exemption: 552 (b)(2) was used to withhold message routing data.
Exemption: 552 (b)(3), Title 10 Section 424 was used to withhold the preparer of the document as the release of this information would identify specific DIA personnel.